# APPENDIX

**Exhibit A –** Plaintiff's Expert Report of Michael Ogden ……………………………….........2-87

**Exhibit B –** Policy  …………………………………….........................................................88-147

**Exhibit C –** Photo Report of Britt Elliott (Plaintiff's Public Adjuster) ………………......148-211

**Exhibit D –** Defendant's Expert Eric Moody's Expert Report …………………………. 212-259

EXHIBIT A



# REPORT OF FINDINGS AND REPAIR COST ESTIMATE



**Cynthia Johnson Residence**
709 Queensway Road
Willow Park, TX 76087

PREPARED FOR:
**Hodge Law Firm**
2211 The Strand St, Ste 302
Galveston, Texas 77550

PREPARED BY:
**Michael Ogden CGC, IICRC, CDDC, CDDR, PA**
**President**
**All Disaster Claims, Inc.**
3235 Pawnee Pride
San Antonio, TX 78261

## TABLE OF CONTENTS

ASSESSMENT & OBSERVATIONS                                                TAB 1

PROTOCOL AND METHODOLOGY                                           TAB 2

REPAIR COST ESTIMATE                                                  TAB 3

PHOTOGRAPHS                                                             TAB 4

LIST OF PRIOR TESTIMONY                                           TAB 5

CURRICULUM VITAE                                                      TAB 6

TAB 1

## GENERAL COMMENTS

I was contacted by the Hodge Law Firm to assess storm damage to the Johnson residence and to prepare a cost estimate to repair these damages. I conducted my inspection on or around October 11, 2021, during which time I spoke with the homeowner regarding the issues with her property from the loss in question which reportedly occurred on or around 05/07/2020.

I inspected the roof, exterior elevations, and interior areas of the property. I also took measurements and photographs of the property, and I noted and photographed damages to the property. My repair estimate was compiled using Xactimate® estimating software. This scope of damage is included in the repair cost estimate in TAB 3. My photographs are included in TAB 4. I have also reviewed the carrier estimates(s), PA estimate(s) and their photo report that were provided to me.

## OBSERVATIONS

The date of loss related damages to the property includes wind and hail damage to the roof, exterior fence, garage door and shed roof as well as intrusion damages to various rooms within the structure itself. My estimate provides the reasonably certain scope and cost to repair all the storm related damages to the property. I recently revised my cost estimate to reflect the current price list in Xactimate.

Based on my experience, education, training, and background in the property loss and construction industry, my inspection of the property, discussion with the homeowner and review of the additional materials described above, I have also formed the following opinions:

1.  Wind & hail caused the damages to the property noted in my estimate and photographs as to the structure requiring the roof, shed roof, garage door and fence to be replaced;

2.  Water caused the damages to the property noted in my estimate and photographs as to the structure's interior rooms as noted in my estimate;

3.  The carrier failed to account for damages to the property that were reasonably clear to me during my inspection of the property, as reflected in my estimate; and

4.  The carrier should have prepared an estimate comparable to mine if it had conducted a reasonable inspection of the property.

**CONCLUSION**

A thorough inspection of the property and documentation of damages was conducted using the means and methods I have used and developed throughout my 22-year career. I have compiled a repair cost estimate that is fair and accurate using my background, knowledge of industry standards, and pricing methods applicable for this type of loss.

My estimate is based on a scope of work derived from my observations at the property, review of the carrier's letter(s), the homeowners Public Adjusters estimate, documents and photos provided to me as well as my discussion with the homeowner during my inspection. I am of the opinion that the damages sustained at the Johnson residence were caused by wind and hail and water intrusion related to the loss that occurred on or around 05/11/2020.

I reserve the right to modify, amend, or expand my estimate and opinions in this case if any additional or new information is made available to me.

TAB 2

**PROTOCOL AND METHDOLOGY FOR HAIL AND WIND INSPECTIONS:**

The severity of hail damage to residential and commercial roofing systems depends on several parameters including the age and type of roofing material, the roofing assembly, hail size, and roof slope, among others. Asphalt shingled roofs comprise a large percentage of insurance claims submitted for roof-related hail damage. Wind damage is separate and distinct from hail damage.

SHINGLE ROOFS - For asphalt shingled roofs, hail damage typically consists of radial/circular areas of granule loss, which constitute direct physical loss and functional damage and in addition will affect the future performance and lifespan of the shingles. The severity and extent of hail damage to asphalt shingled roofs is not as visually apparent as compared with some other common high-slope roofing materials, such as metal panels, wood shakes, and clay/concrete tiles. Wind damage to shingle roofs includes but is not limited to tearing, creasing and ripping and displacement of the shingles. Wind damage can also cause shingles to become "lifted" and/or unadhered. Lifted and unadhered shingles are functional damage and cause direct physical loss because it impedes the ability of the roofing system to shed water and causes all failure of the watertight properties of the roof. Wind can also damage shingle roofing systems by propelling flying debris causing impacts and/or punctures in the roofing material.

METAL ROOFS - For metal roofs hail damage typically consists of indentions, denting, stressing, scratching, puncturing and/or creasing of the metal roofing materials and panels. It is important to inspect standing seems as well as overlap sections to check for fitting of the metal panels to determine if there is any comprise of the standing seems or overlapping panels that could allow water penetration to the interior. Hail impacts to metal roof surfacing can cause cracks, fractures to the coating which will lead to premature failure of the roofing material. In addition, areas of indentions caused by hail impacts tend to hold water and impact the water shedding ability of the roofing system. Overtime the diminished water shedding ability of the roof leads to areas of ponding and build up of dirt and debris which within the hail dents which further corrodes and damages the roofing system. Metal roofs typically have a type of coating (zinc, aluminum, galvalume, galvanized, etc.). While the coating to the roof may have pigmentation or dye applied to create a desired aesthetic look or color the coating serves a functional purpose to protect the metal material from coming into contact with the corrosive elements and weather which causes the roofing material to prematurely weather and age and diminishes the useful life of the product. Wind damage to metal roofs typically consist of lifting, separating or displacing of metal panels. *Screws and fasteners can also fail because of wind damage and the various lifting forces applied to the roof*. Wind can also damage metal roofing systems by propelling flying debris across the roof causing impacts and/or punctures in the roofing material.

CLAY/CONCRETE AND SLATE TILES – For clay, concrete and slate tiles hail damage typically consist of cracks, fractures and chips of the tile material. The edges of tile material is especially vulnerable to impacts from hail as the edges are more easily broken and chipped. Cracks, fractures and chips are all functional damage and cause direct physical loss to the roofing

material.    The cracks, fractures and chips impede the ability of the roofing system to properly shed water and impact the watertight interconnectivity of the overlapping tiles pieces.    Further the cracking, chipping or fracturing of the exterior surface of the tile allows water to enter the unfinished sections of the tile material and further contributes to build up of dirt, debris and other harmful materials that breakdown the tile.  Wind damage to tiles typically consists of broken and displaced tiles.

COMMERICAL ROOF COVERINGS (TPO, PVC, Spray foam and other coatings, Mod Bit, Built-Up, etc.) and FLAT ROOFS – Commercial roof coverings are vulnerable to hail impacts just like residential roofing systems are.   Besides damaging the exterior roof covering hail also can damage ISO board or other decking material used under the roof covering.  Indentions in the ISO board will lead to the roofing system holding and ponding water.    Damage to the ISO board will also diminish the energy rating of the building by impacting the insulating properties of the material.    Many commercial roofs are flat in nature and rely upon scuppers or side drains to adequately shed the water.   Any indention on a flat roofing surface will hold water and impeded the ability of the roofing system to properly and efficiently shed water.    The indentions lead to dirt, debris and other material to be deposited overtime.   Any water that is retained in the indentions can act as a magnifying glass when the sun shines on the indentions which causes the reflective properties of the water to heat the roofing system   Ponding is a common event that happens when water is trapped.   Flat roofs, in particular, are the ones that experience this the most. Ponding causes significant damage by increasing ultraviolet exposure.   The ponded water acts as a magnifier for the sunlight and increases the temperature and exposure to the underlying roof material and can lead to burning of the coating and underlying roofing material.   Prolonged exposure to water also wakens the adhesive material used in commercial roofing applications. Wind damage to commercial roofing system typically consists of torn, creased, puncture and impact marks.   Wind damage can cause failure of the roofing system and cause the system to become unadhered because of the strong forces involved with wind events.   Wind can also damage commercial roofing systems by flying debris causing impacts and/or punctures in the roofing material.

Based on the authors' experience, the following guidelines and procedures were used to assess the extent of hail damage to asphalt shingled roofs from which a scope of repairs can be developed. A cost analysis for the repair is also presented.

INSPECTION:
When assessing wind or hail damage to roofs, the roof should be walked thoroughly and a roof plan should be drawn. In addition to evaluating for wind and/or hail damage, roof appurtenances (i.e., vents, any rooftop units/equipment, etc.) should be evaluated. Additionally, the exterior of the structure, including auxiliary structures (i.e., carports), should also be visually evaluated for signs of hail and/or wind distress. Observed wind and hail distress at both the roof and exterior of the structure should be properly documented.

**Roof Plan.** Prior to evaluating both the roof and exterior for damage, a roof plan should be drawn. For larger and more complex structures an aerial image, such as those freely available through Google Earth or Bing Maps, EagleView can aid in the development of the roof plan. At the site, dimensions can be measured and recorded

on the aerial image and the various features (i.e., roof pitch, roof edge, valleys, hips, ridges, vents, etc.) can be outlined. For smaller and simpler structures, a scaled roof sketch can be prepared on-site. With a roof plan, the roof size can be computed, field notes can be recorded and observed distress can be accurately located.

**General On-Site Observations.** In addition to evaluating the roof, the exterior of the structure should also be evaluated for distress and damages. This includes evaluating the exterior finishes of the structure, window assemblies, door assemblies, and auxiliary structures. Any evidence of distress, such as burnish marks or indentations in metal materials, should be documented. Additionally, exposed condenser coil fins at air conditioning units are susceptible to impact damage and should be evaluated.

When evaluating the roofing systems for damage, all accessible roof areas should be evaluated. At the accessible roof areas, damage to the roofing system should be documented. Care should be taken to ensure that the impact damage is consistent with hail. Granule loss on roof coverings can occur from hail impacts; however, granule loss in and of itself does not prove hail damage. But small, wind driven hail can cause granule loss, sometimes severe, further lessening the roofs normal useful life.

Granule loss can also be the result of material and/or installation defects, natural weathering, foot traffic from maintenance, and miscellaneous impact abuse. In the authors' experience, circular areas of granule loss are generally consistent with hail impact damage.

**Sample Areas.** In order to obtain a representative sampling of damages on a roof, sample areas are used. For typical residential roofs, one sample area per roof slope direction will suffice. For larger residential structures or multi-family dwellings, or commercial buildings, it may be beneficial to evaluate more than one sample area per roof slope direction for each building. Typical sample areas should measure approximately 10' by 10'. However, based on the roof size and/or for safety purposes, the evaluator may have to limit the size of the sample areas to 10' by 5' or even 5' by 5'.  For statistical purposes, it may be beneficial in certain instances that the sample areas include only full shingles. Since each course of shingles are offset from the adjacent courses, this will require the sample areas to be irregularly shaped. Each sample area should be carefully evaluated, and within each sample area, impact marks consistent with wind and/or hail distress should be documented.

TAB 3

**All Disaster Claims, Inc.**

| | | | |
|---|---|---|---|
| Insured: | Cynthia Johnson - Wind CLaim | Home: | (817) 832-1310 |
| Property: | 709 Queensway Road | Cellular: | (817) 832-1310 |
| | Willow Park, TX 76087 | E-mail: | ` |

| | | | |
|---|---|---|---|
| Estimator: | Michael Ogden CGC, IICRC, CDDC, CDDR, PA | Business: | (210) 758-5757 |
| Company: | All Disaster Claims, Inc. | E-mail: | operationswiz@yahoo.com |
| Business: | 3235 Pawnee Pride | | |
| | San Antonio, TX 78261 | | |

| | | | |
|---|---|---|---|
| Reference: | Shaun Hodge | Business: | (409) 762-5000 |
| Position: | Principal | E-mail: | shodge@hodgefirm.com |
| Company: | Hodge Law Firm | | |
| Business: | 2211 Strand Street,  Ste 302 | | |
| | Galveston, TX 77550 | | |

| **Claim Number:** | **Policy Number:** | **Type of Loss:** |
|---|---|---|

| | | | |
|---|---|---|---|
| Date of Loss: | | Date Received: | |
| Date Inspected: | | Date Entered: | 11/1/2021 12:57 PM |

| | |
|---|---|
| Price List: | TXDF8X_OCT21 |
| | Restoration/Service/Remodel |
| Estimate: | 2021-11-01-1257 |

The opinion expressed in this estimate was based upon the information available to us at the time it was written. We reserve the right to consider any new information that may be presented at any time. If this new information changes our opinion in any way, we reserve the right to change this written opinion. If it is determined that the removal of building materials must be treated like Category 3 hazardous waste, this will result in a significant cost increase.

**All Disaster Claims, Inc.**

**2021-11-01-1257**

### Roof

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 1. R&R Metal roofing | 3,917.86 SF | 0.48 | 6.13 | 646.45 | 8,560.28 | 35,103.78 |
| 2. Remove Additional charge for steep roof - 7/12 to 9/12 slope | 39.18 SQ | 13.10 | 0.00 | 0.00 | 165.53 | 678.79 |
| 3. Additional charge for steep roof - 7/12 to 9/12 slope | 39.18 SQ | 0.00 | 43.35 | 0.00 | 547.75 | 2,246.20 |
| 4. Roofing felt - synthetic underlayment - Standard grade | 43.10 SQ | 0.00 | 34.30 | 34.42 | 487.86 | 2,000.61 |
| 5. R&R Eave trim for metal roofing | 329.81 LF | 0.78 | 4.59 | 35.10 | 582.51 | 2,388.69 |
| 6. R&R Ridge cap - metal roofing | 254.68 LF | 3.13 | 5.53 | 46.86 | 726.40 | 2,978.79 |
| 7. R&R Sheathing - OSB - 5/8" | 3,917.86 SF | 0.34 | 1.36 | 171.31 | 2,203.21 | 9,034.88 |
| 8. R&R Add charge for sheathing steep roof - 7/12 - 9/12 slope | 39.18 SF | 0.05 | 0.23 | 0.32 | 3.64 | 14.93 |
| 9. R&R Chimney flashing - large (32" x 60") | 1.00 EA | 14.80 | 328.79 | 6.84 | 113.02 | 463.45 |
| 10. R&R Skylight flashing kit - dome | 2.00 EA | 3.70 | 65.66 | 8.42 | 47.45 | 194.59 |
| 11. R&R Exhaust cap - through roof - 6" to 8" | 1.00 EA | 8.41 | 83.75 | 2.82 | 30.63 | 125.61 |
| 12. R&R Gutter / downspout - aluminum - up to 5" | 32.00 LF | 0.48 | 7.49 | 9.79 | 85.40 | 350.23 |
| 13. R&R Flashing - pipe jack | 5.00 EA | 6.59 | 44.83 | 5.72 | 84.76 | 347.58 |
| 14. R&R Valley metal - (W) profile | 40.00 LF | 0.55 | 6.59 | 10.40 | 95.46 | 391.46 |
| 15. Remove Roof mount power attic vent | 2.00 EA | 23.43 | 0.00 | 0.00 | 15.11 | 61.97 |
| 16. Install Roof mount power attic vent | 2.00 EA | 0.00 | 342.47 | 0.00 | 220.89 | 905.83 |
| Totals: Roof | | | | 978.45 | 13,969.90 | 57,287.39 |

### Shed

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 17. Remove Laminated - comp. shingle rfg. - w/ felt | 1.48 SQ | 53.73 | 0.00 | 0.00 | 25.65 | 105.17 |
| 18. Laminated - comp. shingle rfg. - w/ felt | 2.00 SQ | 0.00 | 254.81 | 18.55 | 170.33 | 698.50 |
| 19. R&R Ridge cap - composition shingles | 10.00 LF | 2.66 | 4.11 | 0.94 | 22.14 | 90.78 |
| 20. R&R Drip edge | 60.00 LF | 0.30 | 2.57 | 5.05 | 57.17 | 234.42 |

 **All Disaster Claims, Inc.**

### CONTINUED - Shed

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 21. Asphalt starter - universal starter course | 20.00 LF | 0.00 | 1.83 | 0.79 | 12.06 | 49.45 |
| 22. Final cleaning - construction - Residential | 150.00 SF | 0.00 | 0.30 | 4.91 | 14.51 | 64.42 |
| Totals: Shed | | | | 30.24 | 301.86 | 1,242.74 |

### Exterior

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 23. Scrape the surface area & prep for paint | 329.81 SF | 0.00 | 0.67 | 0.27 | 71.36 | 292.60 |
| 24. Prime & paint exterior fascia - wood, 4"- 6" wide | 329.81 LF | 0.00 | 3.14 | 7.35 | 336.35 | 1,379.30 |
| 25. R&R Overhead door & hardware - 16' x 7' | 1.00 EA | 78.09 | 1,251.56 | 81.66 | 455.14 | 1,866.45 |
| 26. Seal & paint double garage door opening & trim | 1.00 EA | 0.00 | 128.98 | 0.78 | 41.86 | 171.62 |
| 27. R&R Wood fence 5'- 6' high - cedar or equal | 516.00 LF | 5.86 | 34.90 | 915.68 | 7,078.17 | 29,026.01 |
| Totals: Exterior | | | | 1,005.74 | 7,982.88 | 32,735.98 |

### General

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 28. Temporary toilet (per month) | 1.00 MO | 0.00 | 151.00 | 0.00 | 48.70 | 199.70 |
| Due to COVID and resulting supply shortages and delays, jobs are taking longer to complete than 2 years ago. | | | | | | |
| 29. Dumpster load - Approx. 20 yards, 4 tons of debris | 1.00 EA | 432.43 | 0.00 | 0.00 | 139.45 | 571.88 |
| 30. Fall protection harness and lanyard - per week | 5.00 WK | 0.00 | 22.00 | 0.00 | 35.48 | 145.48 |
| 5 workers @ 1 week | | | | | | |
| 31. Single axle dump truck - per load - including dump fees | 1.00 EA | 263.22 | 0.00 | 0.00 | 84.89 | 348.11 |
| 32. Telehandler/forklift and operator | 8.00 HR | 0.00 | 102.17 | 0.00 | 263.59 | 1,080.95 |
| 33. Residential Supervision / Project Management - per hour | 24.00 HR | 0.00 | 60.31 | 0.00 | 466.80 | 1,914.24 |
| On-site supervision of supply delivery, permit inspections, etc | | | | | | |
| 34. General Laborer - per hour | 24.00 HR | 0.00 | 30.89 | 0.00 | 239.08 | 980.44 |
| Daily job site clean-up | | | | | | |

 **All Disaster Claims, Inc.**

### CONTINUED - General

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 35. Taxes, insurance, permits & fees (Bid Item) | 1.00 EA | 0.00 | 300.00 | 0.00 | 96.75 | 396.75 |
| Totals: General | | | | 0.00 | 1,374.74 | 5,637.55 |



| **Garage** | | | | | **LxWxH 21' 5" x 20' 2" x 8'** | |
|---|---|---|---|---|---|---|

| 665.33 SF Walls | 431.90 SF Ceiling |
|---|---|
| 1,097.24 SF Walls & Ceiling | 431.90 SF Floor |
| 47.99 SY Flooring | 83.17 LF Floor Perimeter |
| 171.33 SF Long Wall | 161.33 SF Short Wall |
| 83.17 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 36. Contents - move out then reset - Large room | 1.00 EA | 0.00 | 86.43 | 0.00 | 27.87 | 114.30 |
| 37. Floor protection - cloth - skid resistant, breathable | 431.90 SF | 1.00 | 0.00 | 18.53 | 145.27 | 595.70 |
| 38. R&R 5/8" drywall - hung, taped, ready for texture | 128.00 SF | 0.39 | 2.52 | 5.81 | 121.99 | 500.28 |
| 39. Overhead (garage) door opener - Detach & reset | 1.00 EA | 0.00 | 192.08 | 0.00 | 61.94 | 254.02 |
| 40. Final cleaning - construction - Residential | 431.90 SF | 0.00 | 0.30 | 14.14 | 41.79 | 185.50 |
| Totals: Garage | | | | 38.48 | 398.86 | 1,649.80 |



| **Hall Bath** | | | | | **LxWxH 11' 5" x 5' x 8'** | |
|---|---|---|---|---|---|---|

| 262.67 SF Walls | 57.08 SF Ceiling |
|---|---|
| 319.75 SF Walls & Ceiling | 57.08 SF Floor |
| 6.34 SY Flooring | 32.83 LF Floor Perimeter |
| 91.33 SF Long Wall | 40.00 LF Short Wall |
| 32.83 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 41. Contents - move out then reset | 1.00 EA | 0.00 | 57.62 | 0.00 | 18.58 | 76.20 |
| 42. Mask wall - plastic, paper, tape (per LF) | 98.50 LF | 0.00 | 1.61 | 2.11 | 51.83 | 212.53 |
| 43. Floor protection - cloth - skid resistant, breathable | 57.08 SF | 1.00 | 0.00 | 2.45 | 19.20 | 78.73 |

 **All Disaster Claims, Inc.**

CONTINUED - Hall Bath

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 44. R&R 5/8" drywall - hung, taped, ready for texture | 16.00 SF | 0.39 | 2.52 | 0.73 | 15.27 | 62.56 |
| 45. R&R 1/2" drywall - hung, taped, ready for texture | 16.00 SF | 0.39 | 2.42 | 0.67 | 14.73 | 60.36 |
| 46. Insulation - Labor Minimum | 1.00 EA | 0.00 | 175.04 | 0.00 | 56.46 | 231.50 |
| 47. R&R Blown-in insulation - 12" depth - R30 | 16.00 SF | 0.92 | 1.26 | 1.15 | 11.62 | 47.65 |
| 48. Mirror - plate glass - Detach & reset | 30.00 SF | 0.00 | 5.40 | 0.00 | 52.25 | 214.25 |
| 49. Toilet - Detach & reset | 1.00 EA | 0.00 | 278.44 | 0.53 | 89.97 | 368.94 |
| 50. Light fixture - Detach & reset | 1.00 EA | 0.00 | 51.62 | 0.00 | 16.64 | 68.26 |
| 51. Heat/AC register - Mechanically attached - Detach & reset | 2.00 EA | 0.00 | 14.41 | 0.00 | 9.29 | 38.11 |
| 52. Scrape part of the walls and ceiling & prep for paint | 287.75 SF | 0.00 | 0.67 | 0.24 | 62.26 | 255.29 |
| 53. Texture drywall - light hand texture | 319.75 SF | 0.00 | 0.77 | 1.32 | 79.83 | 327.36 |
| 54. Paint the walls and ceiling - two coats | 319.75 SF | 0.00 | 0.98 | 5.80 | 102.92 | 422.08 |
| 55. Final cleaning - construction - Residential | 57.08 SF | 0.00 | 0.30 | 1.86 | 5.52 | 24.50 |
| Totals: Hall Bath | | | | 16.86 | 606.37 | 2,488.32 |

 **Laundry Room**                                    **LxWxH 16' 4" x 6' x 8'**

| | |
|---|---|
| 357.33 SF Walls | 98.00 SF Ceiling |
| 455.33 SF Walls & Ceiling | 98.00 SF Floor |
| 10.89 SY Flooring | 44.67 LF Floor Perimeter |
| 130.67 SF Long Wall | 48.00 SF Short Wall |
| 44.67 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 56. Contents - move out then reset | 1.00 EA | 0.00 | 57.62 | 0.00 | 18.58 | 76.20 |
| 57. Mask wall - plastic, paper, tape (per LF) | 134.00 LF | 0.00 | 1.61 | 2.87 | 70.51 | 289.12 |
| 58. Floor protection - cloth - skid resistant, breathable | 98.00 SF | 1.00 | 0.00 | 4.20 | 32.96 | 135.16 |
| 59. Washer/Washing machine - Remove & reset | 1.00 EA | 0.00 | 40.99 | 0.00 | 13.22 | 54.21 |
| 60. Dryer - Remove & reset | 1.00 EA | 0.00 | 31.59 | 0.00 | 10.19 | 41.78 |
| 61. Ceiling fan - Detach & reset | 1.00 EA | 0.00 | 183.84 | 0.00 | 59.29 | 243.13 |

 **All Disaster Claims, Inc.**

#### CONTINUED - Laundry Room

| DESCRIPTION | QTY | | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 62. R&R 5/8" drywall - hung, taped, ready for texture | 32.00 | SF | 0.39 | 2.52 | 1.45 | 30.50 | 125.07 |
| 63. R&R Blown-in insulation - 12" depth - R30 | 32.00 | SF | 0.92 | 1.26 | 2.30 | 23.26 | 95.32 |
| 64. Heat/AC register - Mechanically attached - Detach & reset | 1.00 | EA | 0.00 | 14.41 | 0.00 | 4.65 | 19.06 |
| 65. Scrape part of the walls and ceiling & prep for paint | 423.33 | SF | 0.00 | 0.67 | 0.35 | 91.58 | 375.56 |
| 66. Texture drywall - light hand texture | 455.33 | SF | 0.00 | 0.77 | 1.88 | 113.67 | 466.15 |
| 67. Paint the walls and ceiling - two coats | 455.33 | SF | 0.00 | 0.98 | 8.26 | 146.57 | 601.05 |
| 68. Final cleaning - construction - Residential | 98.00 | SF | 0.00 | 0.30 | 3.21 | 9.48 | 42.09 |
| Totals: Laundry Room | | | | | 24.52 | 624.46 | 2,563.90 |

**Labor Minimums Applied**

| DESCRIPTION | QTY | | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 69. Skylight labor minimum | 1.00 | EA | 0.00 | 120.54 | 0.00 | 38.87 | 159.41 |
| 70. Gutter labor minimum | 1.00 | EA | 0.00 | 137.08 | 0.00 | 44.21 | 181.29 |
| 71. Plumbing labor minimum | 1.00 | EA | 0.00 | 49.59 | 0.00 | 15.99 | 65.58 |
| 72. Electrical labor minimum | 1.00 | EA | 0.00 | 5.70 | 0.00 | 1.84 | 7.54 |
| Totals: Labor Minimums Applied | | | | | 0.00 | 100.91 | 413.82 |
| **Line Item Totals: 2021-11-01-1257** | | | | | **2,094.29** | **25,359.98** | **104,019.50** |

### Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 1,285.33 | SF Walls | 586.99 | SF Ceiling | 1,872.32 | SF Walls and Ceiling |
| 586.99 | SF Floor | 65.22 | SY Flooring | 160.67 | LF Floor Perimeter |
| 393.33 | SF Long Wall | 249.33 | SF Short Wall | 160.67 | LF Ceil. Perimeter |
| 0.00 | Floor Area | 0.00 | Total Area | 0.00 | Interior Wall Area |
| 0.00 | Exterior Wall Area | 0.00 | Exterior Perimeter of Walls | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

**All Disaster Claims, Inc.**

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| Dwelling | 74,993.49 | 72.10% | 74,993.49 | 72.10% |
| Other Structures | 29,026.01 | 27.90% | 29,026.01 | 27.90% |
| Contents | 0.00 | 0.00% | 0.00 | 0.00% |
| Total | 104,019.50 | 100.00% | 104,019.50 | 100.00% |

**All Disaster Claims, Inc.**

### Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 55,533.07 |
| Material Sales Tax | 1,154.49 |
| Subtotal | 56,687.56 |
| Overhead | 8,503.15 |
| Profit | 9,778.66 |
| Cleaning Sales Tax | 24.12 |
| **Replacement Cost Value** | **$74,993.49** |
| **Net Claim** | **$74,993.49** |

Michael Ogden CGC, IICRC, CDDC, CDDR, PA

**All Disaster Claims, Inc.**

### Summary for Other Structures

| | |
|---|---:|
| Line Item Total | 21,032.16 |
| Material Sales Tax | 915.68 |
| Subtotal | 21,947.84 |
| Overhead | 3,292.17 |
| Profit | 3,786.00 |
| **Replacement Cost Value** | **$29,026.01** |
| **Net Claim** | **$29,026.01** |

Michael Ogden CGC, IICRC, CDDC, CDDR, PA

TAB 4

**All Disaster Claims, Inc.**



1        1-DSC08450                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



2      2-DSC08451                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



3      3-DSC08452              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



4      4-DSC08453                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



5      5-DSC08454                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



6      6-DSC08455                Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



7        7-DSC08456                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



8        8-DSC08457                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



9        9-DSC08458              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



10      10-DSC08459                 Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



11      11-DSC08460              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



12      12-DSC08461                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



13      13-DSC08462                Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



14       15-DSC08464              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



15    16-DSC08465                 Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



16      17-DSC08466                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



17        18-DSC08467                Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



18      19-DSC08468                Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



19        20-DSC08469                Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



20        21-DSC08470                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



21      22-DSC08471              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



22          23-DSC08472                    Date Taken: 10/11/2021

 All Disaster Claims, Inc.



23        24-DSC08473              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



24        25-DSC08474                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



25      26-DSC08475              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



26      27-DSC08476                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



27      28-DSC08477                Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



28      29-DSC08478              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



29        30-DSC08479                Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



30      31-DSC08480                Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



31        32-DSC08481                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



32        33-DSC08482              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



33      34-DSC08484                Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



34        35-DSC08485                Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



35      36-DSC08486                 Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



36        37-DSC08487                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



37      38-DSC08488                Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



38        39-DSC08489                Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



39      40-DSC08490                  Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



40      41-DSC08491                Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



41       42-DSC08492                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



42        43-DSC08493                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



43       44-DSC08494              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



44      45-DSC08495              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



45      46-DSC08496                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



46          47-DSC08497                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



47        48-DSC08498                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



48        49-DSC08499                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



49      50-DSC08500              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



50      51-DSC08501                Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



51        52-DSC08502              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



52        53-DSC08503                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



53      54-DSC08504              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



54        55-DSC08505              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



55        56-DSC08506                    Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



56       57-DSC08507              Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



57      58-DSC08508           Date Taken: 10/11/2021

**All Disaster Claims, Inc.**



58      59-DSC08509               Date Taken: 10/11/2021

TAB 5

DEPOSITIONS IN LAST 4 YEARS FOR MICHAEL OGDEN

June 21, 2021
Gooden, Jerri v. State Farm Lloyds
US District Court – Northern District
Fort Worth Division
Civil Action No: 4:20-cv-00698-O

May 6th, 2021
Taylor, Bill & Taylor, Becky v. RVOS Farm Mutual

October 14, 2020
First Presbyterian Church-Hereford v. AMCO Insurance Company
US District Court Northeastern District
Amarillo Division
Cause No: 2:20-cv-38

October 6, 2020
Sonny Spoon & Insurance Busters.net, LLC v. TWIA
122nd Judicial District
Cause no: 19-CV-2092

January 20th, 2020
SJ Auto Brokers v. Union Insurance Company
US District Court – Western District
Midland/Odessa Division
Cause No: 7:19-cv-00016-DC

September 30, 2019
Pointe North Townhomes Phase III Homeowners Assoc. v. Mid-Century
Insurance Company
District Court of Harris County
281st Judicial District
Cause No: 2016-54688

Page Intentionally Left Blank

TAB 6

# MICHAEL OGDEN

3235 Pawnee Pride, San Antonio, TX 78261 | 210-758-5757 | operationswiz@yahoo.com

## SUMMARY

A State of Texas Licensed Public Adjuster and State of Florida Certified General Contractor with more than 20 years of experience directly related to the renovation and consulting of losses from disaster afflicted homes and businesses.

IICRC and BESI certified Appraiser, Umpire, Estimator, Renovator, Remediator and Expert Witness / Consultant.

President - All Disaster Claims, Inc.
President - Ogden Custom Services, Inc.

## COMPUTER SKILLS

### Languages

· RPG, RPGILE, CL, DSS, SYNON

### Software

· Xactimate, B.E.S.T. 7.5, Excel, Word, WordPerfect, Access, 10-Key by Touch

## LICENSES AND CERTIFICATIONS

State of Florida Certified (Licensed) General Contractor CGC1509420

BESI Certified Defective Drywall Remediator (CDDR)

BESI Certified Defective Drywall Consultant (CDDC)

NuAire Windows and Doors Certified Installer

Dryvit E.I.F.S. Certified Installer

IICRC Certified Water Restoration Technician (WRT)

IICRC Certified Advanced Structural Drying (ASD)

State of Texas Licensed Public Adjuster TDI#1840149

State of Florida Licensed Public Adjuster

## EXPERIENCE

**All Disaster Claims, Inc.**

**President / Public Adjuster / Appraiser / Umpire**

August 2013 – Present – Greater Texas Area

**Ogden Custom Services, Inc.**

**President & Managing Director of Operations**

February 2005 – Present - Serving Florida and Texas

For more than 16 years, Ogden Custom Services, Inc. has provided total construction, remediation, restoration and renovation services to homes and businesses damaged by Fire, Water, Mold, Flood, Hail, Wind and other natural disasters, including damages caused by the use of imported Chinese drywall. We use time-tested, BESI and IICRC protocols in the remediation of homes or businesses.

As an expert in the use of such estimating programs such as Xactimate 27.5, iScope and B.E.S.T. 7.5, as well as construction experience that can only be obtained by years of know how handling all types of perils in the restoration industry, Ogden Custom Services has the expertise and knowledge of restoration services and catastrophic loss consulting to insure your job is done right. From the foundation to the roof, Ogden Custom Services provides consulting, appraisal, restoration and expert witness services throughout Florida and Texas.

**Alliance Construction & Cabinetry, Inc.**

**Director of Construction & Field Operations**

February 2001 – June 2005 (4 years 5 months)

**Director of Construction and Restoration Operations**

As Director of Construction Operations, I managed all phases of construction and restoration projects assigned to me. I was directly responsible for successful project completion, quality assurance and total customer satisfaction. This included pre-construction conceptual development to running crews, sub-contractor issues, bid process, change orders, inspections, final inspections, punch lists and customer final walkthroughs and sign-off.

Key highlights
• Efficiently managed all permit processes.
• Responsible for managing crew safety and OSHA compliance.
• Promoted quality craftsmanship through on-the-job training workshops and team building exercises.
• Supervised in-house crews of up to 6 men as well as all sub-contractors in the field.
• Responsible for accurately recording all field measurements including, but not limited to moisture mapping, photography, material lists, inventory, equipment, etc.



**Systems Analyst**

February 1999 – December 2001 (2 years 11 months)

Built on a career of IT systems experience and success to develop, implement, and maintain numerous conversion and custom application programs. Formulated new concepts through extensive analysis and interpretation of business requirements, applications systems, and programming logic problems. Expertly managed projects through each phase of the development lifecycle, including concept, specifications definition, program design, testing, deployment, and post-launch support.

Key highlights
•Facilitated increases in operational efficiency and productivity by proactively participating in training programs to gain and maintain knowledge of the latest technologies.
•Laid the blueprint for new business development by preparing various business analysis documents, charts, tables, and diagrams.
•Continuously sought out project workarounds and process improvement initiatives to resolve existing issues or identify solutions to new business requirements.
•Designed & coded custom programs to handle standardization of databases and data conversion utilizing RPG, RPGIV, RPRILE, CL, DSS, and SQL programming languages for the IBM AS/400.
•Successfully developed and executed an automated conversion and standardization program to correct a client's highly corrupted database.

**Jack Henry & Associates**

**Conversion Programmer /Analyst**          1997 – 1999 (2 years)

## EDUCATION

2009-2010 – Kaplan University – Business Courses

2008-2009 – Keiser College – Paramedic Training

1989-1990 – DelMar College – Banking & Finance Courses

1986-1988 University of Texas @ Pan American – General Studies

1986 – Graduated – McAllen High School – McAllen, TX

EXHIBIT B

**State Farm Lloyds**
*A Lloyds Company In Richardson, Texas*

PO Box 853907
Richardson, TX 75085-3907

AT2      H-08-7693-FB1F  F H W
  002019    3200
JOHNSON, CYNTHIA
709 QUEENSWAY RD
WILLOW PARK TX  76087-7313

## 🏛 StateFarm

# RENEWAL DECLARATIONS

| | |
|---|---|
| **AMOUNT DUE:** | **None** |
| **Payment is due by** | **TO BE PAID BY MORTGAGEE** |

**Policy Number:**  85-C7-M119-4

**Policy Period:**  12 Months
**Effective Dates:** FEB 01 2020 to FEB 01 2021
The policy period begins and ends at 12:01 am standard time at the residence premises.

**Homeowners Policy**

**Location of Residence Premises**
709 QUEENSWAY RD
WILLOW PARK TX 76087-7313

**Your State Farm Agent**
CRAIG BAGLEY
1916 MARTIN DR STE 300
WEATHERFORD TX    76086-6707

**Phone:** (817) 594-0241

| | | | |
|---|---|---|---|
| **Construction:** | Masonry Veneer | **Roof Material:** Metal | |
| **Year Built:** | 1980 | **Roof Installation Year:**  2013 | |

**Automatic Renewal**
If the **POLICY PERIOD** is shown as **12 MONTHS,** this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lien-holder written notice in compliance with the policy provisions or as required by law.

---

**IMPORTANT MESSAGES**

NOTICE: You will be receiving a second envelope that will contain your new Policy Booklet and Important Notice Regarding your New Policy.  Please call your agent if you have any questions.
NOTICE: Information concerning changes in your coverage is included. Please call your agent if you have any questions.
THIS POLICY CONTAINS A POLLUTION EXCLUSION (INCLUDING BUT NOT LIMITED TO ASBESTOS AND LEAD) LOCATED UNDER SECTION II - EXCLUSIONS.
The Inflation Coverage provision may change your deductible. Refer to page 12 of your policy.
Please help us update the data used to determine your premium. Contact your agent with the year each of your home's utilities (heating/cooling, plumbing, or electrical) and roof were last updated.

**PREMIUM**

| | |
|---|---|
| Annual Premium | $2,637.00 |
| Dwelling Foundation | 78.00 |
| Water Damage | 131.00 |
| FAIR Plan Assmt | 5.42 |

*Your premium has already been adjusted by the following:*
Home Alert Discount          Renewal Discount
Home/Auto Discount

---

| **Total Premium** | **$2,851.42** |
|---|---|

Prepared   DEC 16 2019
HO-2000
013229  420
N     C,BT,BX,GB,H5,GA

*Thanks for letting us serve you.  We appreciate our long term customers.*

Page 1 of 4

(o1F1080B) 04-04-2016



| NAMED INSURED | MORTGAGEE AND ADDITIONAL INTERESTS |
|---|---|
| JOHNSON, CYNTHIA | **Mortgagee** |
| | Privacy/Not Relevant/Not Responsive |

## SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| A Dwelling | $ 255,600 |
| Other Structures | $ 25,560 |
| B Personal Property | $ 191,700 |
| C Loss of Use | $ 76,680 |

### Additional Coverages

| | |
|---|---|
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage A amount/$750 per item |

## SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| L Personal Liability (Each Occurrence) | $ 300,000 |
| Damage to the Property of Others | $ 1,000 |
| M Medical Payments to Others (Each Person) | $ 5,000 |

## INFLATION

Inflation Coverage Index: 279.4

## DEDUCTIBLES

| Section I Deductible | Deductible Amount |
|---|---|
| Other Losses 1% | $ 2,556 |
| Wind or Hail 1% | $ 2,556 |

## LOSS SETTLEMENT PROVISIONS

A1  Replacement Cost - Similar Construction
B1  Limited Replacement Cost - Coverage B

HO-2000

SF PROD (Johnson, Cynthia) 0002

85-C7-M119-4                                            **State Farm®**

## FORMS, OPTIONS, AND ENDORSEMENTS



| | |
|---|---|
| HW-2143 | Homeowners Policy |
| Option ID | *Increase Dwlg up to $51,120 |
| Option OL | *Ordinance/Law 10%/ $25,560 |
| Option JF | Jewelry and Furs $1,500 Each |
| | Article/$2,500 Aggregate |
| HO-2597 | *Water Damage Endorsement |
| HO-2594 | *Dwelling Foundation |
| HO-2722 | *Excl-Damage to Metal Roof |
| | *New Form Attached |

## ADDITIONAL MESSAGES

State Farm® works hard to offer you the best combination of price, service, and protection. The amount you pay for homeowners insurance is determined by many factors such as the coverages you have, the type of construction, the likelihood of future claims, and information from consumers reports.

**Other limits and exclusions may apply - refer to your policy**

Your policy consists of these Declarations, the Homeowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by State Farm Lloyds, Inc.

SERVICE OF PROCESS - Service of Process may be had upon the State Official duly designated for such purpose in the state in which the property insured hereunder is located if State Farm Lloyds is licensed in such state; or upon the Commissioner of Insurance of the State of Texas; or upon the duly appointed Attorney-in-Fact for State Farm Lloyds at Dallas, Texas. Underwriters at State Farm Lloyds have complied with the laws of the State of Texas regulating Lloyds plan insurance and said statutes are hereby made a part of the policy. The entire assets of State Farm Lloyds supports its policies, but each individual underwriter's liability is several and not joint and is limited by law to the amount fixed by his/her underwriter's contract and subscription and no underwriter is liable as a partner. This policy is made and accepted subject to the foregoing stipulations and conditions together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no agent or other representative of State Farm Lloyds shall have the power to waive any provision or condition of this policy. This policy is non-assessable and no contingent liability of any kind and character attaches to the insured named herein.

In Witness Whereof, State Farm Lloyds has caused this policy to be signed by its President and Secretary.

State Farm Lloyds

By:

Secretary
State Farm Lloyds, Inc.
Attorney-in-Fact

President
State Farm Lloyds, Inc.
Attorney-In-Fact

Prepared  DEC 16 2019
HO-2000
013230  420
N

Page  3 of  4

SF PROD (Johnson, Cynthia) 0003

**State Farm**®

**Your coverage amount....**
It is up to you to choose the coverages and limits that meet your needs. We recommend that you purchase a coverage limit at least equal to the estimated replacement cost of your home. Replacement cost estimates are available from building contractors and replacement cost appraisers, or, your agent can provide an Xactware estimate using information you provide about your home. We can accept the type of estimate you choose as long as it provides a reasonable level of detail about your home.  State Farm® does not guarantee that any estimate will be the actual future cost to rebuild your home. Higher limits are available at higher premiums. Lower limits are also available, which if selected may make certain coverages unavailable to you. We encourage you to periodically review your coverages and limits with your agent and to notify us of any changes or additions to your home.

HO-2000

Page  4 of  4

SF PROD (Johnson, Cynthia) 0004

85-C7-M119-4     013231

HO-2597C
Page 1 of 3

# IMPORTANT NOTICE



Effective with this policy term, **HO-2597 WATER DAMAGE ENDORSEMENT** replaces **FE-5369.2 WATER DAMAGE ENDORSEMENT**.

This notice summarizes the changes being made to your policy.  Please read the new endorsement carefully and note the following changes:

### POTENTIAL REDUCTIONS IN COVERAGE

Although not intended to change coverage, this change could potentially reduce or eliminate coverage depending on how it is interpreted and, in that regard, should be viewed as either an actual or potential reduction in or elimination of coverage.

- Under **SECTION I – ADDITIONAL COVERAGES**, we have added language to the **Water Damage Coverage** area of the endorsement.
  - We will pay for damages resulting from the continuous or repeated seepage or leakage of water or steam that is continuous, repeating, gradual, intermittent, slow, or trickling from a heating, air conditioning, automatic fire protection sprinkler, household appliance, or plumbing system.
  - We will not pay for fungus which is the result of continuous or repeated seepage or leakage of water or steam that is continuous, repeating, gradual, intermittent, slow, or trickling.
- Under **SECTION I – LOSSES INSURED COVERAGE B – PERSONAL PROPERTY**, item 12. **Abrupt and accidental discharge or overflow** language has been revised to provide that this peril does not include loss:
  - Caused by or resulting from the pressure from or presence of tree, shrub, or plant roots; or
  - That occurs or develops over a period of time and is caused by or is resulting from:
    - Condensation or the presence of humidity, moisture, or vapor; or
    - Seepage or leakage of water, steam, or sewage that is continuous, repeating, gradual, intermittent, slow, or trickling.
- Under **SECTION I – LOSSES INSURED COVERAGE B – PERSONAL PROPERTY**, item 13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** language has been revised to provide that this peril does not include loss that occurs or develops over a period of time and is caused by or is resulting from:
  - Condensation or the presence of humidity, moisture, or vapor; or
  - Seepage or leakage of water, steam, or sewage that is continuous, repeating, gradual, intermittent, slow, or trickling.
- Under **SECTION I – LOSSES NOT INSURED**, item 1.f.,  language has been revised to emphasize that continuous, repeating, gradual, intermittent, slow, or trickling seepage or leakage of water, steam, or sewage from a household appliance or heating, air conditioning, automatic fire protection sprinkler, or plumbing systems, occurring or developing over a period of time, is excluded from coverage. Any loss arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time is also excluded from coverage.

Endorsement **HO-2597 WATER DAMAGE ENDORSEMENT** follows this notice. Please read it thoroughly and place it with your policy. If you have any questions about the information in this notice, please contact your State Farm® agent.

This notice is a general description of coverage and/or coverage changes and is not a statement of contract. This message does not change, modify, or invalidate any of the provisions, terms, or conditions of your policy, or any other applicable endorsements.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF PROD (Johnson, Cynthia) 0005

## HO-2597 WATER DAMAGE ENDORSEMENT

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY and CONDOMINIUM UNITOWNERS POLICY

**SECTION I – ADDITIONAL COVERAGES**

The following is added:

**Water Damage Coverage.**

1. *We* will pay for the deterioration, wet rot or dry rot of property described in Coverage A and Coverage B caused by the continuous or repeated seepage or leakage of water or steam that is continuous, repeating, gradual, intermittent, slow, or trickling from a:

   a. heating, air conditioning or automatic fire protective sprinkler system;

   b. household appliance; or

   c. plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

   This coverage includes the cost of tearing out and replacing only that particular part of the *building structure* necessary to gain access to the specific point of that system or appliance from which seepage or leakage occurred.

2. *We* will not pay for:

   a. loss to the system or appliance from which the water or steam escaped;

   b. loss caused by, consisting of, or resulting from *fungus*; or

   c. *fungus* which is the result of continuous or repeated seepage or leakage of water or steam that is continuous, repeating, gradual, intermittent, slow, or trickling from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, within, or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

**SECTION I – LOSSES INSURED**

**COVERAGE B – PERSONAL PROPERTY**

The following revisions are made for the purpose of this endorsement only.

Item 12. is replaced with the following:

12. **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

    Except as specifically provided by this endorsement, this peril does not include loss:

    a. to the system or appliance from which the water, steam, or sewage escaped;

    b. caused by or resulting from:

       (1) freezing, except as specifically provided in **SECTION I – LOSSES INSURED, Freezing;**

       (2) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

       (3) the pressure from or presence of tree, shrub, or plant roots; or

    c. that occurs or develops over a period of time and is caused by or resulting from:

       (1) condensation or the presence of humidity, moisture, or vapor; or

       (2) seepage or leakage of water, steam, or sewage that is:

          (a) continuous;

          (b) repeating;

          (c) gradual;

          (d) intermittent;

          (e) slow; or

          (f) trickling.

Item 13. is replaced with the following:

13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

    Except as specifically provided by this endorsement, this peril does not include loss:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF PROD (Johnson, Cynthia) 0006

**85-C7-M119-4**     **013232**

HO-2597C
Page 3 of 3



ST-
0409-0000

a. caused by or resulting from freezing, except as specifically provided in SECTION I – LOSSES INSURED, Freezing; or

b. that occurs or develops over a period of time and is caused by or resulting from:

　(1) condensation or the presence of humidity, moisture, or vapor; or

　(2) seepage or leakage of water or steam that is:

　　(a) continuous;

　　(b) repeating;

　　(c) gradual;

　　(d) intermittent;

　　(e) slow; or

　　(f) trickling.

**SECTION I – LOSSES NOT INSURED**

The following revisions are made for the purposes of this endorsement only.

Item 1.f. is replaced with the following:

f. except as specifically provided by this endorsement, seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

　(1) and is:

　　(a) continuous;

　　(b) repeating;

HO-2597

　　(c) gradual;

　　(d) intermittent;

　　(e) slow; or

　　(f) trickling; and

　(2) from a:

　　(a) heating, air conditioning, or automatic fire protective sprinkler system;

　　(b) household appliance; or

　　(c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

　*We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time;

Item 1.g. is replaced with the following:

g. wear, tear, marring, scratching, inherent vice, latent defect or mechanical breakdown;

Item 1.i. is deleted.

Item 1. k. is replaced with the following:

k. settling, cracking, shrinking, bulging, or expansion of pavements, patios or foundations (including slabs, basement walls, crawl space walls, and footings);

Except as stated in this endorsement *we* will not pay for any loss described in SECTION I – LOSSES NOT INSURED.

All other policy provisions apply.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(CONTINUED)

SF PROD (Johnson, Cynthia) 0007

# IMPORTANT NOTICE

Effective with this policy term, **HO-2594 DWELLING FOUNDATION ENDORSEMENT** replaces **FE-5368.2 DWELLING FOUNDATION ENDORSEMENT**.

This notice summarizes the changes being made to your policy. Please read the new endorsement carefully and note the following changes:

## POTENTIAL REDUCTIONS IN COVERAGE

Although not intended to change coverage, this change could potentially reduce or eliminate coverage depending on how it is interpreted and, in that regard, should be viewed as either an actual or potential reduction in or elimination of coverage.

Under **SECTION I – LOSSES NOT INSURED**, item 1.f., language has been revised to emphasize that continuous, repeating, gradual, intermittent, slow, or trickling seepage or leakage of water, steam, or sewage from a household appliance or heating, air conditioning, automatic fire protection sprinkler, or plumbing systems, occurring or developing over a period of time, is excluded from coverage. Any loss arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time is also excluded from coverage.

Endorsement **HO-2594 DWELLING FOUNDATION ENDORSEMENT** follows this notice. Please read it thoroughly and place it with your policy. If you have any questions about the information in this notice, please contact your State Farm® agent.

This notice is a general description of coverage and/or coverage changes and is not a statement of contract. This message does not change, modify, or invalidate any of the provisions, terms, or conditions of your policy, or any other applicable endorsements.

## HO-2594 DWELLING FOUNDATION ENDORSEMENT

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY

**SECTION I – ADDITIONAL COVERAGES**

The following is added:

**Dwelling Foundation Coverage.** *We* will pay for loss caused by and consisting of settling, cracking, shrinking, bulging, or expansion of the foundation, floor slab or footings that support the *dwelling* caused by seepage or leakage of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system.

This coverage includes the cost of tearing out and replacing only that particular part of the *dwelling* necessary to gain access to the specific point of that system from which the leakage or seepage occurred.

*We* will not pay for loss to the system from which the water or steam escaped.

**Limit of Liability.** *Our* limit of liability for this coverage will not exceed an amount equal to 15% of the amount shown in the *Declarations* for COVERAGE A – DWELLING on the date of the loss.

**SECTION I – LOSSES NOT INSURED**

The following revisions are made for the purposes of this endorsement only.

Item 1.f. is replaced with the following:

f. except as specifically provided by this endorsement, seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

(1) and is:

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling; and

(2) from a:

(a) heating, air conditioning, or automatic fire protective sprinkler system;

(b) household appliance; or

(c) plumbing system, including from, within or around any shower stall, shower bath, tub

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF PROD (Johnson, Cynthia) 0008

**85-C7-M119-4        013233**

HO-2594C
Page 2 of 2

installation, or other plumbing fixture, including their walls, ceilings, or floors.

*We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time;

Item 1.k. is replaced with the following:

HO-2594

k.    except as specifically provided by this endorsement, settling, cracking, shrinking, bulging, or expansion of pavements, patios, walls, floors, roofs or ceilings;

Except as stated in this endorsement *we* will not pay for any loss described in **SECTION I – LOSSES NOT INSURED.**

All other policy provisions apply.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(CONTINUED)

SF PROD (Johnson, Cynthia) 0009

# IMPORTANT NOTICE

Effective with this policy term, **HO-2722 METAL ROOF EXCLUSION FOR HAIL (SECTION I – ADDITIONAL COVERAGE: Metal Roof)** replaces **FE-8706.1 EXCLUSION OF COSMETIC LOSS TO METAL ROOF COVERINGS CAUSED BY HAIL**.

This notice summarizes the changes being made to your policy. Please read the new endorsement carefully and note the following changes:

### REDUCTIONS OR ELIMINATIONS OF COVERAGE

- **SECTION I – LOSSES NOT INSURED** – Language has been revised to provide that we will not pay for hail damage to any metal roof except as provided in **SECTION I – ADDITIONAL COVERAGES, Metal Roof**.

- **SECTION I – ADDITIONAL COVERAGES** – We have added a **Metal Roof** additional coverage. Under this coverage, we will pay for individual metal roof components for accidental direct physical loss directly and immediately caused by hail, but only if hail creates an opening that completely penetrates through that individual component. Coverage is limited to repairing or replacing the individual metal roof components with material of similar construction.

  o We have added the definition of "metal roof," which states that a metal roof collectively includes, but is not limited to, the following individual components, including paint or any other coating that may be applied to that component: exterior metal shingle or metal roof panel, metal underlayment panel, metal roof vent, metal turbine, metal skylight components, metal flashing panel or strip, and any other metal roofing component comprising part of the overall roof system.

Endorsement **HO-2722** follows this notice. Please read it thoroughly and place it with your policy. If you have any questions about the information in this notice, please contact your State Farm® agent.

This notice is a general description of coverage and/or coverage changes and is not a statement of contract. This message does not change, modify, or invalidate any of the provisions, terms, or conditions of your policy, or any other applicable endorsements.

## HO-2722 METAL ROOF EXCLUSION FOR HAIL (SECTION I – ADDITIONAL COVERAGE: Metal Roof)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY

The following is added to **SECTION I – LOSSES NOT INSURED**:

*We* also will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by hail damage to any *metal roof* except as provided in **SECTION I – ADDITIONAL COVERAGES, Metal Roof**, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of the perils listed in 1.a. through 1.m.

However, *we* will pay for any direct loss resulting from hail damage unless the resulting loss is itself a Loss Not Insured as described in this Section.

The following is added to **SECTION I – ADDITIONAL COVERAGES**:

**Metal Roof.** *We* separately insure individual *metal roof* components on a covered building or structure for accidental direct physical loss directly and immediately caused by hail, but only if hail creates an opening that completely penetrates through that individual component.

Coverage is limited to repairing or replacing the individual *metal roof* components with material of similar construction.

The following is added to DEFINITIONS:

*"Metal roof"* collectively includes, but is not limited to the following individual components:

a.  exterior metal shingle or metal roof panel;

b.  metal underlayment panel;

c.  metal roof vent;

d.  metal turbine;

e.  metal skylight components;

f.  metal flashing panel or strip; and

g.  any other metal roofing component comprising part of the overall roof system.

Each component also includes paint or any other coating that may be applied to that component.

All other policy provisions apply.

HO-2722

©, Copyright, State Farm Mutual Automobile Insurance Company, 2018

SF PROD (Johnson, Cynthia) 0010

85-C7-M119-4      013234

553-4230 TX

# Important Notice

### Regarding the Metal Roof Exclusion for Hail (SECTION I – ADDITIONAL COVERAGE: Metal Roof)

The following information is being provided in accordance with Texas law.

Your policy includes endorsement HO-2722, METAL ROOF EXCLUSION FOR HAIL (SECTION I – ADDITIONAL COVERAGE: Metal Roof), which modifies the coverage provided by your policy.

The endorsement states we will not pay for any loss to the property described in Coverage A of your policy that consists of, or is directly and immediately caused by, hail damage to any metal roof except as provided in the SECTION I – ADDITIONAL COVERAGES, Metal Roof, shown below regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of the listed perils.

We will pay for any direct loss resulting from hail damage unless the resulting loss is itself a Loss Not Insured as described in the policy.

The endorsement adds the following in SECTION I – ADDITIONAL COVERAGES:

Metal Roof. We separately insure individual metal roof components on a covered building or structure for accidental direct physical loss directly and immediately caused by hail, but only if hail creates an opening that completely penetrates through that individual component. Coverage is limited to repairing or replacing the individual metal roof components with material of similar construction.

The following definition of "Metal Roof" is added to your policy with HO-2722: "Metal roof" collectively includes, but is not limited to, the following individual components:

a.   exterior metal shingle or metal roof panel;

b.   metal underlayment panel;

c.   metal roof vent;

d.   metal turbine;

e.   metal skylight components;

f.   metal flashing panel or strip; and

g.   any other metal roofing component comprising part of the overall roof system.

Each component also includes paint or any other coating that may be applied to that component.

Please read the endorsement thoroughly. If you have any questions about the endorsement, please contact your State Farm® agent.

*This Notice is provided for informational purposes only, and it does not change, modify or invalidate any of the provisions, terms or conditions of your policy, or any other applicable endorsements.*

553-4230 TX

SF PROD (Johnson, Cynthia) 0012

**85-C7-M119-4**    **013235**

553-3107 TX.5

# Important Notice About Your Policy



Thank you for selecting State Farm® insurance.

To complete the renewal of your policy, we may obtain and use credit information on you or another member(s) of your household as a part of the insurance credit scoring process.

This information may be used in determining the price you are being charged. If credit information was used to complete the renewal of your policy, the name of the person whose credit information was obtained will be shown on your Renewal Declarations.

If you have questions about this disclosure, contact your State Farm agent. Your agent's address and phone number are listed on the front of your Renewal Declarations. You may also contact the Texas Consumer Hot Line at:

> 1-800-STATEFARM (1-800-782-8332)
> State Farm Lloyds
> CityLine Operations Center
> 1251 State Street, Suite 1000
> P.O. Box 853907
> Richardson, Texas 75085-3907

For more information or other questions, contact the Texas Department of Insurance at:

> Texas Department of Insurance
> 1-800-252-3439
> P.O. Box 149104
> Austin, TX 78714-9104
> Fax: (512) 490-1007
> Web: www.tdi.texas.gov
> E-mail: ConsumerProtection@tdi.texas.gov
> Other information: www.helpinsure.com

Section 559.053 of the Texas Insurance Code requires an insurer or its agents to disclose to its customers whether credit information will be obtained on the applicant or insured or on any other member(s) of the applicant's or insured's household and used as part of the insurance credit scoring process.

If credit information is obtained or used on the applicant or insured, or on any member of the applicant's or insured's household, the insurer shall disclose to the applicant the name of each person on whom credit information was obtained and used and how each person's credit information was used to underwrite or rate the policy. An insurer may provide this information with this disclosure or in a separate notice.

Adverse effect means an action taken by an insurer in connection with the underwriting of insurance for a consumer that results in the denial of coverage, the cancellation or nonrenewal of coverage, or the offer to and acceptance by a consumer of a policy form, premium rate, or deductible other than the policy form, premium rate, or deductible for which the consumer specifically applied.

Credit information is any credit-related information derived from a credit report itself, or provided in an application for personal insurance. The term does not include information that is not credit-related, regardless of whether the information is contained in a credit report or in an application for insurance coverage or is used to compute a credit score.

Credit score or insurance score is a number or rating derived from a mathematical formula, computer application, model, or other process that is based on credit information and used to predict the future insurance loss exposure of a consumer.

**SUMMARY OF CONSUMER PROTECTIONS CONTAINED IN CHAPTER 559**

**PROHIBITED USE OF CREDIT INFORMATION.** An insurer may not:

1. use a credit score that is computed using factors that constitute unfair discrimination;

2. deny, cancel, or nonrenew a policy of personal insurance solely on the basis of credit information without consideration of any other applicable underwriting factor independent of credit information; or

3. take an action that results in an adverse effect against a consumer because the consumer does not have a credit card account without consideration of any other applicable factor independent of credit information.

*(Continued)*

SF PROD (Johnson, Cynthia) 0013

An insurer may not consider an absence of credit information or an inability to determine credit information for an applicant for insurance coverage or insured as a factor in underwriting or rating an insurance policy unless the insurer:

1. has statistical, actuarial, or reasonable underwriting information that:

   (A) is reasonably related to actual or anticipated loss experience; and

   (B) shows that the absence of credit information could result in actual or anticipated loss differences;

2. treats the consumer as if the applicant for insurance coverage or insured had neutral credit information, as defined by the insurer; or

3. excludes the use of credit information as a factor in underwriting and uses only other underwriting criteria.

**NEGATIVE FACTORS.** An insurer may not use any of the following as a negative factor in any credit scoring methodology or in reviewing credit information to underwrite or rate a policy of personal insurance:

1. a credit inquiry that is not initiated by the consumer;

2. an inquiry relating to insurance coverage, if so identified on a consumer's credit report; or

3. a collection account with a medical industry code, if so identified on the consumer's credit report.

Multiple lender inquiries made within 30 days of a prior inquiry, if coded by the consumer reporting agency on the consumer's credit report as from the home mortgage or motor vehicle lending industry, shall be considered by an insurer as only one inquiry.

**EFFECT OF EXTRAORDINARY EVENTS.** An insurer shall, on written request from an applicant for insurance coverage or an insured, provide reasonable exceptions to the insurer's rates, rating classifications, or underwriting rules for a consumer whose credit information has been directly influenced by a catastrophic illness or injury, by the death of a spouse, child, or parent, by temporary loss of employment, by divorce, by military deployment overseas or by identity theft. In such a case, the insurer may consider only credit information not affected by the event or shall assign a neutral credit score.

An insurer may require reasonable written and independently verifiable documentation of the event and the effect of the event on the person's credit before granting an exception. An insurer is not required to consider repeated events or events the insurer reconsidered previously as an extraordinary event.

An insurer may also consider granting an exception to an applicant for insurance coverage or an insured for an extraordinary event not listed in this section. An insurer is not out of compliance with any law or rule relating to underwriting, rating, or rate filing as a result of granting an exception under this article.

**NOTICE OF ACTION RESULTING IN ADVERSE EFFECT.** If an insurer takes an action resulting in an adverse effect with respect to an applicant for insurance coverage or insured based in whole or in part on information contained in a credit report, the insurer must provide to the applicant or insured within 30 days certain information regarding how an applicant or insured may verify and dispute information contained in a credit report.

**DISPUTE RESOLUTION; ERROR CORRECTION.** If it is determined through the dispute resolution process established under Section 611(a)(5), Fair Credit Reporting Act (15 U.S.C. Section 1681i), as amended, that the credit information of a current insured was inaccurate or incomplete or could not be verified and the insurer receives notice of that determination from the consumer reporting agency or from the insured, the insurer shall re-underwrite and re-rate the insured not later than the 30th day after the date of receipt of the notice.

After re-underwriting or re-rating the insured, the insurer shall make any adjustments necessary within 30 days, consistent with the insurer's underwriting and rating guidelines. If an insurer determines that the insured has overpaid premium, the insurer shall credit the amount of overpayment. The insurer shall compute the overpayment back to the shorter of the last 12 months of coverage; or the actual policy period.

State Farm Lloyds
Richardson, TX

553-3107 TX.5

(CONTINUED)

SF PROD (Johnson, Cynthia) 0014

85-C7-M119-4      013236

553-3653 TX.3

# IMPORTANT NOTICE

To obtain information or make a complaint:

You may call the State Farm® toll-free telephone number for information or to make a complaint at:

**800-STATEFARM (1-800-782-8332)**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007
Web: www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

To obtain price and policy form comparisons and other information relating to residential property insurance and personal automobile insurance, you may visit the Texas Department of Insurance/ Office of Public Insurance Counsel website:

**www.helpinsure.com**

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

553-3653 TX.3 (C)

# AVISO IMPORTANTE

Para obtener información o para presentar una queja:

Usted puede llamar al número de teléfono gratuito de State Farm® para obtener información o para presentar una queja al:

**800-STATEFARM (800-782-8332)**

Usted puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos o quejas al:

**1-800-252-3439**

Usted puede escribir al Departamento de Seguros de Texas:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007
Web: www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

Para obtener formas para la comparación de precios y pólizas y para obtener otra información sobre el seguro de propiedad residencial y de seguro de automóvil personal, visite el sitio web del Departamento de Seguros de Texas/Oficina del Asesor Público de Seguros:

**www.helpinsure.com**

**DISPUTAS SOBRA PRIMAS DE O RECLAMACIONES:**
Si tiene una disputa relacionada con su prima de seguro o con una reclamación, usted debe comunicarse con el agente primero. Si la disputa no es resuelta, puede comunicarse con Departamento de Seguros de Texas.

**ADJUNTE ESTE AVISO A SU PÓLIZA:**
Este aviso es solamente para propósito de informativos y no se convierte en parte o en condición del documento adjunto.

(CONTINUED)

SF PROD (Johnson, Cynthia) 0015

553-4243 TX

## Important Notice Regarding Roof Surfaces Charge

Due to the higher loss costs we experience from homes with wood shingles, wood shakes, and composition shingles installed over wood shingles or shakes, an additional premium charge applies for homes with these types of roofing materials. The additional charge also applies to homes with a metal roof if endorsement HO-2722 or HO-3722, METAL ROOF EXCLUSION FOR HAIL (SECTION I – ADDITIONAL COVERAGE: Metal Roof) is not part of your policy.

The premium charge does not apply to policies that include endorsement HO-2721 or HO-3721 WINDSTORM OR HAIL EXCLUSION AGREEMENT ENDORSEMENT. A dwelling that uses more than one roofing material shall be classified by the predominant type of roofing construction.

Please contact your State Farm® agent if you have any questions about your policy or premium.

## Important Notice Regarding Homeowners Coverage Choices Available to You

State Farm offers two choices for homeowners coverage – **Homeowners** and **Homeowners Basic**. We have listed below the primary differences between your two options. Your State Farm agent can help you make an informed decision between them.

**Homeowners:** This option provides insurance for your dwelling, personal property and personal liability. In case of a covered loss, this policy will pay the full replacement cost for both your dwelling and your personal property (subject to policy limits and exclusions).

**Homeowners Basic:** This option also provides insurance for your dwelling, personal property and personal liability. This policy offers less coverage than the standard Homeowners policy at a lower price. In case of a covered loss, the Homeowners Basic policy may have lower coverage limits and may settle claims in a more restrictive manner than the standard Homeowners policy for both your dwelling and your personal property (subject to policy limits and exclusions).

For more information on the differences between these two homeowners products, please contact your State Farm agent.

553-4243 TX

553-4157

## NOTICE TO POLICYHOLDER

For a comprehensive description of coverages and forms, please refer to your policy.

Policy changes that you requested before the "Date Prepared" on your Renewal Declarations are effective on the renewal date of this policy unless indicated otherwise by a separate endorsement, binder or Amended Declarations Page.  Any coverage forms or endorsements included with your Renewal Declarations are effective on the renewal date of this policy.

Policy changes that you requested after the "Date Prepared" on your Renewal Declarations will be sent to you as an Amended Declarations Page or as an endorsement to your policy.  You will be billed for any resulting premium increase later.

If you have acquired any valuable property items, made any improvements to your home, or have questions about your insurance coverage, please contact your State Farm® agent.

553-4157 (C)

(CONTINUED)

SF PROD (Johnson, Cynthia) 0016

**85-C7-M119-4      013237**

553-3797 TX.3

## IMPORTANT NOTICE



The following information is being provided in accordance with Texas law.

Your policy includes provisions under SECTION I – CONDITIONS that state:

- You must file a claim with us not later than one year after the date of the loss that is the subject of the claim unless you show good cause for not filing the claim within this time period. Good cause means objective facts beyond your control that reasonably caused you to fail to file a claim under the policy within the one-year claim-filing deadline. If good cause is shown, we may extend the one-year claim-filing period.

- With respect to a loss caused by windstorm or hail in the catastrophe area as defined under Texas law, no suit or action may be brought against us unless it is started within the earlier of:

  - two years from the date we accept or reject the claim; or
  - three years from the date of the loss that is the subject of the claim.

  *This Notice is provided for informational purposes only, and it does not change, modify or invalidate any of the provisions, terms or conditions of your policy, or any other applicable endorsements.*

553-3797 TX.3 (C)

553-4156

## PREMIUM ADJUSTMENT

Insurance premiums have been adjusted and continue to reflect the expected cost of claims. Some policyholders will see their premiums increase while other policyholders may see their premiums decrease or stay the same. The amount your premium changed, if at all, depends on several factors including the expected claim experience in your area, the coverage you have, and any applicable discounts or charges.

The enclosed Renewal Declarations reflects your new premium.

State Farm® works hard to offer you the best combination of cost, protection, and service. We will continue doing our best to make the most effective use of your premium dollars and give you superior service when you need it.

If you have any questions about your premium, or policy coverages, please contact your State Farm agent.

553-4156

SF PROD (Johnson, Cynthia) 0017

SF PROD (Johnson, Cynthia) 0018



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars.   However, we want to point out that every policy contains limitations and exclusions.   Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

# State Farm®
# Homeowners
# Policy

**Texas**
HW-2143

SF PROD (Johnson, Cynthia) 0019

# HOMEOWNERS POLICY
## TABLE OF CONTENTS

**AGREEMENT** ...............................................1

**DEFINITIONS** ...............................................1

**DEDUCTIBLE** ...............................................5

**SECTION I – PROPERTY COVERAGES** .................5

  **COVERAGE A – DWELLING**.....................................5

    Dwelling .............................................................5

    Other Structures ................................................5

    Property Not Covered.........................................5

  **COVERAGE B – PERSONAL PROPERTY** ...............5

    Property Covered ...............................................5

    Special Limits of Liability ...................................6

    Property Not Covered .........................................7

  **COVERAGE C – LOSS OF USE** ............................8

    Additional Living Expense ..................................8

    Fair Rental Value................................................8

    Prohibited Use ...................................................8

  **SECTION I – ADDITIONAL COVERAGES**...............8

    Debris Removal..................................................8

    Temporary Repairs............................................9

    Trees, Shrubs, and Landscaping ......................9

    Property Removed .............................................9

    Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money........................9

    Power Interruption ...........................................10

    Refrigerated Products ......................................10

    Arson Reward...................................................10

    Volcanic Action................................................10

    Collapse ..........................................................10

    Locks and Remote Devices...............................11

    Fuel Oil Release...............................................11

    Tear Out ..........................................................11

    Home Certification............................................11

  **INFLATION COVERAGE** ......................................12

**SECTION I – LOSSES INSURED** ..............................12

  **COVERAGE A – DWELLING**...................................12

  **COVERAGE B – PERSONAL PROPERTY** ............12

**SECTION I – LOSSES NOT INSURED**......................15

**SECTION I – LOSS SETTLEMENT** ...........................18

  **COVERAGE A – DWELLING**...................................18

    A1 – Replacement Cost Loss Settlement – Similar Construction ........................................18

    A2 – Replacement Cost Loss Settlement – Common Construction.....................................19

  **COVERAGE B – PERSONAL PROPERTY** ............19

    B1 – Limited Replacement Cost Loss Settlement ......................................................19

    B2 – Depreciated Loss Settlement...................20

  **SECTION I – CONDITIONS**..................................20

    Insurable Interest and Limit of Liability .............20

    Your Duties After Loss .....................................20

    Loss to a Pair or Set........................................21

    Appraisal..........................................................21

    Other Insurance...............................................23

    Suit Against Us.................................................23

    Our Option.......................................................23

    Loss Payment..................................................23

    Abandonment of Property.................................23

    Mortgagee Clause............................................23

    No Benefit to Bailee.........................................24

    Residential Community Property Clause...........24

    Our Duties After Loss ......................................24

    Catastrophe Claims.........................................24

    Recovered Property..........................................25

    Assignment of Claim........................................25

**SECTION II – LIABILITY COVERAGES** .....................25

  **COVERAGE L – PERSONAL LIABILITY** ..............25

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0020

**COVERAGE M – MEDICAL PAYMENTS TO OTHERS** .................................................25

**SECTION II – ADDITIONAL COVERAGES** ............25

    Claim Expenses ...........................................25

    First Aid Expenses .....................................26

    Damage to Property of Others .....................26

**SECTION II – EXCLUSIONS** ...................................26

**SECTION II – CONDITIONS** ..................................30

    Limit of Liability .........................................30

    Severability of Insurance ............................30

    Duties After Loss .......................................30

    Coverage M Requirements ...........................31

    Payment of Claim – Coverage M or Damage to Property of Others ...................................31

    Suit Against Us ..........................................31

    Bankruptcy of an Insured ............................31

    Other Insurance – Coverage L .....................31

    Notice of Settlement of Liability Claim ............31

**SECTION I AND SECTION II – CONDITIONS** ............31

    Policy Period ..............................................31

    Concealment or Fraud .................................31

    Liberalization Clause ...................................32

    Waiver or Change of Policy Provisions ...........32

    Cancellation ...............................................32

Nonrenewal ...................................................32

Assignment of Policy .......................................33

Subrogation and Reimbursement .....................33

Death ............................................................33

Conformity to State Law ...................................33

Premium .......................................................33

Right to Inspect ..............................................34

Change of Policy Address ................................34

Electronic Delivery ..........................................34

Duties Regarding Claim Information ..................34

**OPTIONAL POLICY PROVISIONS** ...........................35

    Option AI – Additional Insured .....................35

    Option BP – Business Property .....................35

    Option BU – Business Pursuits .....................35

    Option FA – Firearms ..................................36

    Option ID – Increased Dwelling Limit .............36

    Option IO – Incidental Business .....................36

    Option JF – Jewelry and Furs ........................37

    Option OL – Building Ordinance or Law ...........38

    Option SG – Silverware and Goldware Theft .......................................................39

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

# HOMEOWNERS POLICY
## AGREEMENT

*We* agree to provide the insurance described in this policy:

1. based on *your* payment of premium, in a form acceptable to *us*, for the coverages *you* chose;

2. based on *your* compliance with all applicable provisions of this policy; and

3. based on the information *you* have given *us* and *your* statements in this agreement.

*You* agree, by acceptance of this policy, that:

1. *you* will pay premiums when due and comply with the provisions of this policy;

2. the statements in this agreement are *your* statements and are true;

3. *we* insure *you* on the basis *your* statements are true; and

4. this policy contains all of the agreements between *you* and *us*. No other agreements apply to this insurance.

When *you* request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, *we* may adjust the premium in accordance with the change during the policy period and *you* must pay any additional premium due within the time *we* specify.

## DEFINITIONS

*We* define the following words and phrases for use throughout this policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in bold italics.

1. *"actual cash value"* means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

    a. materials, including any tax;

    b. labor, including any tax; and

    c. overhead and profit;

    are subject to depreciation.

    The depreciation deduction may include such considerations as:

    a. age;

    b. condition;

    c. reduction in useful life;

    d. obsolescence; and

    e. any pre-loss damage including wear, tear, or deterioration;

    of the damaged part of the property.

2. *"bodily injury"* means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death resulting therefrom.

    *Bodily injury* does not include:

    a. the transmission of a *communicable disease* by any *insured* to any other person;

    b. the exposure to any *communicable disease* by any *insured* to any other person; or

    c. emotional distress, mental anguish, humiliation, mental injury, or similar injury unless it arises out of actual physical injury to some person.

3. *"building structure"* means a structure fully enclosed with permanent walls and a roof. A permanent wall or roof does not include any kind of temporary materials including but not limited to tarps, plastic sheeting, or other similar material. A structure that is otherwise fully enclosed with permanent walls and a roof, that is currently undergoing active maintenance or repairs, using materials such as tarps, plastic sheeting, or other similar material, is still considered a *building structure*.

    A *building structure* includes:

    a. the foundation supporting the structure, including:

        (1) slabs;

1

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0022

   (2)  basement walls;

   (3)  crawl space walls;

   (4)  footings; and

   (5)  gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

  b.  wall-to-wall carpeting attached to the structure.

4.  *"business"* means any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature. It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an *insured's* principal means of livelihood. Profit and profit motive are irrelevant.

*Business* does not include:

  a.  volunteer activities for a not-for-profit or non-profit organization or public agency for which no money is received other than payment of expenses;

  b.  incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the *insured*;

  c.  any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age, including but not limited to, child care, lawn mowing, or paper delivery;

  d.  the ownership, maintenance, or use of systems and equipment used to generate electrical power up to but not exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss; or

  e.  ownership of the *residence premises* by the person or organization shown in the *Declarations* as Additional Insured.

5.  "*business day*" means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

6.  "*communicable disease*" means bacteria, parasite, virus or other organism commonly transmitted from person to person due to sexual contact with an affected person or that person's discharges.

7.  *"Declarations"* means the policy *Declarations*, any amended *Declarations*, the most recent renewal *Declarations*, an Evidence of Insurance form, or any endorsement changing any of these.

8.  *"diminution in value"* means any reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

9.  *"dwelling"* means the *building structure* on the *residence premises* used as the primary private residence and includes structures attached to the *dwelling*.

10.  *"fungus"* means any type or form of *fungus*, including mold, mildew, mycotoxins, spores, scents, or by-products produced or released by fungi.

11.  *"insured"* means:

  a.  *you*;

  b.  *your relatives*; and

  c.  any other person under the age of 21 in the care of a person described above, including children in a joint custody situation even if they do not reside primarily with *you*.

Under Section II, *insured* also means:

  d.  the person or organization legally responsible for animals or watercraft to which this policy applies. However, the animal or watercraft must be owned by *you* or a person included in 11.b. or 11.c. above.  A person or organization using or having custody of these animals or watercraft in the course of a *business*, or without permission of the owner, is not an *insured*; and

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0023

e. with respect to any vehicle to which this policy applies, any person while engaged in *your* employment or the employment of a person included in 11.b. or 11.c. above.

12. **"insured location"** means:

a. the **residence premises**;

b. the part of any other premises, other structures, and grounds used by *you* as a residence. This includes premises, structures, and grounds *you* acquire while this policy is in effect for *your* use as a residence;

c. any premises used by *you* in connection with the premises included in 12.a. or 12.b. above;

d. any part of a premises not owned by an *insured* but where an *insured* is temporarily residing;

e. land owned by or rented to an *insured* on which a one or two family dwelling is being constructed as a residence for an *insured*;

f. individual or family cemetery plots or burial vaults owned by an *insured*;

g. any part of a premises occasionally rented to an *insured* for purposes other than *business*;

h. vacant land owned by or rented to an *insured*. For the purposes of this definition, vacant land does not include:

(1) farm land;

(2) land containing a residence; or

(3) land containing fences, corrals, boat docks, tool sheds, barns, grain bins, and similar structures, unless they are used solely for the personal use of the *insured*; or

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

13. **"loss insured"** means a loss as described under SECTION I – LOSSES INSURED, COVERAGE A – DWELLING and SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.

14. **"motor vehicle"**, when used in Section II of this policy, means:

a. a land **motor vehicle** designed for travel on public roads or subject to motor vehicle registration;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c. a "recreational or utility vehicle" while off an *insured location*. "Recreational or utility vehicle" means a motorized vehicle designed for recreation or utility purposes, used principally off public roads, and that is owned or leased by an *insured*. This includes, but is not limited to, a motorized all-terrain vehicle, side-by-side vehicle, utility work vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike, and personal assistive mobility device. "Leased" does not include temporary rental;

d. a "locomotive" while off an *insured location*. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an *insured*. "Leased" does not include temporary rental;

e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle, or road building vehicle that is owned or leased by an *insured* while off an *insured location*. "Leased" does not include temporary rental; and

f. any vehicle while being towed or pushed by or carried on a vehicle included in 14.a. through 14.e. above.

The following are not *motor vehicles*:

a. a boat, camper, home, or utility trailer not being towed or pushed by or carried on a vehicle included in 14.a. through 14.e. above;

b. a motorized land vehicle in storage on an *insured location* not intended to be operated for an extended period of time and rendered inoperable by placing the vehicle on blocks or removing parts essential for its operation;

c. a motorized golf cart while used for golfing purposes;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2143

SF PROD (Johnson, Cynthia) 0024

d.  a motorized vehicle or trailer designed to assist persons with disabilities that is not designed for travel on public roads or subject to motor vehicle registration; or

e.  a commercially manufactured two, three, or four wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

15. **"occurrence"**, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a.  **bodily injury**; or

b.  **property damage**;

during the policy period. All **bodily injury** and **property damage** resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one **occurrence**.

16. **"property damage"** means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

17. **"relative"** means any person related to **you** by:

a.  blood;

b.  adoption;

c.  marriage; or

d.  civil union, domestic partnership, or other substantially similar legal relationship that is recognized and valid in the state where, and at the time when, the legal relationship was established;

and who resides primarily with **you**.

18. **"residence employee"** means an employee of an **insured**, or an employee leased to an **insured** by a labor leasing firm under an agreement between an **insured** and the labor leasing firm, who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for **you**. This does not include employees while performing duties in connection with the **business** of an **insured**.

19. **"residence premises"** means:

a.  the one, two, three, or four family dwelling, other structures and grounds; or

b.  that part of any other **building structure**;

where **you** reside and which is shown in the **Declarations**.

20. **"State Farm Companies"** means one or more of the following:

a.  State Farm Mutual Automobile Insurance Company;

b.  State Farm Fire and Casualty Company; and

c.  subsidiaries or affiliates of either 20.a. or 20.b. above.

21. **"vacant dwelling"** means:

a.  a dwelling:

(1)  that has not been occupied as a residence for more than 30 consecutive days immediately before the loss; and

(2)  where a predominant amount of personal property has been removed or is absent such that the dwelling is not functional as a habitual place of residence.

A dwelling will be considered occupied only if it is being used as a habitual place of residence with **your** knowledge and approval.

b.  A dwelling that is under active construction will not be considered a **vacant dwelling**. A dwelling is under active construction when it is:

(1)  being built as a new structure;

(2)  being repaired due to damage otherwise covered by this policy; or

(3)  undergoing substantial improvements, renovations, remodeling, or modifications;

and the construction results in substantial continuing activities by persons associated with the

4

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0025

construction project at the premises during the relevant time periods.

22. **"we", "us"**, and **"our"** mean the Company shown in the **Declarations**.

23. **"you"** and **"your"** mean the person or persons shown as "Named Insured" in the **Declarations**. If a "Named Insured" shown in the **Declarations** is a human being, then **you** and **your** include:

a. a spouse of a "Named Insured";

b. a party to a civil union with a "Named Insured";

c. a domestic partner of a "Named Insured"; or

d. a person in a substantially similar legal relationship with a "Named Insured";

if such relationship is recognized and valid in the state where, and at the time when, the legal relationship was established, so long as the person in the above relationship resides primarily with that "Named Insured".

## DEDUCTIBLE

In case of loss under this policy, **we** will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the **Declarations**. Deductibles will be applied per occurrence. Deductibles apply to specific losses as described in this policy.

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – DWELLING

1. **Dwelling. We** cover the **dwelling** and materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration, or repair of the **dwelling** or other structures on the **residence premises**.

2. **Other Structures. We** cover other structures on the **residence premises**, separated from the **dwelling** by clear space. Structures connected to the **dwelling** by only a fence, utility line, or similar connection are considered to be other structures.

   **We** do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used either completely or in part for **business** purposes unless such use consists solely of office space for paperwork, computer work, or use of a telephone, and consists solely of activities that are:

      (1) duties of the **insured's** employment by another; and

      (2) performed solely by the **insured**; or

   c. rented or held for rental unless:

      (1) rented to a person who is a tenant of the **dwelling;**

      (2) rented for use solely as a private garage; or

      (3) rented either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss.

3. **Property Not Covered. We** do not cover:

   a. land, including the land necessary to support any Coverage A property. **We** also do not cover:

      (1) any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

      (2) the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A;

   b. trees, shrubs, live or artificial plants, lawns, or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping;** or

   c. systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the **residence premises** in the 12-month period prior to the date of the loss.

### COVERAGE B – PERSONAL PROPERTY

1. **Property Covered.**

   a. **We** cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0026

otherwise forming a part of the realty. At *your* request, *we* will cover personal property:

(1) owned by others while the property is on the part of the *residence premises* occupied exclusively by an *insured*;

(2) owned by a guest or a *residence employee*, while the property is in any other residence occupied by an *insured*; and

(3) owned by roomers, boarders, tenants, and other residents, any of whom are related to *you*.

b. *We* cover personal property usually located at an *insured's* residence, other than the *residence premises*, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property:

(1) in a newly acquired principal residence for the first 30 days after *you* start moving the property there. If the *residence premises* is a newly acquired principal residence, personal property in *your* immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy; and

(2) of a student who is an *insured* while located at a residence away from the *residence premises*.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins, and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware, and platinum;

b. $1,500 on property used or intended for use in a *business*, including merchandise held as samples or for sale or for delivery after sale, while on the *residence premises*. This coverage is limited to $750 on such property away from the *residence premises*.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage, and is addressed in item c. below;

c. $10,000 on electronic data processing system equipment used or intended for use in a *business*, including but not limited to computers, tablets, mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound, and standard media or non-media equipment for use with the above devices;

d. $1,500 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets;

e. $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings, and equipment;

f. $1,500 on trailers not used with watercraft;

g. $2,500 on stamps, trading cards, and comic books, including any of these that are a part of a collection;

h. $2,500 for loss by theft of firearms;

i. $2,500 for loss by theft of silverware and goldware;

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging, or other similar article;

k. $1,000 on commercially manufactured two, three, or four wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include such conveyances that are:

6

HW-2143

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF PROD (Johnson, Cynthia) 0027

(1) designed for assisting persons with disabilities;

(2) not designed for travel on public roads; and

(3) not subject to motor vehicle registration; and

l. $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones.

2. **Property Not Covered. We** do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds, or fish;

c. any engine-propelled or motor-propelled vehicle or machine, including parts, designed for movement on land, except as provided in **Special Limits of Liability**, item k. However, **we** do cover those vehicles or machines:

(1) that are:

(a) not designed for travel on public roads; and

(b) not subject to motor vehicle registration;

(2) and that are:

(a) used primarily to service the **insured location**; or

(b) designed for assisting persons with disabilities;

d. any electronic equipment, devices, or accessories designed for the recording, reproduction, or storage of audio, video, photos, or data that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or hard-wired directly to the vehicle's electrical system. **We** also do not cover removable products that may be used with the equipment or devices described above, including but not limited to tapes, discs, videos, or memory cards while in an engine-propelled or motor-propelled vehicle;

e. aircraft and parts. This does not apply to unmanned aircraft systems used as model aircraft

and operated solely for recreational or hobby purposes;

f. property of roomers, boarders, tenants, and other residents not related to **you**;

g. property regularly rented or held for rental to others by an **insured**. This does not apply to property of an **insured**:

(1) in a sleeping room when the **dwelling** is rented in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

(2) on the **residence premises** if it is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

h. property rented or held for rental to others away from the **residence premises**;

i. any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas, and all other similar equipment that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or that is hard-wired directly to the vehicle's electrical system;

j. books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems, or other records. This does not apply to any recording or storage media for electronic data processing. **We** will cover the cost of blank books, cards, or other blank material plus the cost of labor **you** incur for transcribing or copying such records;

k. recording or storage media for electronic data processing that cannot be replaced with property of like kind and quality on the current retail market;

l. purchased or created audio, video, photos, or other data that cannot be replaced with like kind and quality on the current retail market and that is transferred or downloaded onto mobile communication equipment, global positioning systems, or electronic devices designed for the

7

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0028

recording, reproduction, or storage of audio, video, photos, or other data;

m.  contraband, or any property used in the course of illegal consumption, possession, import, export, or trade;

n.  outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**; or

o.  electronic currency, digital currency, virtual currency, crypto-currency, and other similar mediums of exchange.

## COVERAGE C – LOSS OF USE

The most *we* will pay for the sum of all losses combined under **Additional Living Expense, Fair Rental Value**, and **Prohibited Use** is the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**.

1.  **Additional Living Expense.** When a *loss insured* causes the *residence premises* to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months. *Our* payment is limited to incurred costs for the shortest of:

    a.  the time required to repair or replace the premises;

    b.  the time required for *your* household to settle elsewhere; or

    c.  24 months.

    This period of time is not limited by the expiration of this policy.

    *We* will not pay more than the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**. Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

2.  **Fair Rental Value.** When a *loss insured* causes that part of the *residence premises* rented to others or held for rental by *you* to become uninhabitable, *we* will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by the

expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the *residence premises* rented or held for rental is uninhabitable.

3.  **Prohibited Use.** *We* will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits *your* use of the *residence premises*, provided that:

    a.  direct physical damage occurs to any property, other than covered property located on the *residence premises*, arising from a cause of loss that would be a *loss insured* under this policy if the damage had occurred to property on the *residence premises*;

    b.  the *residence premises* is within one mile of property damaged by a cause of loss identified in 3.a. above; and

    c.  the action of the civil authority is taken in response to:

        (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

        (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

        (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

    *We* will not pay for loss or expense due to cancellation of a lease or agreement.

## SECTION I – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

1.  **Debris Removal.** *We* will pay the reasonable expenses *you* incur in the removal of debris of covered property damaged by a *loss insured*. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

    a.  When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit

8

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0029

is available for debris removal expense. This additional amount of insurance does not apply to **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**.

b. *We* will also pay up to $1,000 total for each loss to cover the reasonable expenses *you* incur in the removal of tree debris and stumps from the *residence premises*, unless otherwise excluded. This coverage applies when:

   (1) the tree has caused a *loss insured* to Coverage A property; or

   (2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

      (a) the driveway, on the *residence premises*, and prevents land *motor vehicle* access to or from the *dwelling*; or

      (b) a ramp designed to assist persons with disabilities, on the *residence premises*, and prevents access to or from a *building structure*.

2. **Temporary Repairs.** If damage is caused by a *loss insured*, *we* will pay the reasonable and necessary cost *you* incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs, and Landscaping.** *We* will pay for accidental direct physical loss to outdoor:

   a. trees, shrubs, live or artificial plants, and lawns;

   b. artificial grass; and

   c. hardscape property used for aesthetic purposes not permanently affixed to realty;

on the *residence premises*, caused by the following perils: **Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles** (not owned or operated by a resident of the *residence premises*), **Vandalism or malicious mischief, or Theft**.

The limit for this coverage, including the removal of debris, will not exceed 5% of the amount shown in the *Declarations* for **COVERAGE A – DWELLING**. *We* will not pay more than $750 for any one outdoor tree,

shrub, plant, or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. *We* will not pay for any loss to property grown for *business* purposes.

4. **Property Removed.** *We* will pay for any accidental direct physical loss to covered property while being removed from a premises endangered by a *loss insured*. This coverage also applies to the property for up to 30 days while removed. *We* will also pay for reasonable expenses incurred by *you* for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

5. **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.**

   a. *We* will pay up to $1,000 for:

      (1) the legal obligation of an *insured* to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an *insured's* name. If an *insured* has not complied with all terms and conditions under which the cards are issued, *we* will not pay for use by an *insured* or anyone else;

      (2) loss to an *insured* caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

   No deductible applies to this coverage.

   *We* will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

   b. *We* will not pay for loss arising out of *business* pursuits or dishonesty of an *insured*.

   c. Defense:

      (1) *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend claims or suits ends when the amount *we* pay for the loss equals *our* limit of liability.

9

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0030

(2) If claim is made or a suit is brought against an *insured* for liability under the Credit Card or Bank Fund Transfer Card coverage, *we* will provide a defense. This defense is at *our* expense by counsel of *our* choice.

(3) *We* have the option to defend at *our* expense an *insured* or an *insured's* bank against any suit for the enforcement of payment under the Forgery coverage.

6. **Power Interruption.** *We* will pay for accidental direct physical loss caused directly or indirectly by a change of temperature that results from power interruption that takes place on the *residence premises*. The power interruption must be caused by a *loss insured* occurring on the *residence premises*. The power lines off the *residence premises* must remain energized. This coverage does not increase the limit applying to the damaged property.

7. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the *residence premises* for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to *you*, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure does not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a *loss insured*.

This coverage does not increase the limit applying to the damaged property.

8. **Arson Reward.** *We* will pay $1,000 for information that leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit will not be increased regardless of the number of persons providing information.

9. **Volcanic Action.** *We* will pay for accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure* resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. airborne volcanic shock waves;

b. ash, dust, or particulate matter; or

c. lava flow.

*We* will also pay for the removal of that ash, dust, or particulate matter that has caused accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure*.

All volcanic eruptions that occur within any 168-hour period will be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

10. **Collapse.** *We* will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a *building structure* or any part of a *building structure*.

a. Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a *building structure* or any part of a *building structure*. Collapse does not include any of the following:

(1) settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

(2) substantial structural impairment;

(3) imminent or threatened collapse;

(4) a *building structure* or any part of a *building structure* that is in danger of falling down or caving in; or

(5) a part of a *building structure* that is standing even if:

(a) it has separated from another part of the *building structure*; or

(b) it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

b. The collapse must be directly and immediately caused by one or more of the following:

(1) perils described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**. These perils apply to *building structures* covered under Coverage A

10

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0031

or Coverage B for loss insured by this Additional Coverage;

(2) decay or deterioration of, or damage from animals, birds, or insects to:

(a) a connector; or

(b) a structural member of a **building structure**;

The decay, deterioration, or damage must be hidden from view and unknown to all **insureds** prior to the collapse;

(3) weight of contents, equipment, animals, or people;

(4) weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

(5) use of defective material or methods in the construction (includes remodeling or renovation) of the **building structure**, if the collapse occurs during the course of the construction of the **building structure**.

Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above unless the loss is the direct and immediate result of the collapse of a **building structure** or any part of a **building structure**.

This coverage does not increase the limit applying to the damaged property.

11. **Locks and Remote Devices.  We** will pay up to $1,000 for each loss for the reasonable expenses **you** incur to rekey, replace, recode, program, or reprogram locks on exterior doors to the **dwelling** or other structures located on the **residence premises** when the keys or remote devices used with those doors are part of a covered theft loss. This coverage includes remote devices designed solely for locking, unlocking, opening, or closing doors, including garage doors and gates.

No deductible applies to this coverage.

12. **Fuel Oil Release.  We** will pay up to $10,000 for each loss for accidental direct physical loss to covered property caused by the abrupt and accidental escape of liquid fuel oil from a fixed household tank, apparatus, or pipes that are part of a heating unit for the **dwelling**. This includes damage to covered property resulting from an accidental spill or overflow of fuel oil in the course of filling a fixed household tank.

This coverage includes surface clean up only.  **We** will not pay for:

a. the cost to repair or replace the fuel oil tank, apparatus, and pipes; or

b. the cost of testing, monitoring, removing, treating, or detoxifying of soil, air, or water.

This coverage does not increase the limit applying to the damaged property.

13. **Tear Out.** If a **loss insured** to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, **we** will also pay the reasonable cost **you** incur to tear out and replace only that particular part of the **building structure** necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped.  **We** will not pay for the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

14. **Home Certification.** If damage to covered property is caused by a **loss insured**, **we** will pay the reasonable increase in cost to repair or replace only the damaged property to maintain the **dwelling's** FORTIFIED HOME or FORTIFIED FOR SAFER LIVING certification in place at the time of the loss. This coverage does not increase the limit applying to the damaged property.

**We** will not pay:

a. any increase in cost until the repair or replacement of the property is complete; or

b. for increased costs resulting from enforcement of any ordinance or law regulating the construction or repair of the **dwelling** except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law**.

11

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0032

This coverage does not apply if Loss Settlement provision A2 – Replacement Cost Loss Settlement – Common Construction is shown in the *Declarations*.

## INFLATION COVERAGE

The limits of liability shown in the *Declarations* for Coverage A, Coverage B, and when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the *Declarations*.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B, and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the *Declarations*.

If during the term of this policy the Coverage A limit of liability is changed at *your* request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

# SECTION I – LOSSES INSURED

## COVERAGE A – DWELLING

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. Accidental means happening by chance, unexpectedly, and/or unintended from *your* standpoint. However, loss does not include and *we* will not pay for, any *diminution in value*.

## COVERAGE B – PERSONAL PROPERTY

*We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. Accidental means happening by chance, unexpectedly, and/or unintended from *your* standpoint. However, loss does not include and *we* will not pay for, any *diminution in value*.

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust. This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a *building structure*.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft**, including self-propelled missiles and spacecraft.

6. **Vehicles**, meaning accidental direct physical loss to covered property caused by the weight, force, power, or movement of a vehicle.

   a.   This includes:

      (1)   the impact of a vehicle;

      (2)   an object propelled from the tire or body of a vehicle;

      (3)   the upset or collision of a vehicle with a stationary object or other vehicle, including damage to personal property carried on the exterior of the vehicle; or

      (4)   a vehicle door or trunk lid being closed on personal property.

   b.   This peril does not include loss:

      (1)   to personal property that falls off a vehicle and strikes the ground, any other surface, or any object;

      (2)   caused by shifting of the load being carried in or on a vehicle; or

      (3)   to the vehicle itself unless the vehicle is property covered under **COVERAGE B – PERSONAL PROPERTY** and the loss is caused by the weight, force, power, or movement of another vehicle.

7. **Smoke**, meaning abrupt and accidental damage from smoke.

12

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0033

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

This peril does not include:

a. loss of a precious or semi-precious stone from its setting;

b. loss caused by theft:

   (1) committed by an **insured** or by any other person regularly residing on the **insured location.** Property of a student who is an **insured** is covered while located at a residence away from the **residence premises,** if the theft is committed by a person who is not an **insured;**

   (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

   (3) from the part of a **residence premises** rented to others:

   (a) caused by a tenant, members of the tenant's household, or the tenant's employees unless the **residence premises** is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

   (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins, and medals;

   (c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, and stamps; or

   (d) of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones; or

c. loss caused by theft that occurs away from the **residence premises** of:

   (1) property while at any other residence owned, rented to, or occupied by an **insured,** except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from the **residence premises;**

   (2) watercraft of all types, including their furnishings, equipment, and outboard motors; or

   (3) trailers and campers designed to be pulled by or carried on a vehicle.

   If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence will not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow, or sleet** that causes damage to property contained in a structure.

12. **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water, steam, or sewage escaped;

b. caused by or resulting from:

   (1) freezing, except as specifically provided in **SECTION I – LOSSES INSURED, Freezing;**

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0034

(2) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

(3) the pressure from or presence of tree, shrub, or plant roots; or

c. that occurs or develops over a period of time and is caused by or resulting from:

(1) condensation or the presence of humidity, moisture, or vapor; or

(2) seepage or leakage of water, steam, or sewage that is:

    (a) continuous;

    (b) repeating;

    (c) gradual;

    (d) intermittent;

    (e) slow; or

    (f) trickling.

13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing, except as specifically provided in **SECTION I – LOSSES INSURED, Freezing;** or

b. that occurs or develops over a period of time and is caused by or resulting from:

(1) condensation or the presence of humidity, moisture, or vapor; or

(2) seepage or leakage of water or steam that is:

    (a) continuous;

    (b) repeating;

    (c) gradual;

    (d) intermittent;

    (e) slow; or

    (f) trickling.

14. **Freezing** of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include:

a. loss to a portable hot tub or portable spa unless *you* have used reasonable care to prevent freezing; or

b. loss on the *residence premises* unless *you* have used reasonable care to:

(1) maintain heat in the *building structure* at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the *building structure* is protected by an automatic fire protective sprinkler system, *you* must use reasonable care to continue the water supply and maintain heat in the *building structure* at 55 degrees Fahrenheit or higher for coverage to apply.

15. **Abrupt and accidental damage** to electrical appliances, devices, fixtures, and wiring from an increase or decrease of artificially generated electrical current. *We* will pay up to $3,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass that is a part of a structure on the *residence premises*. *We* will not pay for loss or damage to the glass.

17. **Wild bears or deer**, meaning damage caused by wild bears or deer to property located in a *building structure*.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0035

# SECTION I – LOSSES NOT INSURED

1. *We* will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Collapse;**

   b. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a household appliance; or discharge, leakage, or overflow from within the system or appliance caused by freezing. This does not apply if *you* have used reasonable care to:

      (1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

      (2) shut off the water supply and drain the system and appliances of water.

      However, if the **building structure** is protected by an automatic fire protective sprinkler system, *you* must use reasonable care to continue the water supply and maintain heat in the **building structure** at 55 degrees Fahrenheit or higher for coverage to apply;

   c. freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

      (1) a swimming pool, hot tub, or spa, including their covers, filtration, and circulation systems; or

      (2) an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

   e. theft, vandalism, malicious mischief, or breakage of glass and safety glazing materials if the dwelling is a **vacant dwelling;**

   f. seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

      (1) and is:

         (a) continuous;

         (b) repeating;

         (c) gradual;

         (d) intermittent;

         (e) slow; or

         (f) trickling; and

      (2) from a:

         (a) heating, air conditioning, or automatic fire protective sprinkler system;

         (b) household appliance; or

         (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

      *We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time;

   g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

   h. corrosion, electrolysis, or rust;

   i. wet or dry rot;

   j. contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.**

15

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0036

(1) Contaminants and pollutants include but are not limited to any:

    (a) solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

    (b) contaminants or pollutants resulting from any natural resource extraction activities; or

    (c) fuel oil except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Fuel Oil Release**.

(2) **We** also will not pay for:

    (a) losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

    (b) the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

    (c) the cost of testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants.

(3) However, **we** will pay for losses caused by:

    (a) contamination from pollutants that escape from heating and air conditioning systems and appliances; or

    (b) common household chemicals used to maintain the **residence premises**;

k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

l. all animals, birds, or insects.

(1) This includes:

    (a) nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;

    (b) costs to remove animals, birds, or insects from the covered property; or

    (c) costs to prevent the animals, birds, or insects from returning to the property;

(2) However, **we** will pay for:

    (a) losses caused by wild bears or deer; and

    (b) the breakage of glass or safety glazing material that is a part of a **building structure**, when caused by animals, birds, or insects; or

m. pressure from or presence of tree, shrub, or plant roots.

However, **we** will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2. **We** will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. **We** will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the **residence premises**, arises from any natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a **building structure** or other structure.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

(1) earthquake;

(2) landslide, mudslide, or mudflow;

16

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0037

(3) sinkhole or subsidence;

(4) movement resulting from:

    (a) improper compaction;

    (b) site selection;

    (c) natural resource extraction activities; or

    (d) excavation;

(5) erosion;

(6) pressure by surface or subsurface earth or fill; or

(7) any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action**.

However, *we* will pay for any accidental direct physical loss by fire resulting from earth movement, provided the resulting fire loss is itself a *loss insured*.

c. **Water**, meaning:

(1) flood;

(2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

(3) waves (including tidal wave, tsunami, and seiche);

(4) tides or tidal water;

(5) overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

(6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

(7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a *building structure*, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, *we* will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a *loss insured*.

d. **Neglect**, meaning neglect of the *insured* to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke.

However, *we* will pay for any accidental direct physical loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a *loss insured*.

g. *Fungus*, including:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the *residence premises* or location of the rebuilding, repair, or replacement, by *fungus*;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0038

(2) any remediation of *fungus*, including the cost to:

    (a) remove the *fungus* from covered property or to repair, restore, or replace that property; or

    (b) tear out and replace any part of the *building structure* or other property as needed to gain access to the *fungus*; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

However, the presence of *fungus* on covered property does not negate coverage for that part of the covered property otherwise damaged by a *loss insured*.

h.  **Intentional Losses.** If any *insured* intentionally causes or procures a loss to property covered under this policy, *we* will not pay any *insured* for this loss. This applies regardless of whether the *insured* is charged with or convicted of a crime.

This does not apply to an *insured* who did not participate in, cooperate in, or contribute to causing or procuring the loss.

3.  *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a.  conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

b.  defect, weakness, inadequacy, fault, or unsoundness in:

    (1) planning, zoning, development, surveying, or siting;

    (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

    (3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

    (4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*; or

c.  weather conditions.

However, *we* will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

## SECTION I – LOSS SETTLEMENT

Only the **Loss Settlement Provisions** shown in the *Declarations* apply. *We* will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

### COVERAGE A – DWELLING

1.  **A1 – Replacement Cost Loss Settlement – Similar Construction.**

a.  *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

    (1) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0039

(2) when the repair or replacement is actually completed, **we** will pay the covered additional amount **you** actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(3) to receive any additional payments on a replacement cost basis, **you** must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and give prompt notice to **us** after the work has been completed; and

(4) **we** will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a **building structure** or other structure, except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.**

b. Wood Fences: **We** will pay the **actual cash value** for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A – Other Structures.

2. **A2 – Replacement Cost Loss Settlement – Common Construction.**

a. **We** will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

(1) **we** will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. **We** will not pay the cost to repair or replace obsolete, antique, or custom construction with like kind and quality;

(2) until actual repair or replacement is completed, **we** will pay only the **actual cash value** of the damaged part of the property, up to the applicable limit of liability shown

in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, **we** will pay the covered additional amount **you** actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(4) to receive any additional payments on a replacement cost basis, **you** must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and give prompt notice to **us** after the work has been completed; and

(5) **we** will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a **building structure** or other structure, except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.**

b. Wood Fences: **We** will pay the **actual cash value** for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A – Other Structures.

**COVERAGE B – PERSONAL PROPERTY**

1. **B1 – Limited Replacement Cost Loss Settlement.**

a. **We** will pay the cost to repair or replace property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, **we** will pay only the **actual cash value** of the damaged property;

(2) after repair or replacement is completed, **we** will pay the difference between the **actual cash value** and the cost **you** have actually

19

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0040

and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, *we* will pay only the *actual cash value*.

b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) *our* cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

2. **B2 – Depreciated Loss Settlement.**

a. *We* will pay the *actual cash value* for property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below.

b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) *our* cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

## SECTION I – CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, *we* will not be liable:

a. to the *insured* for an amount greater than the *insured's* interest; or

b. for more than the applicable limit of liability.

**Fire Insurance: Total Loss Of Real Property.** A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. This subsection does not apply to personal property.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, *you* must cooperate with *us* in the investigation of the claim and also see that the following duties are performed:

a. give prompt notice to *us* or *our* agent and also notify:

(1) the police if the loss is caused by theft, vandalism, or any other criminal act; and

(2) the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b. protect the property from further damage or loss and also:

(1) make reasonable and necessary temporary repairs required to protect the property; and

(2) keep an accurate record of repair expenses;

c. prepare an inventory of damaged or stolen personal property:

(1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and

(2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF PROD (Johnson, Cynthia) 0041

d. as often as *we* reasonably require:

(1) exhibit the damaged property;

(2) provide *us* with any requested records and documents and allow *us* to make copies;

(3) while not in the presence of any other *insured*:

    (a) give statements; and

    (b) submit to examinations under oath. A parent or legal guardian may be present when the person being examined under oath is a minor; and

(4) produce employees, members of the *insured's* household, or others for examination under oath to the extent it is within the *insured's* power to do so;

e. submit to *us*, within 91 days after *our* request, *your* signed, sworn proof of loss that sets forth, to the best of *your* knowledge and belief:

(1) the time and cause of loss;

(2) interest of the *insured* and all others in the property involved and all encumbrances on the property;

(3) other insurance that may cover the loss;

(4) changes in title or occupancy of the property during the term of this policy;

(5) specifications of any damaged structure and detailed estimates for repair of the damage;

(6) an inventory of damaged or stolen personal property described in 2.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8) evidence or affidavit supporting a claim under **SECTION I – ADDITIONAL COVERAGES, Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss; and

f. *you* must file a claim with *us* not later than one year after the date of the loss that is the subject of the claim unless *you* show good cause for not

filing the claim within this time period, subject to the following conditions:

(1) for the purpose of this provision, good cause means: objective facts beyond *your* control that reasonably caused *you* to fail to file a claim under the policy within the one-year claim-filing deadline;

(2) if good cause is shown, *we* may extend the one-year claim-filing period. The extension is limited to the claim for which it is granted; and

(3) a request for an extension must:

    (a) be submitted to *us* in writing;

    (b) describe the good cause that caused *you* to miss the one-year claim-filing deadline; and

    (c) be signed by *you* or *your* legal representative.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, *we* may choose to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between the depreciated value of the property before the loss and the depreciated value of the property after the loss.

4. **Appraisal.** If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only *you* or *we* may demand appraisal. A demand for appraisal must be in writing. *You* must comply with **SECTION I – CONDITIONS, Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

a. Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b. The appraisers will then attempt to set the amount of the loss of each item in dispute as

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0042

specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the *actual cash value,* replacement cost, and if applicable, the market value of each item in dispute.

The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon *you* and *us.*

c.   If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. If the appraisers are unable to agree upon an umpire within 15 days:

(1)   *you* or *we* may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the *residence premises* is located to select an umpire;

(2)   the party requesting the selection described in item c.(1) must provide the other party:

(a)   written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

(b)   a copy of the written application; and

(3)   a written report of agreement, as required in item b., signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute and will be binding upon *you* and *us.* In all instances the written report of agreement will be itemized and state separately the *actual cash value,* replacement cost, and if applicable, the market value of each item in dispute.

d.   To qualify as an appraiser or umpire for a loss to property described in **COVERAGE A – DWELLING,** a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

(1)   an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute;

(2)   an adjuster or public adjuster with experience and training in estimating the type of property damage in dispute; or

(3)   a contractor with experience and training in the construction, repair, and estimating of the type of property damage in dispute.

e.   A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

(1)   has performed services for either party with respect to the claim at issue in the appraisal; or

(2)   has a financial interest in the outcome of the claim at issue in the appraisal.

f.   Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable compensation of the umpire will be paid equally by *you* and *us.*

g.   *You* and *we* do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

h.   Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

(1)   any other questions of fact;

(2)   questions of law;

(3)   questions of coverage;

(4)   other contractual issues; or

(5)   to conduct appraisal on a class-wide basis.

i.   Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. The appraisal award may not be entered as a judgment in a court.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0043

j.  A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

5.  **Other Insurance.** If a loss covered by this policy is also covered by other insurance, *we* will pay only *our* share of the loss. *Our* share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6.  **Suit Against Us.** No suit or action can be brought unless:

    a.  there has been compliance with the policy provisions;

    b.  except as provided in item c. below, suit or action brought against *us* is started within two years and one day after the cause of action accrues; and

    c.  with respect to a loss caused by windstorm or hail in the catastrophe area as defined under Texas law, suit or action brought against *us* is started within the earlier of:

        (1)  two years from the date *we* accept or reject the claim; or

        (2)  three years from the date of the loss that is the subject of the claim.

7.  **Our Option.** *We* may repair or replace any part of the property damaged or stolen with similar property. Any property *we* pay for or replace becomes *our* property.

8.  **Loss Payment.** *We* will adjust all losses with *you*. *We* will pay *you* unless some other person is named in the policy or is legally entitled to receive payment.

    If *we* notify *you* that *we* will pay *your* claim, or part of *your* claim, *we* must pay within 5 *business days* after *we* notify *you*. If payment of *your* claim or part of *your* claim requires the performance of an act by *you*, *we* must pay within 5 *business days* after the date *you* perform the act.

9.  **Abandonment of Property.** *We* need not accept any property abandoned by an *insured*.

10. **Mortgage Clause** (without contribution).

    a.  The word "mortgagee" includes trustee.

    b.  *We* will pay for any covered loss of or damage to buildings or structures to the mortgagee shown in the *Declarations* as interests appear.

    c.  The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

    d.  If *we* deny *your* claim because of *your* acts or because *you* have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

        (1)  at *our* request, pays any premiums due under this policy, if *you* have failed to do so;

        (2)  submits a signed, sworn statement of loss within 91 days after receiving notice from *us* of *your* failure to do so; and

        (3)  has notified *us* of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

        All of the terms of this policy will then apply directly to the mortgagee.

        Failure of the mortgagee to comply with d.(1), d.(2) or d.(3) above shall void this policy as to the interest of the mortgagee.

    e.  If *we* pay the mortgagee for any loss or damage and deny payment to *you* because of *your* acts or because *you* have failed to comply with the terms of this policy:

        (1)  the mortgagee's rights under the mortgage will be transferred to *us* to the extent of the amount *we* pay; and

        (2)  the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

        At *our* option, *we* may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, *your* mortgage and note will be transferred to *us* and *you* will pay *your* remaining mortgage debt to *us*.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0044

f.   If this policy is cancelled, **we** will give the mortgagee specifically named in the ***Declarations*** written notice of cancellation.

If **we** cancel the policy, **we** will give the mortgagee the same number of days notice of cancellation **we** give to **you**.

If **you** cancel the policy, **we** will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date **we** mail the notice.

**We** will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

g.   If the property described under Coverage A (Dwelling) is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premiums from this policy.

The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

h.   If **we** elect not to renew this policy, the mortgagee specifically named in the ***Declarations*** will be given 30 days written notice of the nonrenewal.

11. **No Benefit to Bailee. We** will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing, or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Residential Community Property Clause.** This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

13. **Our Duties After Loss.**

a.   Within 15 days after **we** receive **your** written notice of claim, **we** must:

(1)   acknowledge receipt of the claim. If **our** acknowledgment of the claim is not in writing, **we** will keep a record of the date, method and content of **our** acknowledgment;

(2)   begin any investigation of the claim;

(3)   specify the information **you** must provide in accordance with "**Your Duties After Loss**" (item 2. above).

**We** may request more information, if during the investigation of the claim such additional information is necessary.

b.   After **we** receive the information **we** request, **we** must notify **you** in writing whether the claim will be paid or has been denied or whether more information is needed:

(1)   within 15 **business days**; or

(2)   within 30 days if **we** have reason to believe the loss resulted from arson.

c.   If **we** do not approve payment of **your** claim or require more time for processing **your** claim, **we** must:

(1)   give the reasons for denying **your** claim; or

(2)   give the reasons **we** require more time to process **your** claim. But, **we** must either approve or deny **your** claim within 45 days after requesting more time.

14. **Catastrophe Claims.** If a claim results from a weather related catastrophe or major natural disaster, each claim handling deadline shown under the Duties After Loss and Loss Payment provisions is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

a.   is declared a disaster under the Texas Disaster Act of 1975; or

b.   is determined to be a catastrophe by the Texas Department of Insurance.

24

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0045

15. **Recovered Property.** If either *you* or *we* recover any property after loss settlement, that party must give the other prompt notice. At *your* option, *you* may keep the property or *we* will return it to *you*. Otherwise, it will become *our* property. If *you* choose to keep the property, the loss payment will be adjusted based on the amount *you* received for the recovered property.

16. **Assignment of Claim.** Assignment to another party of any of *your* rights or duties under this policy regarding any claim, or any part of any claim, will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent. However, once *you* have complied with all policy provisions, *you* may assign to another party, in writing, payment of claim proceeds otherwise payable to *you*.

## SECTION II – LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, *we* will:

1. pay up to *our* limit of liability for the damages for which the *insured* is legally liable; and

2. provide a defense at *our* expense by counsel of *our* choice. *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend any suit ends when the amount *we* pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability. *We* will not provide a defense to any *insured* for criminal prosecution or proceedings.

### COVERAGE M – MEDICAL PAYMENTS TO OTHERS

*We* will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, rehabilitation, pharmaceuticals, orthopedic devices, prosthetic devices, and funeral services. This coverage applies only:

1. to a person on the *insured location* with the permission of an *insured*;

2. to a person off the *insured location*, if the *bodily injury*:

    a. arises out of a condition on the *insured location* or the ways immediately adjoining;

    b. is caused by the activities of an *insured*;

    c. is caused by a *residence employee* in the course of the *residence employee's* employment by an *insured*; or

    d. is caused by an animal owned by or in the care of an *insured*; or

3. to a *residence employee* if the *occurrence* causing *bodily injury* occurs off the *insured location* and arises out of or in the course of the *residence employee's* employment by an *insured*.

### SECTION II – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

*We* will pay for the following in addition to the limits of liability:

1. **Claim Expenses.** *We* will pay:

    a. expenses *we* incur and costs taxed against an *insured* in suits *we* defend;

    b. premiums on bonds required in suits *we* defend, but not for bond amounts greater than the Coverage L limit. *We* are not obligated to apply for or furnish any bond;

    c. reasonable expenses an *insured* incurs at *our* request. This includes actual loss of earnings (but not loss of other income) up to $250 per day for aiding *us* in the investigation or defense of claims or suits;

    d. interest the *insured* is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

        (1) that part of the damages *we* pay; or

        (2) the Coverage L limit; and

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0046

e. interest on the entire judgment that accrues after entry of the judgment and before **we** pay or tender, or deposit in court that part of the judgment that does not exceed the limit of liability that applies.

2. **First Aid Expenses.** **We** will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. **We** will not pay for first aid to **you** or any other **insured**.

3. **Damage to Property of Others.**

   a. **We** will pay for **property damage** to property of others caused by the activities of an **insured**.

   b. **We** will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) the limit of liability shown in the **Declarations** for **Damage to Property of Others** for any one **occurrence**.

   c. **We** will not pay for **property damage**:

      (1) for a loss that is recoverable under Section I of this policy. **We** also will not pay for any applicable deductible regardless of whether the amount of the loss exceeds the deductible;

      (2) caused intentionally by an **insured** 13 years of age or older;

      (3) to property, other than a rented golf cart, owned by, or rented to an **insured**, a tenant of an **insured**, or a resident in **your** household;

      (4) arising out of:

         (a) **business** pursuits;

         (b) any act or omission in connection with a premises an **insured** owns, rents, or controls, other than the **insured location**;

         (c) a condition on the **insured location** or the ways immediately adjoining; or

         (d) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board, or similar type watercraft; or

      (5) if a payment is made under **COVERAGE L – PERSONAL LIABILITY** for the same **property damage**.

## SECTION II – EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

   a. **bodily injury** or **property damage** that:

      (1) was a result of a willful and malicious act or omission of the **insured**;

      (2) was intended by the **insured**; or

      (3) was expected by the **insured**.

      However, exclusions a.(2) and a.(3) above do not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

      Exclusions a.(1), a.(2), and a.(3) above apply to all **bodily injury** or **property damage** even if the:

      (1) **bodily injury** or **property damage** was sustained by a different person, entity, or property than was expected or intended;

      (2) **bodily injury** or **property damage** was of a different kind, quality, or degree than was expected or intended;

      (3) **insured** was not charged with or convicted of a criminal act or omission; or

      (4) **insured** was impaired by drugs or alcohol;

   b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured**, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-**business** pursuits;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0047

c. **bodily injury** or **property damage** arising out of the rental of any part of any premises by any **insured**. This exclusion does not apply:

  (1) to the rental of the **residence premises**:

   (a) either completely or in part, for exclusive use as a residence, for up to 30 nights in the 12-month period prior to the date of the loss;

   (b) in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

   (c) in part, as an office, school, studio, or private garage;

  (2) when the **dwelling** on the **residence premises** is a two, three, or four family **dwelling** and **you** occupy one part and rent the other part to others;

  (3) to farm land (without buildings), rented to others, but not to exceed a total of 500 acres, regardless of the number of locations; or

  (4) to activities that are ordinarily incident to non-**business** pursuits;

d. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

e. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

f. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading, or unloading of:

  (1) an aircraft. This exclusion does not apply to the ownership, maintenance, use, loading, or unloading of unmanned aircraft systems used as model aircraft:

   (a) solely for recreational or hobby purposes;

   (b) designed to be operated within the visual line of sight of the operator and operated within the visual line of sight of the operator; and

   (c) weighing not more than 55 pounds at the time of operation;

  unless the ownership, maintenance, use, loading, or unloading of such aircraft results in:

   (a) **property damage** to any aircraft; or

   (b) **bodily injury** or **property damage** resulting from interference with an aircraft carrying people regardless of whether the **bodily injury** or **property damage** is sustained by people or property on the aircraft or not;

  (2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

  (3) a watercraft:

   (a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

   (b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

   (c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

   (d) designated as an airboat, air cushion, or similar type of craft; or

   (e) owned by any **insured** if it is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

  This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion f.(3) does not apply while the watercraft is on the **residence premises**;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0048

g. **bodily injury** or **property damage** arising out of:

(1) the entrustment by any **insured** to any person;

(2) the supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance, or use of any aircraft, watercraft, or **motor vehicle** not covered under Section II of this policy;

h. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction, seizure, or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental;

i. **bodily injury** to any **insured** within the meaning of part 11.a., 11.b., or 11.c. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against any **insured** within the meaning of part 11.a., 11.b., or 11.c. of the definition of **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by any **insured** within the meaning of part 11.a., 11.b., or 11.c. of the definition of **insured**;

j. any claim made or suit brought against any **insured** by:

(1) any person in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person in the care of

any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** under 19 years of age;

k. **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for, any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power;

l. **bodily injury** or **property damage** arising out of the use, sale, manufacture, distribution, delivery, transfer, or possession, by any **insured**, of any substance that is illegal or is a controlled substance under either federal or state law.

This exclusion does not apply to the legitimate use of legally prescribed drugs, under either federal or state law, by a person following orders of a licensed health care professional;

m. **bodily injury** or **property damage** arising out of the actual, alleged, or threatened presence, discharge, dispersal, seepage, migration, release, escape of, or exposure to contaminants or pollutants at or from any source or location.

Contaminants and pollutants include but are not limited to any solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, fuel oil, asbestos, or lead.

This exclusion does not apply to **bodily injury** or **property damage**:

(1) caused by contaminants or pollutants from a hostile fire. A hostile fire is one that cannot be

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0049

controlled, escapes from where it was initially set and confined, or was not intended to exist;

(2) caused by contaminants or pollutants that escape from heating and air conditioning systems and appliances; or

(3) caused by common household chemicals used to maintain the **residence premises**.

**We** also do not cover:

(1) any loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of contaminants or pollutants;

(2) any loss, cost, or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of contaminants or pollutants; or

(3) contamination or pollution arising out of actually or allegedly defective building materials, nuclear substances, or waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

n. **bodily injury** or **property damage** arising out of any actual, alleged, or threatened:

(1) sexual harassment, sexual molestation, or sexual misconduct;

(2) physical or mental abuse; or

(3) corporal punishment;

by the **insured**.

For the purpose of this exclusion, abuse means an act that is committed with the intent to cause harm; or

o. **bodily injury** or **property damage** arising out of the actual, alleged, or threatened inhalation

of, ingestion of, contact with, exposure to, existence of, or presence of any **fungus** at or from any source or location.

**We** also do not cover any loss, cost, or expense arising out of any:

(1) request, demand, order, or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of **fungus**; or

(2) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of **fungus**; or

p. **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the **residence premises** in the 12-month period prior to the date of the loss.

2. Coverage L does not apply to:

a. liability:

(1) for **your** share of any loss assessment charged against all members of any type of association of property owners; or

(2) imposed on or assumed by any **insured** through any unwritten or written contract or agreement. This exclusion does not apply to liability for damages that the **insured** would have in absence of the contract or agreement;

b. **property damage** to property owned by any **insured** at the time of the **occurrence**;

c. **property damage** to property rented to, used or occupied by, or in the care, custody, or control of any **insured** at the time of the **occurrence**.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0050

This exclusion does not apply to *property damage* caused by fire, smoke, explosion, or abrupt and accidental damage from water;

d. *bodily injury* to a person eligible to receive any benefits required to be provided or voluntarily provided by an *insured* under a workers' compensation, non-occupational disability, or occupational disease law;

e. *bodily injury* or *property damage* for which an *insured* under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f. *bodily injury* or *property damage* arising out of any real property any *insured* has sold or transferred. This includes but is not limited to *bodily injury* or *property damage* arising out of known, unknown, hidden, or alleged property conditions, problems, or defects.

This exclusion also applies to any *property damage* to the sold or transferred real property itself.

However, this exclusion does not apply to:

(1) *bodily injury* arising out of fire, smoke, explosion, electrocution, or carbon monoxide poisoning; or

(2) *property damage* arising out of fire, smoke, or explosion; or

g. any order of restitution issued by a court in a criminal proceeding or equitable action. This exclusion does not apply to the extent liability coverage would apply in the absence of the order of restitution.

3. Coverage M does not apply to *bodily injury*:

a. to a *residence employee* if it occurs off the *insured location* and does not arise out of or in the course of the *residence employee's* employment by an *insured*;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability, or occupational disease law;

c. to a person other than a *residence employee* of an *insured*, regularly residing on any part of the *insured location*; or

d. from nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

## SECTION II – CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the *Declarations*. This is the limit for all damages from each *occurrence* for the policy period in which the *bodily injury* or *property damage* first occurs, regardless of the number of *insureds*, claims made, or persons injured. No additional limits or coverage will be available for the *occurrence* under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the *Declarations*. This is *our* limit for all medical expenses for *bodily injury* to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each *insured*. This condition does not increase *our* limit of liability for any one *occurrence*.

3. **Duties After Loss.** In case of an accident or *occurrence*, the *insured* must cooperate with *us* in the investigation, settlement, or defense of any claim or suit and also perform the following duties that apply. *You* must cooperate with *us* in seeing that these duties are performed:

a. give written notice to *us* or *our* agent as soon as possible, which sets forth:

(1) the identity of this policy and the *insured*;

(2) reasonably available information on the time, place, and circumstances of the accident or *occurrence*; and

(3) names and addresses of any claimants and available witnesses;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0051

b.   immediately forward to *us* every notice, demand, summons, or other process relating to the accident or *occurrence*;

c.   at *our* request, assist in:

(1)   making settlement;

(2)   the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an *insured*;

(3)   the conduct of suits and attend hearings and trials; and

(4)   securing and giving evidence and obtaining the attendance of witnesses;

d.   under **SECTION II – ADDITIONAL COVERAGES, Damage to Property of Others**, exhibit the damaged property if within the *insured's* control; and

e.   the *insured* must not, except at the *insured's* own cost, voluntarily make payments, assume obligations, or incur expenses.  This does not apply to expense for first aid to others at the time of the *bodily injury*.

4.   **Coverage M Requirements.** *We* may require the following in regard to any Coverage M claim:

a.   written proof of claim, under oath if required, as soon as possible from the injured person, or when appropriate, someone acting on behalf of that person;

b.   the injured person's submission to physical examinations by a physician selected by *us* when and as often as *we* reasonably require; and

c.   any authorizations from the injured person as *we* may require.

5.   **Payment of Claim – Coverage M or Damage to Property of Others.**  Payment under either of these is not an admission of liability by an *insured* or *us*.

6.   **Suit Against Us.**  No action will be brought against *us* unless there has been compliance with the policy provisions.

No one will have the right to join *us* as a party to an action against an *insured*. Further, no action with respect to Coverage L will be brought against *us* until the obligation of the *insured* has been determined by final judgment on the merits, after an actual trial or by an agreement signed by *us*; but *we* will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability.

7.   **Bankruptcy of an Insured.**  Bankruptcy or insolvency of an *insured* will not relieve *us* of *our* obligation under this policy.

8.   **Other Insurance – Coverage L.**  This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

9.   **Notice of Settlement of Liability Claim.**

a.   *We* will notify the *insured* in writing of any initial offer to compromise or settle a claim against the *insured*. *We* will give the *insured* notice within 10 days after the date the offer is made.

b.   *We* will notify the *insured* in writing of any settlement of a claim against the *insured*. *We* will give the *insured* notice within 30 days after the date of the settlement.

## SECTION I AND SECTION II – CONDITIONS

1.   **Policy Period.**  This policy applies only to loss under Section I or *bodily injury* or *property damage* under Section II that occurs during the period this policy is in effect.

2.   **Concealment or Fraud.** This policy is void as to *you* and any other *insured*, if *you* or any other *insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

a.   If the misrepresentation was made in the application for the policy, the policy is void if it is shown at trial that the matter misrepresented:

(1)   was material to the risk; or

(2)   contributed to the contingency or event on which the policy became due and payable.

b.   If the misrepresentation was made in a proof of loss, the policy is void if it is shown at trial that the misrepresentation:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0052

(1) was fraudulently made;

(2) misrepresented a fact material to the question of *our* liability under the policy; and

(3) misled *us* and caused *us* to waive or lose a valid defense to the policy.

3. **Liberalization Clause.** If *we* adopt any revision that would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by *us* to be valid. *Our* request for an appraisal or examination does not waive any of *our* rights.

5. **Cancellation.**

a. *You* may cancel this policy at any time by giving *us* advance written notice of the date cancellation is to take effect. *We* will send *you* any refund due no later than 15 *business days* after the effective date of cancellation.

b. *We* may cancel this policy for the reasons stated in this condition by mailing *you* notice in writing of the date cancellation takes effect.

(1) If this policy has been in effect for less than 60 days and is not a renewal policy, *we* may cancel this policy if:

(a) *we* identify a condition that:

i. creates an increased risk of hazard;

ii. was not disclosed in the application for insurance coverage; and

iii. is not the subject of a prior claim; or

(b) before the effective date of the policy, *we* have not accepted a copy of a required inspection report that:

i. was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and

ii. is dated not earlier than the 90th day before the effective date of the policy.

(2) If this policy has been in effect for 60 days or more, *we* may not cancel this policy unless:

(a) *you* do not pay the premium or any portion of the premium when due;

(b) the Texas Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state;

(c) *you* submit a fraudulent claim; or

(d) there is an increase in the hazard covered by this policy that is within *your* control and that would produce an increase in the premium rate of this policy.

c. The effective date of cancellation cannot be before the 10th day after *we* mail the notice if *we* cancel for any of the reasons in paragraph (2), or the 30th day after *we* mail notice if *we* cancel for any other reason. *Our* notice of cancellation must state the reason for cancellation.

d. If *we* cancel, *our* notice to *you* will state that if the refund is not included with the notice, it will be returned no later than 15 *business days* after the effective date of cancellation.

e. *We* may not cancel this policy solely because *you* are an elected official.

6. **Nonrenewal.**

a. *We* may not refuse to renew this policy solely because *you* are an elected official.

b. *We* may refuse to renew this policy if *you* have filed three or more claims under the policy in any three year period provided that *we* have given *you* notice in compliance with Texas law. Such notice will list two prior claims *you* have made under the policy and will provide, in part, that the filing by *you* of another claim could cause *us* to refuse to renew *your* policy.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0053

A claim under this subsection of this policy does not include a claim that is filed but is not paid or payable under the policy, a claim resulting from a loss caused by natural causes or an appliance-related claim that *we* are prohibited from using under Texas law.

Consistent with Texas law, an appliance-related claim is a request for indemnification for a loss arising from the discharge or leakage of water or steam from an appliance that is the direct result of the failure of the appliance. An appliance means a household device operated by gas or electric current, including hoses directly attached to the device. The term includes air conditioning units, heating units, refrigerators, dishwashers, icemakers, clothes washers, water heaters and disposals.

c. If *we* refuse to renew this policy, *we* must deliver to *you*, or mail to *you* at *your* last mailing address known to *us* and any mortgagee named in the *Declarations*, written notice of *our* refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If *we* fail to give *you* proper notice of *our* decision not to renew, *you* may require *us* to renew the policy.

7. **Assignment of Policy.** Assignment of this policy will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent.

8. **Subrogation and Reimbursement.**

   a. **Subrogation.**

      (1) Applicable to SECTION I:

      If any *insured* to or for whom *we* make payment under this policy has rights to recover damages from another, those rights are transferred to *us* to the extent of *our* payment. That *insured* must do everything necessary to secure *our* rights and must do nothing after loss to impair them. However before a loss, an *insured* may waive in writing all rights of recovery against any person.

      (2) Applicable to SECTION II:

      If any *insured* has rights to recover all or part of any payment *we* have made under

this policy, those rights are transferred to *us*. An *insured* must do nothing after loss to impair them. At *our* request, an *insured* will bring suit or transfer those rights to *us* and help *us* enforce them.

Subrogation does not apply under Section II to **Medical Payments to Others** or **Damage to Property of Others.**

   b. **Reimbursement.**

      If *we* make payment under this policy and any *insured* to or for whom *we* make payment recovers or has recovered from another person or organization, then the *insured* to or for whom *we* make payment must:

      (1) hold in trust for *us* the proceeds of any recovery; and

      (2) reimburse *us* to the extent of *our* payment.

9. **Death.** If *you* die:

   a. *we* insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

   b. *insured* includes:

      (1) any member of *your* household who is an *insured* at the time of *your* death, but only while a resident of the **residence premises**; and

      (2) with respect to *your* property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

11. **Premium.**

    a. Unless as otherwise provided by an alternative payment plan in effect with the **State Farm Companies** with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued *Declarations*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2143

SF PROD (Johnson, Cynthia) 0054

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium applicable at the time of renewal.

c. The premium for this policy may vary based upon:

(1) the purchase of other products or services from the **State Farm Companies**;

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization of which **you** are a member, employee, subscriber, licensee, or franchisee.

d. **Your** purchase of this policy may allow:

(1) **you** to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or

(2) the premium or price for other products or services purchased by **you**, including non-insurance products or services, to vary. Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

12. **Right to Inspect.**

a. **We** have the right but are not obligated to perform the following:

(1) make inspections and surveys of the **Insured location** at any time;

(2) provide **you** with reports on conditions **we** find; or

(3) recommend changes.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

b. **We** do not:

(1) make safety inspections;

(2) undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

(3) warrant that conditions are safe or healthful; or

(4) warrant that conditions comply with laws, regulations, codes, or standards.

This condition applies to **us** and to any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on **our** behalf.

13. **Change of Policy Address.** **We** may change the Named Insured's policy address as shown in the **Declarations** and in **our** records to the most recent address provided to **us** by:

a. **you**; or

b. the United States Postal Service.

14. **Electronic Delivery.** With **your** consent, **we** may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

15. **Duties Regarding Claim Information.** An **insured** or a legal representative acting on an **insured's** behalf must provide **us** with any requested authorizations related to the claim. **Our** rights will not be impaired by any:

a. authorization related to the claim; or

b. act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0055

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions, and conditions of this policy.

**Option AI – Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with **us**. Coverage is with respect to:

1. **SECTION I – Coverage A, Coverage B, or Coverage C;** or

2. **SECTION II – Coverage L** and **Coverage M** but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP – Business Property.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability**, item b., for property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU – Business Pursuits. SECTION II – EXCLUSIONS**, item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university, and professional athletic coaches), school principal, or school administrator;

   while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

   a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

   b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

      (1) computer programming, architectural, engineering, or industrial design services;

      (2) medical, surgical, dental, or other services or treatment conducive to the health of persons or animals; and

      (3) beauty or barber services or treatment;

   c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

   d. when the **insured** is a member of the faculty or teaching staff of a school or college:

      (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading, or unloading of:

         (a) draft or saddle animals, including vehicles for use with them; or

         (b) aircraft, **motor vehicles**, recreational **motor vehicles** or watercraft, airboats, air cushions, or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

      owned, operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

      (2) under **Coverage M** for **bodily injury** to a student arising out of corporal punishment administered by or at the direction of the **insured**.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0056

**Option FA – Firearms.** Firearms are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. *We* will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds, or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, *we* will pay for losses caused by wild bears or deer;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling, or explosion of firearms;

   g. breakage, marring, scratching, tearing, or denting unless caused by fire, thieves, or accidents to conveyances; or

   h. infidelity of an *insured's* employees or persons to whom the insured property may be entrusted or rented;

2. *Our* limit for loss by any Coverage B peril except theft is the limit shown in the *Declarations* for Coverage B, plus the aggregate limit;

3. *Our* limits for loss by theft are those shown in the *Declarations* for this option. These limits apply in lieu of the Coverage B theft limit; and

4. *Our* limits for loss by any covered peril except those in items 2. and 3. above are those shown in the *Declarations* for this option.

**Option ID – Increased Dwelling Limit.** *We* will settle losses to damaged *building structures* covered under

**COVERAGE A – DWELLING** according to the **Loss Settlement Provision** shown in the *Declarations*.

1. If the amount *you* actually and necessarily spend to repair or replace the damaged *dwelling* exceeds the limit of liability shown in the *Declarations* for Coverage A – Dwelling, *we* will pay the additional amounts not to exceed the Option ID limit shown in the *Declarations*.

2. If the amount *you* actually and necessarily spend to repair or replace damaged *building structures* covered under **COVERAGE A – DWELLING, Other Structures** exceeds the limit of liability shown in the *Declarations* for Other Structures, *we* will pay the additional amounts not to exceed 10% of the Option ID limit shown in the *Declarations*.

**Report Increased Values.** *You* must notify *us* within 90 days of the start of construction on any new *building structure* costing $5,000 or more; or any additions to or remodeling of *building structures* that increase their values by $5,000 or more. *You* must pay any additional premium due for the increased value. *We* will not pay more than the applicable limit of liability shown in the *Declarations* if *you* fail to notify *us* of the increased value within 90 days.

**Option IO – Incidental Business.** The coverage provided by this option applies only to that incidental *business* occupancy on file with *us*.

1. **COVERAGE A – DWELLING, Other Structures**, item 2.b. is deleted.

2. **COVERAGE B – PERSONAL PROPERTY** is extended to include equipment, supplies, and furnishings usual and incidental to this *business* occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the *Declarations*. The first limit applies to property on the *residence premises*. The second limit applies to property while off the *residence premises*. These limits are in addition to the **COVERAGE B – PERSONAL**

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0057

PROPERTY, Special Limits of Liability on property used or intended for use in a *business*.

3. Under Section II, the *residence premises* is not considered *business* property because an *insured* occupies a part of it as an incidental *business*.

4. **SECTION II – EXCLUSIONS**, item 1.b. is replaced with the following:

   b. *bodily injury* or *property damage* arising out of *business* pursuits of any *insured*, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits or to *business* pursuits of an *insured* that are necessary or incidental to the use of the *residence premises* as an incidental *business*;

5. This insurance does not apply to:

   a. *bodily injury* to an employee of an *insured* arising out of the *residence premises* as an incidental *business* other than to a *residence employee* while engaged in the employee's employment by an *insured*;

   b. *bodily injury* to a student arising out of corporal punishment administered by or at the direction of the *insured*;

   c. liability arising out of any acts, errors, or omissions of an *insured*, or any other person for whose acts an *insured* is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections, or engineering services in the conduct of an *insured's* incidental *business* involving data processing, computer consulting, or computer programming; or

   d. any claim made or suit brought against any *insured* by:

      (1) any person in the care of any *insured* because of child care services provided by or at the direction of:

         (a) any *insured*;

         (b) any employee of any *insured*; or

      (c) any other person actually or apparently acting on behalf of any *insured*; or

      (2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

         (a) any *insured*;

         (b) any employee of any *insured*; or

         (c) any other person actually or apparently acting on behalf of any *insured*.

      Coverage M does not apply to any person indicated in d.(1) and d.(2) above.

      This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age.

**Option JF – Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss. All provisions and exclusions of **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY, Theft** apply to Option JF.

The following additional provisions apply:

1. *We* will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, *we* will pay for losses caused by wild bears or deer;

   c. inherent vice; or

   d. seizure or destruction under quarantine or customs regulations;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0058

2. *Our* limit for loss by any Coverage B peril except theft is the limit shown in the *Declarations* for Coverage B, plus the aggregate limit;

3. *Our* limits for loss by theft are those shown in the *Declarations* for this option. These limits apply in lieu of the Coverage B theft limit; and

4. *Our* limits for loss by any covered peril except those in items 2. and 3. above are those shown in the *Declarations* for this option.

**Option OL – Building Ordinance or Law.**

1. **Coverage Provided.** The total limit of insurance provided by this option will not exceed an amount equal to the Option OL percentage shown in the *Declarations* of the Coverage A limit shown in the *Declarations* at the time of the loss, as adjusted by the Inflation Coverage provisions of this policy. This is an additional amount of insurance and applies to *building structures* on the *residence premises*.

2. **Damaged Portions of *Building Structure.*** When a *building structure* covered under **COVERAGE A – DWELLING** is damaged by a *loss insured*, *we* will pay for the increased cost to repair or rebuild the physically damaged portion of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same *loss insured* and the requirement is in effect at the time the *loss insured* occurs.

3. **Undamaged Portions of Damaged *Building Structure.*** When a *building structure* covered under **COVERAGE A – DWELLING** is damaged by a *loss insured*, *we* will also pay for:

   a. the cost to demolish and clear the site of the undamaged portions of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same *loss insured* and the requirement is in effect at the time the *loss insured* occurs; and

   b. loss to the undamaged portion of the *building structure* caused by enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same *loss insured*;

      (2) the enforcement requires the demolition of portions of the same *building structure* not damaged by the same *loss insured*;

      (3) the ordinance or law regulates the construction or repair of the *building structure*, or establishes zoning or land use requirements at the described premises; and

      (4) the ordinance or law is in force at the time of the occurrence of the same *loss insured*; or

   c. legally required changes to the undamaged portions of any specific *building structure* features, *building structure* systems, or *building structure* components caused by the enforcement of a building, zoning, or land use ordinance or law, if:

      (1) the enforcement is directly caused by the same *loss insured*; and

      (2) the requirement is in effect at the time the *loss insured* occurs.

   *We* will not pay for legally required changes to specific *building structure* features, *building structure* systems, or *building structure* components that have not been physically damaged by the *loss insured*.

4. **Building Ordinance or Law Coverage Limitations.**

   a. *We* will not pay for any increased cost of construction:

      (1) until the *building structure* is actually repaired or replaced at the same or another premises in the same general vicinity;

      (2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years; and

      (3) due to any original or subsequent construction, addition, modification, renovation, remodel, or repair to a *building structure* that did not comply with a building, zoning, or land use ordinance or law in effect when the construction, addition, modification, renovation, remodel, or repair was performed.

38

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0059

b.   *We* will not pay more under this coverage than the amount *you* actually spend:

(1)   for the increased cost to repair or rebuild the *building structure* at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

(2)   to demolish and clear the site of the undamaged portions of the *building structure* caused by enforcement of building, zoning, or land use ordinance or law.

*We* will not pay for more than a *building structure* of the same height, floor area, and style on the same or similar premises as the *building structure*, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG – Silverware and Goldware Theft.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability**, item i., for theft of silverware and goldware is increased to be the amount shown in the *Declarations* for this option.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2143

SF PROD (Johnson, Cynthia) 0060



EXHIBIT C



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



1      1-Photo Jul 01, 3 36 23 PM          Date Taken: 7/1/2021

Leak in bathroom located below fastener backed out due to wind damage.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



2      2-Photo Jul 01, 3 36 27 PM          Date Taken: 7/1/2021

Leak in bathroom located below fastener backed out due to wind damage.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



3       3-Photo Jul 01, 3 36 33 PM          Date Taken: 7/1/2021

Leak in bathroom located below fastener backed out due to wind damage.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



4       4-Photo Jul 01, 3 37 58 PM          Date Taken: 7/1/2021

Leak that has occured post storm date in garage.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



5        6-Photo Jul 01, 3 38 11 PM          Date Taken: 7/1/2021

Leak that has occured post storm date in garage.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



6        7-Photo Jul 01, 3 38 22 PM          Date Taken: 7/1/2021

Leak that has occured post storm date in garage.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



7        9-Photo Jul 26, 10 29 50 AM          Date Taken: 7/26/2021

Wind damage to trim on front slope.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



8       11-Photo Jul 26, 10 30 46 AM       Date Taken: 7/26/2021

Wind damage to ridge cap as well as backed out fastener due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



9       12-Photo Jul 26, 10 31 02 AM        Date Taken: 7/26/2021
        Wind damage to ridge cap as well backed out fastener due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



10    40-Photo Jul 26, 10 35 48 AM    Date Taken: 7/26/2021
FRONT SLOPE

Wind damage to panel #1. Roof panel end lap has become separated and created an opening due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



11      41-Photo Jul 26, 10 35 54 AM (1)      Date Taken: 7/26/2021
FRONT SLOPE

Wind damage to roof panel #2.  Seam opening created by high winds.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



12      43-Photo Jul 26, 10 36 09 AM        Date Taken: 7/26/2021
        FRONT SLOPE

Wind damage to roof panel #3. High wind has caused the end lap to begin to separate from lower panel.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



13        44-Photo Jul 26, 10 37 06 AM          Date Taken: 7/26/2021
          RIGHT SLOPE

Fastener backed out due to wind directly above leak in bathroom.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



14      46-Photo Jul 26, 10 38 34 AM      Date Taken: 7/26/2021
FRONT SLOPE

Wind damage to panel #4. Roof panel end lap beginning to separate from lower panel due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



15      47-Photo Jul 26, 10 39 13 AM        Date Taken: 7/26/2021
        FRONT SLOPE

Wind damage to roof panel #5. Roof panel beginning to separate from lower panel due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



16      48-Photo Jul 26, 10 40 42 AM      Date Taken: 7/26/2021

Overview of rear slope showing multiple roof panels separating from lower panel caused by high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



17       49-Photo Jul 26, 10 40 44 AM        Date Taken: 7/26/2021
         REAR SLOPE

Wind damage to roof panel #6. Roof panel end lap has been separated from lower panel due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



18       51-Photo Jul 26, 10 42 06 AM       Date Taken: 7/26/2021
         REAR SLOPE

Damage to roof panel #7. Roof panel end lap beginning to separate from lower panel due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



19      54-Photo Jul 26, 10 44 50 AM       Date Taken: 7/26/2021

Rear slope overview of multiple roof panels where the end lap has become separated from lower panel due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



20      56-Photo Jul 26, 10 44 55 AM        Date Taken: 7/26/2021

Rear slope overview of multiple roof panels where the end lap has become separated from lower panel due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



21      57-Photo Jul 26, 10 45 04 AM        Date Taken: 7/26/2021
        REAR SLOPE

Photo of roof panel #6 from a different angle showing separation from lower panel due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



22      58-Photo Jul 26, 10 45 19 AM        Date Taken: 7/26/2021
REAR SLOPE

Close up photo of roof panel #6 showing damage from high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



23      59-Photo Jul 26, 10 45 26 AM        Date Taken: 7/26/2021
        REAR SLOPE

Wind damage to roof panel #8. Roof panel end lap has been separated from lower panel due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



24      61-Photo Jul 26, 10 47 02 AM      Date Taken: 7/26/2021
        REAR SLOPE

Wind damage to roof panel #9. Roof panel end lap has become separated from lower panel due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



25      62-Photo Jul 26, 10 47 45 AM         Date Taken: 7/26/2021
        REAR SLOPE

Wind damage to roof panel #10. Roof panel end lap contains areas that have separated from lower panel due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



1        64-Photo Jul 26, 10 48 49 AM          Date Taken: 7/26/2021
         REAR SLOPE

         Wind damage to roof panel #11. Roof panel end lap has become separated from lower panel due to high wind.

 **Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



| 2 | 67-Photo Jul 26, 10 49 36 AM | Date Taken: 7/26/2021 |
|---|---|---|

LEFT SLOPE

Wind damage to roof panel #12. Roof panel end lap has become separated from lower panel due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



3       69-Photo Jul 26, 10 50 44 AM        Date Taken: 7/26/2021
FRONT SLOPE

Wind damage to roof panel #13. Roof panel end lap has become separated from lower panel due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



4        70-Photo Jul 26, 10 50 46 AM        Date Taken: 7/26/2021

Front slope overview of roof panels have become separated from the lower panel due to high wind



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



5       71-Photo Jul 26, 10 50 47 AM        Date Taken: 7/26/2021

Front slope overview of roof panels have become separated from the lower panel due to high wind



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



6       78-Photo Jul 26, 10 53 38 AM       Date Taken: 7/26/2021

Fastener backed out to due high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



7      79-Photo Jul 26, 10 53 51 AM        Date Taken: 7/26/2021

Wind damage to ridge cap as well as backed out fastener due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



8        80-Photo Jul 26, 10 55 01 AM        Date Taken: 7/26/2021
FRONT SLOPE

Wind damage to roof panels #14, #15 and #16. Roof panel end laps have become separated from lower panel due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



9      81-Photo Jul 26, 10 55 04 AM        Date Taken: 7/26/2021

RIGHT SLOPE

Wind damage to roof panels #17 and #18. Roof panel end laps have become separated from lower panel due to high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



10      82-Photo Jul 26, 10 55 35 AM        Date Taken: 7/26/2021

Fastener backed out to due high wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



11      86-Photo Jul 26, 10 59 21 AM       Date Taken: 7/26/2021

FRONT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



12     88-Photo Jul 26, 10 59 36 AM     Date Taken: 7/26/2021

FRONT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



13      89-Photo Jul 26, 11 00 27 AM      Date Taken: 7/26/2021
FRONT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



14      90-Photo Jul 26, 11 00 32 AM      Date Taken: 7/26/2021
FRONT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



15      91-Photo Jul 26, 11 00 36 AM          Date Taken: 7/26/2021

FRONT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



16      92-Photo Jul 26, 11 00 59 AM      Date Taken: 7/26/2021
        REAR SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



17      93-Photo Jul 26, 11 01 06 AM       Date Taken: 7/26/2021

REAR SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



18       94-Photo Jul 26, 11 01 27 AM        Date Taken: 7/26/2021

RIGHT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



19      96-Photo Jul 26, 11 01 33 AM        Date Taken: 7/26/2021
RIGHT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



20      99-Photo Jul 26, 11 01 56 AM        Date Taken: 7/26/2021

RIGHT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



1        100-Photo Jul 26, 11 02 00 AM        Date Taken: 7/26/2021
         LEFT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



2        101-Photo Jul 26, 11 02 06 AM        Date Taken: 7/26/2021
LEFT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



3        103-Photo Jul 26, 11 02 33 AM        Date Taken: 7/26/2021

LEFT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



4        105-Photo Jul 26, 11 04 20 AM        Date Taken: 7/26/2021
PATIO ROOF- REAR SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



5        106-Photo Jul 26, 11 04 25 AM        Date Taken: 7/26/2021

PATIO ROOF- REAR SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



6        107-Photo Jul 26, 11 04 26 AM        Date Taken: 7/26/2021
         PATIO ROOF- REAR SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



7        110-Photo Jul 26, 11 46 22 AM        Date Taken: 7/26/2021

Sheathing under roof system with water damage due to leak post storm date.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



8       111-Photo Jul 26, 11 46 26 AM       Date Taken: 7/26/2021

Sheathing under roof system with water damage due to leak post storm date.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



9        118-Photo Jul 26, 11 51 11 AM        Date Taken: 7/26/2021
LEFT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



10      119-Photo Jul 26, 11 51 29 AM      Date Taken: 7/26/2021

FRONT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



11       124-Photo Jul 26, 11 52 14 AM       Date Taken: 7/26/2021
         REAR SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



12      132-Photo Jul 26, 11 53 49 AM      Date Taken: 7/26/2021

FRONT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



13      133-Photo Jul 26, 11 55 01 AM        Date Taken: 7/26/2021

FRONT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



14      134-Photo Jul 26, 11 55 04 AM        Date Taken: 7/26/2021

FRONT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



15      136-Photo Jul 26, 11 55 24 AM      Date Taken: 7/26/2021
RIGHT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



16      137-Photo Jul 26, 11 55 34 AM       Date Taken: 7/26/2021
        REAR SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



17       138-Photo Jul 26, 11 55 46 AM       Date Taken: 7/26/2021
         REAR SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



18      139-Photo Jul 26, 11 55 54 AM      Date Taken: 7/26/2021
        REAR SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.



**Elliott Claim Services LLC**

Elliott Claim Services, LLC
213 Fredonia Street, Suite 260
Longview, TX 75601
877.405.4055
info@elliottclaimservices.com



19      143-Photo Jul 26, 11 56 58 AM      Date Taken: 7/26/2021

LEFT SLOPE/ GROUND LEVEL showing end lap separated from lower panel due to wind.

# MOODY ENGINEERING INC

Eric D. Moody, P.E., Ph.D.
Keith A. Moody, P.E., CFM
Justin F. Wagner, P.E.

9225 Bee Cave Road
Bldg. A, Suite 200
Austin, Texas 78733

Telephone: (512)502-8333
Toll Free: (800)821-9112
Fax: (512)502-8334
MOODYENGINEERING.COM

December 3rd, 2021

Mr. Stephen W. Bosky
Ramon Worthington Nicolas & Cantu
13413 Galleria Circle, Suite 120
Bee Cave, Texas 78738

Re: Forensic engineering investigation and causation analysis of damage to residential dwelling; Civil No.: 4:21-CV-158-Y; Cynthia Johnson vs. State Farm Lloyds; In the United States District Court for the Northern District of Texas Fort Worth Division; Our File No.: 21-295

Dear Mr. Bosky:

Per your request I performed a forensic engineering investigation and causation analysis of the alleged storm damage, resulting from high wind and hail, to the residential dwelling located at 709 Queensway Road in Willow Park, Texas. The objective of this forensic engineering investigation was to perform an independent engineering assessment of the reported damage to the metal R-panel roof, building envelope, shed, wood picket fence, and interior ceiling drywall. This investigation involved both a site investigation and a review of available documentation pertaining to the loss. I also reviewed the available severe weather data from the National Weather Service (NWS), HailTrace, CoreLogic, and AccuWeather. No intrusive or destructive testing was performed as part of this forensic engineering investigation.

In performing my forensic engineering analysis of the reported damage to this residential dwelling I reviewed and took into consideration the following:

1. Notes, photographs, video, and observations collected during my site investigation of this residential dwelling performed on August 31st, 2021.
2. Severe weather data from the NWS Storm Events Database pertaining to severe weather that occurred in this region of Parker County in May 2020.
3. HailTrace stormswath pertaining to the thunderstorm activity that occurred in Parker County on May 7th, 2020.
4. CoreLogic Hail Verification Report for 709 Queensway Road in Willow Park, Texas.
5. CoreLogic Wind Verification Report for 709 Queensway Road in Willow Park, Texas.
6. AccuWeather Hail Report for 709 Queensway Road in Willow Park, Texas dated August 17th, 2020.
7. Repair estimates from State Farm dated May 28th, 2020 and September 4th, 2020.
8. Repair estimate and photographs from Elliott Claim Services, LLC dated September 28th, 2020.

Mr. Stephen W. Bosky
Page 2 of 6

9. State Farm Insurance ClaimsReady™ Report for 709 Queensway Road in Willow Park, Texas dated May 15th, 2020.
10. State Farm Lloyds basic claim information.
11. Letter correspondence from State Farm Claims to Ms. Cynthia Johnson dated May 29th, 2020 and September 15th, 2020.
12. Initial Scheduling Order.
13. Plaintiffs' Designation of Expert Witnesses.
14. Report and repair estimate from Mr. Michael Ogden of All Disaster Claims, Inc. dated November 1st, 2021.
15. Order Granting Partial Summary Judgement and Denying Continuous of Motion for Summary Judgement.
16. Expert report of Mr. Gary Johnson dated November 3rd, 2021.
17. Photographs taken by homeowner.
18. Documents Bates Stamped SF PROD (Johnson, Cynthia) 0078 to SF PROD (Johnson, Cynthia) 0097.
19. Documents Bates Stamped SF PROD (Johnson, Cynthia) 0277 to SF PROD (Johnson, Cynthia) 0300.
20. Documents Bates Stamped SF PROD (Johnson, Cynthia) 0307 to SF PROD (Johnson, Cynthia) 0309.
21. Documents Bates Stamped SF PROD (Johnson, Cynthia) 0325 to SF PROD (Johnson, Cynthia) 0334.
22. Documents Bates Stamped SF PROD (Johnson, Cynthia) 0352 to SF PROD (Johnson, Cynthia) 0389.
23. Documents Bates Stamped SF PROD (Johnson, Cynthia) 0412 to SF PROD (Johnson, Cynthia) 0448.
24. Documents Bates Stamped SF PROD (Johnson, Cynthia) 0610 to SF PROD (Johnson, Cynthia) 0611 and SF PROD (Johnson, Cynthia) 0804 to SF PROD (Johnson, Cynthia) 0814.
25. Documents Bates Stamped SF PROD (Johnson, Cynthia) 0620 to SF PROD (Johnson, Cynthia) 0769.
26. Documents Bates Stamped SF PROD (Johnson, Cynthia) 0863 to SF PROD (Johnson, Cynthia) 0877.
27. Miscellaneous correspondence.

   The Johnson residence is located at 709 Queensway Road in Willow Park, Texas. The dwelling consists of a single-story wood frame structure supported on a concrete slab-on-grade (SOG) foundation. The exterior walls are covered with brick masonry. A wood picket fence is also located on the Johnson property.

   In May 2020 Ms. Cynthia Johnson contacted her property insurance carrier, State Farm Lloyds (SFL), and reported storm related damage to her dwelling. The reported Date of Loss (DOL) was May 7th, 2020. After performing an onsite inspection of the exterior and roof of the dwelling on May 20th, 2020, a virtual inspection of the dwelling's interior on May 21st, 2020, and a follow-up inspection with a public adjuster on August 24th, 2020 SFL issued a final repair estimate dated September 15th, 2020.

   The SFL repair estimate indicated that the cause of loss was "*Hail.*" The SFL repair estimate included an allowance to replace an 8-inch rain cap on the roof of the dwelling.

Mr. Stephen W. Bosky
Page 3 of 6

The SFL repair estimate also included allowances to replace two panels of the metal overhead door at the garage and 16.50 LF of aluminum gutter. The SFL repair estimate also included allowances for interior ceiling drywall repairs at the laundry room and garage. The SFL repair estimate had a Replacement Cost Value (RCV) of $3,013.48.

Photographs attached to the SFL repair estimate show minor hail spatter to the wood picket fence. They also show cosmetic hail damage to the metal R-panel roof and metal overhead door at the garage. The SFL photographs do not depict any wind damage to the metal R-panel roof or wood picket fence on the Johnson property. Photographs taken on the interior of the dwelling show water damaged ceiling drywall at the laundry room and garage.

Ms. Cynthia Johnson engaged Public Adjuster, Mr. Britt Elliott, of Elliott Claim Services, LLC (Elliott) to assist her in the pursuit of her claim. Elliott reportedly inspected the Johnson residence on July 24th, 2020 and issued a repair estimate dated September 28th, 2020. The cause of loss was reported as "*Hail.*" The Elliott repair estimate included an allowance to replace 3,917.86 SF of the ½" plywood deck and metal panel roof on the dwelling. The Elliott repair estimate also included an allowance to replace 2.0 SQ of the laminate composition shingle roof on the shed. The Elliott repair estimate also included an allowance to replace the metal overhead door at the garage. The Elliott repair estimate also included allowances for interior repairs at the garage and laundry room. The Elliott repair estimate also included an allowance to replace 516.0 LF of the wood picket fence. The Elliott repair estimate had an RCV of $125,997.49.

Photographs attached to the Elliott repair estimate show minor hail spatter to the wood picket fence. They also show minor indentations to the metal overhead door at the garage. The photographs do not show any wind damage to the wood picket fence. Elliott returned to the Johnson residence on July 1st, 2021 and took additional photographs. These photographs show isolated screw fasteners that had backed out of the underlying decking on the roof. The photographs also show cosmetic damage to the metal R-panel roofing due to hailstone impacts. The photographs do not show any evidence of wind damage to the metal R-panel roof on the dwelling.

As part of my investigation of the reported damage to the Johnson residence I also reviewed the Plaintiffs' Designation of Expert Witnesses. This includes a report by Mr. Michael Ogden of All Disaster Claims, Inc. (Ogden). Mr. Ogden was reportedly engaged by the Hodge Law Firm to "*Assess storm damage to the Johnson residence and to prepare a cost estimate to repair these damages.*" Ogden inspected the Johnson residence on October 11th, 2021. Ogden was also provided copies of the photographs taken by Elliott. In his report Ogden noted that "*Wind & hail caused the damages to the property*" which occurred on the reported DOL of May 7th, 2020. Ogden further reported that interior water damage occurred as reported in his estimate. Ogden subsequently issued a repair estimate dated November 1st, 2021. Ogden did not indicate the "*type of loss*" or "*date of loss*" on his repair estimate. The Ogden repair estimate included an allowance to replace 3,917.86 SF of the metal R-panel roofing. The Ogden repair estimate also included an allowance to replace the OSB sheathing on the roof deck. The Odgen repair estimate also included an allowance to replace 2.00 SQ of the laminate composition shingle roof on the shed. The Ogden repair estimate also included an allowance to replace the metal overhead door at the garage and 516.0 LF of the wood picket fence. The Ogden repair estimate also included

Mr. Stephen W. Bosky
Page 4 of 6

allowances for interior repairs at the garage, hall bathroom, and laundry room. The Ogden repair estimate had an RCV of $74,993.49.

Photographs attached to the Ogden repair estimate do not show any indication of wind damage to the metal R-panel roof. They do show isolated screw fasteners that had partially backed out of the underlying wood sheathing. They also show areas of sealant repairs around pipe jack flashing and screw fasteners. Likewise, Ogden did not provide any photographic evidence of storm damage to the laminate composition shingle roof on the shed or wood picket fence.

As part of my forensic engineering investigation of the reported damage to this residential dwelling I reviewed the available severe weather data from the NWS Storm Events Database, HailTrace, CoreLogic, and AccuWeather. The severe weather data from the NWS Storm Events Database indicated hail occurring in Parker County, Texas on the reported DOL of May 7th, 2020. The reported hail ranged in size from 0.75 to 1.75 inches in diameter. No high wind events were reported in the NWS Storm Events Database resulting from this storm. A copy of the severe weather data obtained from the NWS Storm Events Database is attached to this report.

In order to get a better estimate of the size of the hail occurring at this loss location I also reviewed site specific weather data from CoreLogic, HailTrace, and AccuWeather. The CoreLogic Hail Verification Report indicated ≈ 1.3 inch diameter hail falling at this loss location on the reported DOL of May 7th, 2020. The HailTrace stormswath also indicated that ≈ 1.50 inch diameter hail fell at this loss location on the reported DOL of May 7th, 2020. The AccuWeather Hail Report indicated that the hail falling at this loss location was ≈ 3.25 inches in diameter. The reported hail size in the AccuWeather report is not consistent with the reports provided by the NWS Storm Events Database, CoreLogic, or HailTrace. Copies of the CoreLogic Hail Verification Report and HailTrace stormswath are attached to this report.

In order to determine if any specific high wind event occurred at this loss location I also requested and reviewed a CoreLogic Wind Verification Report for this property. The CoreLogic Wind Verification report did not indicate any unusually high wind occurring at this loss location on the reported DOL of May 7th, 2020. In fact, no high wind events were reported in calendar year 2020 or calendar year 2021 to date. A copy of the CoreLogic Wind Verification Report is attached to this report.

As part of my forensic engineering investigation of the reported damage to this residential dwelling I inspected the dwelling on August 31st, 2021. This site investigation included documenting and photographing the interior and exterior of the dwelling, metal panel roof, building envelope, detached patio roof, shed, and wood picket fence. Inspection of the Johnson residence revealed minor hail spatter to the wood picket fence (ref. photographs 5-6). Inspection of the wood picket fence also revealed some severe age related weathering of the 2x4 runners supporting the wood pickets (ref. photographs 7-8). Inspection of the residence did not reveal any evidence of hail damage to the HVAC condenser (ref. photographs 9-10). Some minor cosmetic indentations were evident in the metal overhead door at the garage (ref. photographs 11-12). Inspection of the laminate composition shingle roof on the shed did not reveal any evidence of bruising or substantive granule loss from hailstone impacts (ref. photographs 13-16). The metal panel roof over the detached patio did not show any evidence of damage due to hailstone impacts (ref. photographs 17-20).

MOODY EXPERT DESIG (Johnson, Cynthia) 0004

Mr. Stephen W. Bosky
Page 5 of 6

Inspection of the metal R-panel roof over the dwelling revealed isolated sealant repairs around the roof vents and attic flashing (ref. photographs 25-27). There was also evidence of hail damage to the various metal vent caps on the roof of the dwelling (ref. photograph 28). There was also evidence of cosmetic hail damage to the ridge caps, valley flashing, and hip flashing (ref. photographs 29-32). There was also evidence of hail spatter on isolated areas of the metal panel roof (ref. photographs 33-34). The foam closure strips beneath the ridge cap exhibited age related wear and tear (ref. photograph 35). There was also evidence of burnish marks due to tree branch abrasion on isolated sections of the metal panel roof (ref. photograph 36). Inspection of the metal R-panel roof revealed cosmetic damage due to hailstone strikes (ref. photographs 37-41). Inspection of the metal R-panel roof did not reveal any evidence of wind damage (ref. photographs 42-48). Numerous screw fasteners had been repaired with multiple sealant applications (ref. photographs 49-56). This includes screw fasteners in the area of water damaged ●SB roof decking above the garage and laundry room (ref. photograph 54). Inspection of the interior of the dwelling revealed isolated water damage to the ceiling drywall at the garage, laundry room, and bathroom (ref. photographs 57-60). Inspection of the attic crawl space also revealed isolated areas of water damage to the plywood roof deck (ref. photographs 61-64).

Based upon my forensic engineering investigation and analysis of the observed damage to this residential dwelling I have reached the following findings and conclusions:

1. Inspection of the metal R-panel roof on the Johnson residence revealed cosmetic damage due to hailstone strikes (ref. photographs 29-32 and 37-44). This cosmetic hail damage will not affect the utility or water shedding capabilities of this roof covering.
2. Many of the screw fasteners in the metal R-panel roof on the Johnson residence exhibited evidence of repair. This includes adding additional screw fasteners adjacent to existing fasteners as well as applying sealant to the heads of many screw fasteners (ref. photographs 32 and 49-56). Other sealant repairs were evident around the vent flashing and step flashing at the chimney (ref. photographs 25-26). The sealant repairs to the roof were also located directly above the areas of observed water damage at the garage and laundry room. The presence of these sealant repairs to the roof are consistent with a history of leaks and associated water damage at the garage, hall bathroom, laundry room, and attic crawl space.
3. Inspection of the metal R-panel roof on the Johnson residence did not reveal any evidence of damage due to high wind. This is consistent with the available severe weather data from the NWS Storm Events Database and CoreLogic which did not indicate any high wind occurring at this loss location on the reported DOL of May 7th, 2020.
4. The metal R-panel roof over the detached patio did not reveal any evidence of damage due to hailstone strikes (ref. photographs 17-20).
5. Inspection of the wood picket fence revealed only minor spatter or burnish marks due to hailstone impacts (ref. photographs 5-6). Inspection of the wood picket fence did reveal evidence of age related wear and tear to the 2x4 runners supporting the wood pickets (ref. photographs 7-8).

Mr. Stephen W. Bosky
Page 6 of 6

6. Inspection of the HVAC condenser did not reveal any evidence of damage due to hailstone impacts (ref. photographs 9-10).

7. The lower panels of the metal overhead door at the garage exhibited evidence of very minor indentations due to hailstone impacts (ref. photographs 11-12).

8. The laminate composition shingle roof at the shed did not reveal any evidence of bruising or substantive granule loss due to hailstone impacts (ref. photographs 13-16).

9. The water damaged ceiling drywall on the interior of the dwelling is likely the result of long-term water leaks along the seams and fasteners in the metal R-panel roof of the dwelling. This water damage is not the result of the hail damage or a wind created opening in the roof or building envelope.

This report presents my findings and conclusions for the above referenced investigation. This report is provided for your sole use in understanding the cause of the damage to this residential dwelling. Moody Engineering Inc., and its employees, disclaim any contractual relationship with any other party other than the addressee on this report. The findings and conclusions described in this report are based upon a reasonable degree of engineering probability. Should any additional information become available I reserve the right to review that information and, if necessary, revise this report.

Thank you for the opportunity to assist with the forensic engineering investigation of this residential dwelling. Should you have any questions pertaining to the content of this report please do not hesitate to contact my office.

Sincerely

Eric D. Moody, Ph.D., P.E.
Senior Engineer

Attachments:   Photographs
NWS Weather Data
HailTrace Stormswath
CoreLogic Hail Verification Report
CoreLogic Wind Verification Report

xc: file



Photograph 3: South side of residence

Photograph 4: North side of residence



Photograph 1: West side of residence



Photograph 2: East side of residence

MOODY EXPERT DESIG (Johnson, Cynthia) 0007



Photograph 7:  Rotted and deteriorated 2x4 support on wood picket fence (typical)



Photograph 8:  Rotted and deteriorated 2x4 support on wood picket fence (typical)

MOODY EXPERT DESIG (Johnson, Cynthia) 0008



Photograph 5:  Minor hail spatter on wood picket fence (typical)

Photograph 6:  Minor hail spatter on wood picket fence (typical)



Photograph 11:  Minor hail indentations to overhead door (typical)



Photograph 12:  Close up view of minor hail indentations to overhead door (typical)

MOODY EXPERT DESIG (Johnson, Cynthia) 0009



Photograph 9:  No storm related damage evident to HVAC condenser (typical)

Photograph 10:  Minor hail spatter on surface of HVAC condenser (typical)



Photograph 15: No bruising or substantive granule loss from hailstone impacts to laminate shingle roof on shed (typical)



Photograph 16: No bruising or substantive granule loss from hailstone impacts to laminate shingle roof on shed (typical)



Photograph 13: View of detached shed (typical)

Photograph 14: No bruising or substantive granule loss from hailstone impacts to laminate shingle roof on shed (typical)

MOODY EXPERT DESIG (Johnson, Cynthia) 0010



Photograph 19: No storm related damage evident to metal R-panel roof over detached outdoor living area (typical)

Photograph 20: No storm related damage evident to metal R-panel roof over detached outdoor living area (typical)

Photograph 17: No storm related damage evident to metal R-panel roof over detached outdoor living area (typical)

Photograph 18: No storm related damage evident to metal R-panel roof over detached outdoor living area (typical)

MOODY EXPERT DESIG (Johnson, Cynthia) 0011



Photograph 23:  View of metal R-panel roof on dwelling (typical)



Photograph 24:  View of metal R-panel roof on dwelling (typical)



Photograph 21:  View of metal R-panel roof on dwelling (typical)

Photograph 22:  View of metal R-panel roof on dwelling (typical)

MOODY EXPERT DESIG (Johnson, Cynthia) 0012



Photograph 27: Sealant repairs around solar attic vent (typical)



Photograph 28: Hail indentations to metal roof vent (typical)

MOODY EXPERT DESIG (Johnson, Cynthia) 0013



Photograph 25: Cricket flashing around masonry chimney (typical)

Photograph 26: Sealant repairs to cricket flashing around masonry chimney (typical)



Photograph 31:  Cosmetic hail damage to ridge cap flashing (typical)

Photograph 32:  Cosmetic hail damage to hip flashing (typical)

MOODY EXPERT DESIG (Johnson, Cynthia) 0014

Photograph 29:  Cosmetic hail damage evident to metal R-panel roof (typical)

Photograph 30:  Cosmetic hail damage evident to metal R-panel roof (typical)



Photograph 35:  Age related wear and tear to foam closure strips (typical)



Photograph 36:  Tree branch abrasion to metal R-panel roof (typical)



Photograph 33:  Minor hail spatter on surface of metal R-panel roof (typical)

Photograph 34:  Close up view of minor hail spatter on surface of metal R-panel roof (typical)

MOODY EXPERT DESIG (Johnson, Cynthia) 0015



Photograph 39:  Cosmetic hail damage to metal R-panel roof due to hailstone strikes (typical)

Photograph 40:  No wind or hail damage evident to seams in metal R-panel roof (typical)

Photograph 37:  Cosmetic hail damage to metal R-panel roof due to hailstone strikes (typical)

Photograph 38:  Cosmetic hail damage to metal R-panel roof due to hailstone strikes (typical)

MOODY EXPERT DESIG (Johnson, Cynthia) 0016



Photograph 43: No wind damage evident to seams in metal R-panel roof (typical)

Photograph 44: No wind damage evident to seams in metal R-panel roof (typical)

Photograph 41: No wind or hail damage evident to seams in metal R-panel roof (typical)

Photograph 42: No wind damage evident to seams in metal R-panel roof (typical)

MOODY EXPERT DESIG (Johnson, Cynthia) 0017



Photograph 47: No wind damage evident to seams in metal R-panel roof (typical)



Photograph 48: No wind damage evident to seams in metal R-panel roof (typical)



Photograph 45: No wind damage evident to seams in metal R-panel roof (typical)

Photograph 46: No wind damage evident to seams in metal R-panel roof (typical)

MOODY EXPERT DESIG (Johnson, Cynthia) 0018



Photograph 51:   Sealant application around screw fasteners (typical)



Photograph 52:   Sealant application around screw fasteners (typical)

MOODY EXPERT DESIG (Johnson, Cynthia) 0019



Photograph 49:   Area of water infiltration through metal R-panel roof at garage (typical)

Photograph 50:   Sealant application around screw fasteners (typical)



Photograph 55: Sealant application around screw fasteners (typical)



Photograph 56: Sealant application around screw fasteners (typical)

Photograph 53: Sealant application around screw fasteners (typical)

Photograph 54: Sealant application around screw fasteners (typical)

MOODY EXPERT DESIG (Johnson, Cynthia) 0020



Photograph 59: Area of water stained ceiling drywall at utility room (typical)



Photograph 60: Close up view of water stained ceiling drywall at utility room (typical)

MOODY EXPERT DESIG (Johnson, Cynthia) 0021



Photograph 57: Area of water damaged ceiling drywall at garage (typical)

Photograph 58: Area of water damaged ceiling drywall at garage (typical)



Photograph 63:  Water damaged roof deck long eave (typical)



Photograph 64:  Close up view of water damaged roof deck long eave (typical)



Photograph 61:  Water damaged roof deck above garage (typical)

Photograph 62:  Water damaged roof deck above garage (typical)

MOODY EXPERT DESIG (Johnson, Cynthia) 0022

# Storm Events Database

## Search Results for Parker County, Texas

### All Available Event Types

Due to changes in the methods used by the NWS to spatially locate Waterspouts, please query by state (FL, TX, VA, etc) for Jan 1996 through Sep 2001. Beginning October 2001, please query by Marine Zone (N. Atlantic, S Atlantic, Gulf of Mexico, S Pacific, N. Pacific, Alaskan Waters, Hawaiian Waters, Great Lakes, etc) using the drop-down box for "State/Area".

**Parker county contains the following zones:**
Parker

11 events were reported between 05/01/2020 and 05/31/2020 (31 days)

### Summary Info:

| | |
|---|---|
| Number of County/Zone areas affected: | 1 |
| Number of Days with Event: | 2 |
| Number of Days with Event and Death: | 0 |
| Number of Days with Event and Death or Injury: | 0 |
| Number of Days with Event and Property Damage: | 1 |
| Number of Days with Event and Crop Damage: | 0 |
| Number of Event Types reported: | 1 |

### Column Definitions:
'Mag': Magnitude, 'Dth': Deaths, 'Inj': Injuries, 'PrD': Property Damage, 'CrD': Crop Damage

*Click on* **Location** *below to display details.*
*Available Event Types have changed over time. Please refer to the* *Database Details* *for more information.*

Select: All Hail ▾   All Tornadoes ▾   All Wind Speeds ▾    Sort By: Date/Time (Oldest) ▾

| Location | County/Zone | St. | Date | Time | T.Z. | Type | Mag | Dth | Inj | PrD | CrD |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Totals:** | | | | | | | | 0 | 0 | 25.00K | 0.00K |
| POOLVILLE | PARKER CO. | TX | 05/07/2020 | 20:51 | CST-6 | Hail | 1.00 in. | 0 | 0 | 0.00K | 0.00K |
| WEATHERFORD | PARKER CO. | TX | 05/07/2020 | 21:11 | CST-6 | Hail | 1.00 in. | 0 | 0 | 0.00K | 0.00K |
| WEATHERFORD | PARKER CO. | TX | 05/07/2020 | 21:13 | CST-6 | Hail | 1.00 in. | 0 | 0 | 0.00K | 0.00K |
| WEATHERFORD ARPT | PARKER CO. | TX | 05/07/2020 | 21:16 | CST-6 | Hail | 1.25 in. | 0 | 0 | 0.00K | 0.00K |
| LAKE WEATHERFORD | PARKER CO. | TX | 05/07/2020 | 21:18 | CST-6 | Hail | 0.88 in. | 0 | 0 | 0.00K | 0.00K |
| WEATHERFORD ARPT | PARKER CO. | TX | 05/07/2020 | 21:19 | CST-6 | Hail | 1.00 in. | 0 | 0 | 0.00K | 0.00K |
| ANNETA | PARKER CO. | TX | 05/07/2020 | 21:30 | CST-6 | Hail | 1.50 in. | 0 | 0 | 0.00K | 0.00K |
| ALEDO | PARKER CO. | TX | 05/07/2020 | 21:30 | CST-6 | Hail | 1.00 in. | 0 | 0 | 0.00K | 0.00K |
| WEATHERFORD ARPT | PARKER CO. | TX | 05/07/2020 | 21:30 | CST-6 | Hail | 1.75 in. | 0 | 0 | 25.00K | 0.00K |
| WEATHERFORD ARPT | PARKER CO. | TX | 05/07/2020 | 21:32 | CST-6 | Hail | 1.25 in. | 0 | 0 | 0.00K | 0.00K |
| RENO | PARKER CO. | TX | 05/23/2020 | 07:39 | CST-6 | Hail | 0.75 in. | 0 | 0 | 0.00K | 0.00K |
| **Totals:** | | | | | | | | 0 | 0 | 25.00K | 0.00K |

MOODY EXPERT DESIG (Johnson, Cynthia) 0023

**HailTrace Stormswath; May 7th, 2020**



MOODY EXPERT DESIG (Johnson, Cynthia) 0024



MOODY EXPERT DESIG (Johnson, Cynthia) 0025

 CoreLogic

Weather Verification Services

# Hail Verification Report

| Claim or Reference # | 21-295 |
|---|---|
| Insured/Property Owner | Moody Engineering |
| Address | 709 Queensway Rd<br>Willow Park, TX 76087 |
| Coordinates | Latitude 32.750274, Longitude -97.650551 |
| Date Range | Jan 01, 2009 to Dec 01, 2021 |
| Report Generated | December 2nd, 2021 at 15:31:53 UTC |

## Storm Events

| Date | Estimated Maximum Hail Size | | | |
|---|---|---|---|---|
| | At Location | Within 1 mi / 1.61 km | Within 3 mi / 4.83 km | Within 10 mi / 16.09 km |
| May 10, 2021 | 0.8 in / 2.03 cm | 1.4 in / 3.56 cm | 1.7 in / 4.32 cm | 2.2 in / 5.59 cm |
| May 3, 2021 | 0.8 in / 2.03 cm | 1.1 in / 2.79 cm | 1.4 in / 3.56 cm | 2.1 in / 5.33 cm |
| May 7, 2020 | 1.3 in / 3.3 cm | 1.4 in / 3.56 cm | 1.5 in / 3.81 cm | 1.6 in / 4.06 cm |
| Oct 20, 2019 | -- | -- | 1 in / 2.54 cm | 2 in / 5.08 cm |
| Mar 8, 2019 | -- | -- | 0.8 in / 2.03 cm | 1.1 in / 2.79 cm |
| Apr 21, 2018 | -- | 0.9 in / 2.29 cm | 1.1 in / 2.79 cm | 1.2 in / 3.05 cm |
| Mar 23, 2016 | -- | -- | 0.8 in / 2.03 cm | 0.9 in / 2.29 cm |
| Mar 16, 2016 | -- | -- | 1.2 in / 3.05 cm | 1.6 in / 4.06 cm |
| Mar 8, 2016 | 0.8 in / 2.03 cm | 0.8 in / 2.03 cm | 0.8 in / 2.03 cm | 0.8 in / 2.03 cm |
| Apr 3, 2014 | -- | -- | 0.75 in / 1.91 cm | 0.8 in / 2.03 cm |
| May 15, 2013 | -- | -- | 0.8 in / 2.03 cm | 1.8 in / 4.57 cm |
| Mar 9, 2013 | -- | -- | 0.8 in / 2.03 cm | 0.8 in / 2.03 cm |
| May 29, 2012 | -- | -- | 1 in / 2.54 cm | 1 in / 2.54 cm |
| May 11, 2012 | -- | -- | 0.75 in / 1.91 cm | 0.8 in / 2.03 cm |
| May 23, 2011 | 0.8 in / 2.03 cm | 0.9 in / 2.29 cm | 0.9 in / 2.29 cm | 1 in / 2.54 cm |
| May 1, 2011 | 0.75 in / 1.91 cm | 0.75 in / 1.91 cm | 0.8 in / 2.03 cm | 1.2 in / 3.05 cm |

MOODY EXPERT DESIG (Johnson, Cynthia) 0026

Hail Verification Report #20658375

| Date | Estimated Maximum Hail Size | | | |
|------|-----------------|-------------------------|-------------------------|----------------------------|
|      | At Location | Within 1 mi / 1.61 km | Within 3 mi / 4.83 km | Within 10 mi / 16.09 km |
| Apr 24, 2011 | 1.7 in / 4.32 cm | 2 in / 5.08 cm | 2.1 in / 5.33 cm | 2.1 in / 5.33 cm |
| Apr 10, 2011 | 0.8 in / 2.03 cm | 0.8 in / 2.03 cm | 1.1 in / 2.79 cm | 1.4 in / 3.56 cm |
| Oct 25, 2009 | -- | -- | 0.75 in / 1.91 cm | 1 in / 2.54 cm |
| May 26, 2009 | 0.9 in / 2.29 cm | 1.2 in / 3.05 cm | 1.5 in / 3.81 cm | 1.5 in / 3.81 cm |
| Apr 11, 2009 | -- | -- | 1 in / 2.54 cm | 1 in / 2.54 cm |

• Hail dates begin at 6am CST on the indicated day and end at 6am CST the following day.
• Dash "--" indicates 0.75 in / 1.91 cm or larger hail was detected within 3 mi / 4.83 km, but not at location.
• Hail sizes being reported within this report start at 0.75 in / 1.91 cm and increase in 0.1 in / 0.25 cm increments; rounded to the nearest 0.1 in / 0.25 cm.
• This report contains hail events between Jan 01, 2009 and Dec 01, 2021.

MOODY EXPERT DESIG (Johnson, Cynthia) 0027

# Important Legal Notice and Disclaimer

THIS REPORT AND THE CORRESPONDING DATA IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY AND ONLY FOR INTERNAL USE BY THE INITIAL PURCHASER/END-USER RECIPIENT HEREOF. NOTWITHSTANDING THE FOREGOING, SUCH PURCHASER/END-USER MAY SHARE THIS REPORT WITH THE OWNER OF THE PROPERTY THAT IS THE SUBJECT OF THE REPORT. CORELOGIC, INC. AND/OR ITS SUBSIDIARIES OR AFFILIATES ("CORELOGIC") DO NOT ASSUME, AND EXPRESSLY DISCLAIM LIABILITY FOR ANY LOSS OR DAMAGE RESULTING FROM THE USE OF, OR ANY DECISIONS BASED ON OR IN RELIANCE ON, THIS REPORT AND THE CORRESPONDING DATA

THIS REPORT AND THE CORRESPONDING DATA ARE FURNISHED "AS IS", WITHOUT WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY, ACCURACY, COMPLETENESS, NON-INFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE (EVEN IF THAT PURPOSE IS KNOWN TO CORELOGIC). SOME STATES DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES, SO THE ABOVE EXCLUSIONS MAY NOT APPLY TO THE USER. IN THAT EVENT, ANY IMPLIED WARRANTIES ARE LIMITED IN DURATION TO NINETY (90) DAYS FROM THE DATE OF THE REPORT AND TO THE DOLLAR AMOUNT OF THE REPORT.

THE CONTENTS OF THIS REPORT ARE PROTECTED BY APPLICABLE COPYRIGHT AND OTHER INTELLECTUAL PROPERTY LAWS AND MAY INCLUDE PROPRIETARY OR OTHER CONTENT OF THIRD PERSONS. NO PERMISSION IS GRANTED TO COPY, DISTRIBUTE, MODIFY, POST OR FRAME ANY TEXT, GRAPHICS, OR USER INTERFACE DESIGN OR LOGOS INCLUDED IN THIS REPORT. ALL USERS OF THIS REPORT AGREE TO HOLD HARMLESS CORELOGIC AND ITS AFFILIATES, EQUITY HOLDERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS, AGENTS, REPRESENTATIVES AND SUPPLIERS OF THIRD PARTY CONTENT FROM ANY USE OR MISUSE, MISAPPLICATION, ALTERATION OR UNAUTHORIZED DISCLOSURE OF THIS REPORT.

THIS NOTICE AND DISCLAIMER IS INTENDED TO FUNCTION IN HARMONY WITH THE CORELOGIC TERMS OF USE AVAILABLE ON THE WEATHER VERIFICATION SERVICES WEBSITE. IN THE EVENT OF ANY CONFLICT BETWEEN THE TWO DOCUMENTS, THE CORELOGIC TERMS OF USE SHALL GOVERN.

**Scan to Verify Authenticity**



*The original contents of this report are stored online in the original state provided by CoreLogic. Scan this QR Code and it will take you to a link to view the data and verify its authenticity.*

MOODY EXPERT DESIG (Johnson, Cynthia) 0028

 CoreLogic

Weather Verification Services

# Wind Verification Report

| Claim or Reference # | 21-295 |
|---|---|
| Insured/Property Owner | Moody Engineering |
| Address | 709 Queensway Rd<br>Willow Park, TX 76087 |
| Coordinates | Latitude 32.750274, Longitude -97.650551 |
| Date Range | Jan 01, 2009 to Dec 02, 2021 |
| Report Generated | December 3rd, 2021 at 13:33:44 UTC |

## Storm Events

| | Estimated Maximum Windspeed | | | |
|---|---|---|---|---|
| Date | At Location | Within 1 Miles | Within 3 Miles | Within 10 Miles |
| Jun 16, 2019 | 55 MPH | 58 MPH | 59 MPH | 59 MPH |
| Jun 1, 2019 | 60 MPH | 62 MPH | 64 MPH | 64 MPH |
| Mar 12, 2019 | 65 MPH | 67 MPH | 68 MPH | 81 MPH |
| May 3, 2018 | 62 MPH | 64 MPH | 66 MPH | 68 MPH |
| Aug 6, 2017 | 67 MPH | 71 MPH | 73 MPH | 73 MPH |
| Mar 28, 2017 | 59 MPH | 61 MPH | 64 MPH | 70 MPH |
| May 11, 2016 | 61 MPH | 64 MPH | 67 MPH | 67 MPH |
| Mar 30, 2016 | 59 MPH | 63 MPH | 65 MPH | 70 MPH |
| Mar 16, 2016 | 49 MPH | 52 MPH | 63 MPH | 69 MPH |
| Mar 8, 2016 | 67 MPH | 74 MPH | 74 MPH | 82 MPH |
| Nov 16, 2015 | 50 MPH | 54 MPH | 61 MPH | 73 MPH |
| May 4, 2012 | 62 MPH | 64 MPH | 65 MPH | 65 MPH |
| Apr 3, 2012 | 50 MPH | 58 MPH | 66 MPH | 66 MPH |
| Jun 18, 2011 | 51 MPH | 56 MPH | 64 MPH | 65 MPH |
| Sep 7, 2010 | 45 MPH | 48 MPH | 58 MPH | 61 MPH |
| Sep 21, 2009 | 56 MPH | 60 MPH | 62 MPH | 66 MPH |

MOODY EXPERT DESIG (Johnson, Cynthia) 0029

| Date | Estimated Maximum Windspeed | | | |
|---|---|---|---|---|
| | At Location | Within 1 Miles | Within 3 Miles | Within 10 Miles |
| Jul 19, 2009 | 48 MPH | 54 MPH | 59 MPH | 60 MPH |
| Jun 10, 2009 | 59 MPH | 62 MPH | 66 MPH | 72 MPH |

• Wind dates begin at 6am CST on the indicated day and end at 6am CST the following day.
• Dash "--" indicates 58 MPH or higher wind was detected within 3 miles, but winds at location were less than 40 MPH.
• Report contains all wind events where winds of 58 MPH or greater were detected within 3 miles of the location.
• Wind speeds being reported within this report represent 3-second wind gusts at 10 meters; starting at 40 MPH and increasing in 1 MPH increments.
• This report contains wind events between Jan 01, 2009 and Dec 02, 2021.

MOODY EXPERT DESIG (Johnson, Cynthia) 0030

# Important Legal Notice and Disclaimer

THIS REPORT AND THE CORRESPONDING DATA IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY AND ONLY FOR INTERNAL USE BY THE INITIAL PURCHASER/END-USER RECIPIENT HEREOF. NOTWITHSTANDING THE FOREGOING, SUCH PURCHASER/END-USER MAY SHARE THIS REPORT WITH THE OWNER OF THE PROPERTY THAT IS THE SUBJECT OF THE REPORT. CORELOGIC, INC. AND/OR ITS SUBSIDIARIES OR AFFILIATES ("CORELOGIC") DO NOT ASSUME, AND EXPRESSLY DISCLAIM LIABILITY FOR ANY LOSS OR DAMAGE RESULTING FROM THE USE OF, OR ANY DECISIONS BASED ON OR IN RELIANCE ON, THIS REPORT AND THE CORRESPONDING DATA

THIS REPORT AND THE CORRESPONDING DATA ARE FURNISHED "AS IS", WITHOUT WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY, ACCURACY, COMPLETENESS, NON-INFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE (EVEN IF THAT PURPOSE IS KNOWN TO CORELOGIC). SOME STATES DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES, SO THE ABOVE EXCLUSIONS MAY NOT APPLY TO THE USER. IN THAT EVENT, ANY IMPLIED WARRANTIES ARE LIMITED IN DURATION TO NINETY (90) DAYS FROM THE DATE OF THE REPORT AND TO THE DOLLAR AMOUNT OF THE REPORT.

THE CONTENTS OF THIS REPORT ARE PROTECTED BY APPLICABLE COPYRIGHT AND OTHER INTELLECTUAL PROPERTY LAWS AND MAY INCLUDE PROPRIETARY OR OTHER CONTENT OF THIRD PERSONS. NO PERMISSION IS GRANTED TO COPY, DISTRIBUTE, MODIFY, POST OR FRAME ANY TEXT, GRAPHICS, OR USER INTERFACE DESIGN OR LOGOS INCLUDED IN THIS REPORT. ALL USERS OF THIS REPORT AGREE TO HOLD HARMLESS CORELOGIC AND ITS AFFILIATES, EQUITY HOLDERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS, AGENTS, REPRESENTATIVES AND SUPPLIERS OF THIRD PARTY CONTENT FROM ANY USE OR MISUSE, MISAPPLICATION, ALTERATION OR UNAUTHORIZED DISCLOSURE OF THIS REPORT.

THIS NOTICE AND DISCLAIMER IS INTENDED TO FUNCTION IN HARMONY WITH THE CORELOGIC TERMS OF USE AVAILABLE ON THE WEATHER VERIFICATION SERVICES WEBSITE. IN THE EVENT OF ANY CONFLICT BETWEEN THE TWO DOCUMENTS, THE CORELOGIC TERMS OF USE SHALL GOVERN.

**Scan to Verify Authenticity**



*The original contents of this report are stored online in the original state provided by CoreLogic. Scan this QR Code and it will take you to a link to view the data and verify its authenticity.*

MOODY EXPERT DESIG (Johnson, Cynthia) 0031



## Eric D. Moody, Ph.D., PTOE, P.E.

## Senior Forensic Engineer / Accident Reconstructionist

Eric@Moodyengineering.com

Summary:

Dr. Moody has been actively involved in the forensic engineering and accident reconstruction profession since 1990. After founding Moody Engineering Inc (MEI) in 1995 and completing his Ph.D. in engineering at Texas A&M University in 1997, Dr. Moody has served as the Principal Investigator on thousands of investigations in property related forensic engineering and motor vehicle accident reconstruction. His work in forensic engineering addresses damage to residential and commercial structures related construction defects, extreme weather such as wind and hail, fire, foundation movement, other structural deficiencies. His work in accident reconstruction covers such diverse topics as commercial vehicles, motorcycles, pedestrians, human factors, work zone traffic control and event data recorders (EDRs). MEI maintains the software and hardware to download event data from EDRs in most passenger cars and commercial vehicles, reconstruct, and simulate those crashes as necessary. As part of his forensic engineering work he has authored over a thousand reports documenting the of findings of his firm's investigations. He has also provided deposition and trial testimony on well over 100 occasions.

Prior to founding his current firm, Dr. Moody worked as a consultant to both government and private industry. This includes work for the Texas Deparment of Transportation, the Federal Highway Administration, and the United States Department of Transportation. Prior to forming MEI in 1995, Dr. Moody worked in various research capacities at the University of Texas, Center for Transportation Research and the Texas Transportation Institute at Texas A&M University.

Dr. Moody received both his Bachelors and Masters Degrees in civil engineering from the University of Texas at Austin. He received his Ph.D. in engineering from Texas A&M University in 1997. In 1999, he resigned his position as an Associate Research Engineer at the Texas Transportation Institute to pursue consulting opportunities in accident reconstruction and forensic engineering on a full-time basis.

In addition to his formal education at the University of Texas and Texas A&M University, Dr. Moody has completed numerous courses in forensic engineering and accident reconstruction at Northwestern University, IPTM (University of North Florida), and TEEX (Texas A&M University). In addition to general accident reconstruction, the training has covered specific accidents involving construction equipment, commercial vehicles, bicycles and pedestrians, and motorcycles.

Dr. Moody is also a member of several professional organizations including the American Society of Civil Engineers, the Society of Automotive Engineers, and the Texas Association of Accident Reconstruction Specialists. He is a former Chairman of the Forensics Committee for the Texas Section of ASCE. Dr. Moody is a licensed Professional Engineer in the State of Texas and is an accredited accident reconstructionist through ACTAR. He is also certified as a *Professional Traffic Operations Engineer (PTOE)* through his affiliation with ITE. Dr. Moody is also a Bosch Certified Data Analyst and Data Retrieval specialist in the Crash Data Retrieval (CDR) System. He has also been trained in the download of ECM data from all commercially available diesel engines.

Areas of Special Interest:

Accident Reconstruction
- Causal Analysis
- Commercial Vehicles
- Construction Accidents
- Work Zone Traffic Control
- Pedestrians/Bicycles/Motorcycles/ATV's

Forensic Engineering
- Roof/Building Envelope Analysis
- Storm Damage Analysis
- Construction Defects
- Structural Analysis
- Foundation/Pavement Analysis

Education:

| | |
|---|---|
| Ph.D. Engineering, 1997 | Texas A&M University |
| M.S. Engineering, 1990 | The University of Texas at Austin |
| B.S. Civil Engineering, 1986 | The University of Texas at Austin |

Professional Licenses And Certifications:

- Professional Engineer, Texas: P.E. License No. 75439
- ACTAR Certification No. 810:(Accreditation Commission for Traffic Accident Reconstruction)
- PTOE Certification No. 494 (ITE, Professional Traffic Operations Engineer)
- Bosch Certified Crash Data Retrieval System Data Analyst (CDR) System, 2007
- Bosch Certified Crash Data Retrieval Specialist (CDR) System, 2007
- Detroit Diesel Training Center Certified in DDEC Reports/Data Extraction

Traffic Accident Reconstruction Training:

| | |
|---|---|
| Human Factors in Traffic Crashes: | Northwestern University Traffic Institute |
| Commercial Vehicle Event Data Recorders | University of Tulsa, CESE |
| Advanced Commercial Vehicle Accident Reconstruction: | Texas A&M University; TEEX |
| Commercial Vehicle Accident Reconstruction | Texas A&M University; TEEX |
| Accident Reconstruction I and II: | Northwestern University Traffic Institute |
| Pedestrian & Bicycle Collision Recon.: | Texas A&M University; TEEX |
| Biomechanics for Collision Reconstruction: | Texas A&M University; TEEX |
| Investigation of Motorcycle Accidents: | IPTM: University of North Florida |
| CDR Data Analyst/Data Retrieval Specialist | Bosch/Collision Safety Institute |
| Advanced Accident Investigation; | Texas A&M University; TEEX |
| Measurements at the Scene of Accidents: | Northwestern University Traffic Institute |
| Accident Investigation: | Northwestern University Traffic Institute |
| Work Zone Traffic Control | Texas A&M University; TEEX |
| Investigating Human Fatigue Factors | National Transportation Safety Board |
| DDEC Reports/Data Extraction | Detroit Diesel Training Center |

Honorary Memberships And Awards (Past And Present):

Recipient of the Transportation Research Board's Fred Burggraf Award
Member of Chi Epsilon; Civil Engineering Honor Society
Member of Phi Alpha Phi; Academic Honor Society
Recipient of the IBM Spot Light Award for Contributions as a Co-op Engineer

MOODY EXPERT DESIG (Johnson, Cynthia) 0033

Professional Memberships (Past And Present):

      Forensics Committee, American Society of Civil Engineers-Texas Section
      TAARS: Texas Association of Accident Reconstruction Specialists
      ASCE: American Society of Civil Engineers
      SAE: Society of Automotive Engineers

Employment Summary:

| | |
|---|---|
| 1993-Present | Consulting Engineer and Accident Reconstructionist; College Station & Austin, Texas |
| 1997-1999 | Associate Research Engineer; Texas Transportation Institute, College Station, Texas |
| 1994-1995 | Research Associate; Texas Transportation Institute, College Station, Texas |
| 1991-1993 | Research Associate; Center for Transportation Research, University of Texas at Austin |
| 1988-1990 | Staff Engineer; Austin Research Engineers Inc, Austin, Texas |
| 1988-1988 | Graduate Engineer, J.D. Abrams Inc. Heavy Highway Construction |
| 1987-1988 | Engineering Assistant; Texas Department Transportation, Austin, Texas |

Deposition Testimony:

Priestly et al vs. Star Shuttle, Inc and William R. Steelman, District Court, Bexar County, Texas
     Cause No. 97-CI-13459; 1998

Bernadina Arevalo et al vs. Tony Lee Miller and Beall Transportation, Inc., 96th Judicial Court of Tarrant
     County, Texas Cause No. 96-166027-96; February 18, 1999

John Pearce et al vs. The Estate of Brian P. LaBarbera, et al; In the District Court of Nacogdoches
     County, Texas; August 20th, 1999

Tom Combs et al vs. United Parcel Service Inc. et al, District Court, Travis County, Texas,
     Cause No. 99-03023; September 3rd, 1999

City of Colleyville, Texas vs. Murray Construction,  Tarrant County, Texas; December 1999

Jennifer Ann Gonzalez etal vs. Jody Daryl Sheldon, County Court at Law No. 2, Travis County,
     Texas,   Cause No. 247,372; June 12th, 2000

Bobby Menefee and Christine Menefee v. The Estate of Eric B. Tucker, Deceased,
     Cause no. 99-07648. District Court, 353rd Judicial District, Travis County, Texas

Elosia Cienfuegos, et al vs. Valley Trucking Company Inc and Gustavo Cisneros,
     Cause No. 99-08-3344E, District Court, 357th Judicial District, Cameron County, Texas

John Williams v. Perry Spencer and Executive Security Systems, Inc.; In the District Court, Travis
     County, 126th Judicial District, Cause No. GN 002731; October 10th, 2001

Byron Fitz v. Pacific Motor Transport Company and Robert Dollard, Days Inn Southeast and Days Inn of
     America, Inc., Cause No. 2001-CI-002213; 37th District Court, Bexar County, TX; May 23rd, 2002

Jay Rice vs. Celestine Harrison DBA Jones Trucking Co. and Michael Charles Williams; Cause No.    B-
0165013; In the 172nd District Court of Jefferson County, Texas; April 11th, 2003

Andrea Aguilar, Individually and Reuben Barcena, Individually and as Representative of the Estate of
     Marcelo Barcena Aguilar, Deceased v. Michael V. Higdon and Dr. Pepper Bottling Company of
     TX, Cause no. 03-00626B; The 44th Judicial District Court of Dallas County, TX; April 15, 2003

Timoteo R. Juarez et al vs. Jose Carlos Salinas, Jr. and Greg White, Cause no. GN203242, 53rd Judicial
     District Court of Travis County, Texas; May 14th, 2003

James .W. Dio and Billie Ann Dio vs. Raymond E. Howell, County Court at Law No. One, Calhoun
     County, Texas; September 17th, 2003

Jana Ramires, Individually and as Next Friend of Ariel Alexander, and as Legal Representative of The
     Estate of Faith Ramires v. Smith & Company; Cause No. 20,598;  12th Judicial District Court;
     Walker County, Texas; December 2003

Ronald Beeman Dockrey et al v. Rex Trucking, Inc. and Johnny Paul Milstead, Cause No. 69761;  62nd
     Judicial District Court; Lamar County, Texas; December 19th, 2003

MOODY EXPERT DESIG (Johnson, Cynthia) 0035

Deposition Testimony (Continued):

Whitmire, Donna vs. State Farm Mutual Automobile Insurance Company; In the 411th Judicial District
    Court of Trinity County, Texas; February 26th, 2004

Dr. Phillip and Deborah Osborne vs. Jauregui, Inc et al, Cause no. 99-08727, In the 353rd Judicial District
    of Travis County, Texas; April 22nd, 2004

Fred A. Scott et al v. The Germania Companies ; 53rd Judicial District Court of Travis County, Texas;
    December 1st, 2004

Ada Johnson, et al  v. Robert Marshall, et al; Cause No. 2003-CV-E0001342-D2; 111th Judicial District
    Court, Webb County, Texas; December 29th, 2004

John Steven Wright et al vs. Earl Bourland; In the County Court at Law in and for Kaufman County,
    Texas; February 22nd, 2005

Spyglass Hill Condominium Owner's Association, Inc vs. Sunplace Investment Associated, L.P., In the
    131st Judicial District Court of Bexar County, Texas; March 18th, 2005

Janis L. Nagelhout v. The Estate of Donald Geofrey Wood, et al., Cause no. 78,733-A, In the
    Probate Court No. One, Travis County, Texas; May 13th, 2005

Saul Varela et al. v. State Farm Lloyds, et al., Cause no. GN 300,567; In the 126th Judicial District Court
    of Travis County, Texas; May 25th, 2005

Lynn Ray Lehmann v. Earth Transport Company and Armando Barrios; Cause No. 12628; In the 21st
    Judicial District Court of Lee County, Texas; September 15, 2005

Cameron County v. Landmark Organization, L.P., et al, In the 404th Judicial District Court of Cameron
    County, Texas; September 27th, 2005

James Mark Johnson, individually and as natural child of and as representative of the Estate of
    James Hoyt Johnson, Deceased, et al vs. Western Excavation, et al., Cause no. C200200240;
    In the 413th Judicial District Court of Johnson County, Texas; November 16th, 2005

Jerry Kulhanek v. Herman Benton, et al; Cause No. 2004-27240;  in the 333rd Judicial District Court,
    Harris County, Texas; December 19, 2005

Elias Mendez vs. Mark Kossaeth et al; Cause No. 2005-CI-00783; 288th District Court, Bexar County,
    Texas; January 16, 2006

Sean Connolly and Jane Connolly both Individually and as Next Friends of both Dylan Connolly and
    Devin    Connolly, Plaintiffs, vs. Pizza Inn and Larry Dewayne Owen, Defendants; Cause No.:
    2006-0114-16; In the District Court 16th Judicial District Denton County, Texas; June 19th, 2007

Christopher Gulley v. David Gaines; Cause No.: D-1-GN-06-003948;  In the 345th Judicial District Court
    of Travis County, Texas; June 28th, 2007

Justin Quintana and Terri Walker vs. Karen L. Cassil; Cause No.: 2006-40249-362; 362nd Judicial
    District Court – Denton County, Texas; September 24th, 2007

MOODY EXPERT DESIG (Johnson, Cynthia) 0036

Deposition Testimony (Continued):

Ricardo Yanez, Individually and as Personal Representative of the Estate of Alfonso Yanez, Jr. in their
    individual Capacities v Sylvain Turgeon and Transby, Inc; Civil Action No. A-06-CA-897-LY;
    In the United States District Court for the Western District of Texas, Austin Division;
    October 15th, 2007

James  Bynum and Amy Bynum vs. State Farm Lloyds, Inc.; Cause No.: 57,849-A; In the 47th District
    Court of Randall County, Texas; October 24th, 2007

Rhonda Borski, Individually and on behalf of all Wrongful Death Beneficiaries and on behalf of the
    Estate of Dorothy Brister, Deceased, vs. American Medical Response, Inc., et al - Cause No.
    2006-05472; 80th Judicial District Court; Harris County, Texas; November 9th, 2007

Michelle Leigh Conkle vs. Benjamin R. Barnes, et al.; Cause No. D-1GN-06-003373; In the 250th
    Judicial District Court of Travis County, Texas; April 2nd, 2008

Edcouch Elsa I.S.D. vs. Descon, et al; Cause No.: C-633-05-E; In the 275th Judicial District Court of
    Hidalgo County, Texas; May 20-21, 2008

Layton W. Thibodeaux, et al vs. State of Louisiana through the Department of Transportation and
    Development; Docket No.: 06-C-2920-D; 27th JDC, St. Landry Parish; December 31, 2008

Roberto Tamez, Juan G. Tamez, Maria Marrouquin and Christela Tamez, Individually and as Heirs of
    Maria Tamez v. American Medical Response, Inc. et al; Cause No. 06-CV-1437; 56th Judicial
    District Court Galveston County, Texas; February 19th, 2009

Roy Sullins, et al v IESI TX Corporation, et al.: Cause No. D-1-GN-08-002574; In the 353rd Judicial
    District Court of Travis County, Texas; April 31, 2009

Debra Clemons, Individually and a/n/f of Colby Amey, Calon Amey and Cambrea Amey, Minors vs.
    Sanders Transportation, Inc. And Glen Carl Riddle; Cause No.: 49303; In the 23rd Judicial
    District Court of Brazoria County, Texas Judicial District; November 10th, 2009

Armando Montalvo, as Representative of the Estate of Nelson Montalvo Jr., Decedent, and for the
    Benefit of Nelson Montalvo, Sr. and Milagros Montalvo vs. William Strickland, Mullen Trucking,
    L.P., and Cougar Canyon Trucking, Ltd., Civil Action No.: SA-09-CA-0247; United States District
    Court Western District of Texas San Antonio Division; March 1st, 2010

David Munoz vs. Theodore Hoak, Individually and Patricia Hoak, Individually and d/b/a/ Crown
    Shavings; Cause No.: 2008-CI-12161; In the 150th District Court, Bexar County, Texas;
    June 17th, 2010

Centex Homes d/b/a/ CityHomes v Koedyker and Kenyon Construction Inc. et al; Cause No.:09-02315D
    In the 95th Judicial District Court, Dallas County, Texas; September 20th, 2010

Philadelphia Indemnity Insurance Company, Plaintiff v. SSR Hospitality, Ind., Defendant; In the United
    States District Court for the Western District of Texas Austin Division;
    Civil Action No.: A-08-CV-680-JRN; December 9th, 2010

Deposition Testimony (Continued):

James Douga et al v Bekins Val Lines LLC and Brandon Moving and Storage; Civil Action No.
SA09CA0880XR; U.S. District Court; Western District of Texas; San Antonio Division;
February 15th, 2011

Cary Waller, Shelli Waller and Abigail Waller Plaintiffs vs. Rita Lang, Michael Lang, State Farm County
Mutual Insurance Company of Texas, Cause No.: 017-242348-09; 17th Judicial District Court;
Tarrant County, Texas; March 17th, 2011

Greg F. Jones, Individually, & The Estate of Cassidy Daniel Jones v. Kars Tamminga, Individually and
Fri-Tex Dairy, Inc., Cause No.: 79077; 40th Judicial District Court, Ellis County, Texas; July 22nd, 2011

Joseph B. Newton et al vs. Darrell Lehmann, et al;   Cause No.: 2007-CI-04629; 73rd District Court, Bexar
County, Texas; September 2nd, 2011

Ismael Rodriguez Velarde, et al. vs. Ford Motor Company, and Mike's Off Road, Inc. d/b/a Mike's Off
Road Accessories; Cause No.: 342 238640 09; 342nd District Court, Tarrant County, Texas; April
16th, 2012

Dinease Hellen vs. Dana Donalson; Cause No.: D-1-GN-10-003823; In the 250th Judicial District Court,
Travis County, Texas; August 1st, 2012

Dale Ann Boyd Landis, Individually, and as Representative of the Estate of James C. Landis, Deceased
and Richard Landis, Individually vs. Richard Landis, Thomas Martinez, Ramiro M. Martinez,
Ramco Trucking, Inc., Juan Guadalupe Guzman, and Pedro Inez Ramirez; Cause No.: 83358; In
the 40th Judicial District Court, Ellis County, Texas; August 31st, 2012

Gilberto Pena and Maria Elena Pena v. Germania General Agency and Germania Farm Mutual Insurance
Association; Cause No. 2445; 51st Judicial District Court, Sterling County, Texas;  September 5th,
2012

Steve Rodriguez v. Kristi Jo Sparks, Southern Tank Transport, and Billy Jo Fallin;
Cause No.: 2011-+CI-04544;  In the 45th Judicial District Court of Bexar County, Texas;
September 18th, 2012

Silverio Martinez, II, and Diana Martinez, Individually and as Representative of the Estate of Silverio
Martinez, III, Deceased, Plaintiffs, vs. Timothy Garrett Lane and Choat Enterprises, Inc.,
Defendants; Cause No.: A-133,142, In the 70th Judicial District Ector County, Texas;

Maria Cantu v. Dallas Jordan Thomas; Cause No. 2012-CI-05212;  in the 166th Judicial District Court,
Bexar County, Texas; March 19th, 2013

James Waits, Plaintiff, vs. Big Creek Construction and David R.Slough, Defendants; Cause No.:
2010-00030; In the District Court Johnson County, Texas 249th Judicial District; June 11th, 2013

Wesley Craig Stallcup, Jr. vs. Jeremy Allen Cooey and Werner Enterprises, Inc.; Cause No.:
C201100258; In the District Court, 18th Judicial District Johnson County, Texas; June 28th, 2013

Russell Faust et al v. Edwin David Manning et al, Cause No.: 236-256018-11, In the 236th Judicial
District Court, Tarrant County, Texas; August 2nd, 2013

MOODY EXPERT DESIG (Johnson, Cynthia) 0038

Deposition Testimony (Continued):

Vincent Leggio, Jr., Individually and as Representative of the Estate of Vincent Leggio, Sr. and Debra Leggio, Deceased, et al v. C.R. England, Inc., Richardo Fernando Kerr, Tamika Francois, and Cathryn M. Stegmoyer; Cause No.: 110 No. B-193-657 in the District Court of Jefferson County, Texas 60th Judicial District; October 31st, 2013

Vernon E. Howell v. David Marston, Holt Texas, Ltd. d/b/a Holt CAT, and Holt CAT, G.P.; November 22nd, 2013

Cynthia Wooten, Individually and as Representative of the Estate of Billy Wayne Wooten, Jr. and as Next Friend of A.M.W. and C.J.H., Minors; Billy Wayne Wooten, Sr.; and Frankie Wooten, vs. Relco Systems, Inc. and Edward J. Congdon; Cause No.: 3:12-CV-03905-P in the United States District Court for the Northern District of Texas, Dallas Division; December 9th, 2013

Karen Smith, Individually and as the Independent Administrator of the Estate of Dennis Wayne Smith; Jason Smith; and Justin Smith vs. Michels Corporation; Cause No.: 2:13-CV-00185 in the United States District Court for the Eastern District of Texas, Marshall Division; January 13th, 2014

Alejandra Campista vs. North East Independent School District Texas; Cause No.: 2012-CI-17627 in the District Court 37th Judicial District Bexar County, Texas; August 18th, 2014.

Gurdarshan Brar, et al v. National Interstate Insurance Company, et al; Pending in the 333rd Judicial District Court, in and for Harris County, Texas; October 7th, 2014

James T. Coleman, as Independent Executor of the Estate of Bryan F. Hargis, Deceased, Plaintiff, vs. Steelman Transportation, Inc., and Kenneth Marshall, Defendants in the County Court of Nueces County, Texas; November 11th, 2014

Mark H. Haws v. Muracombi Enterprises, Inc., and Phillip C. Stone in the District Court 153rd Judicial District Tarrant County, Texas; December 1st, 2014

Barbara Carroll Individually and as Person Representative of the Estate of Bennie Ruth Shelton, Deceased and on Behalf of all Persons Entitled to Recover Under the Texas Wrongful Death Act for the Death of Bennie Ruth Shelton, and Terri Gunter, Plaintiffs v. Raymond Villarreal, and United Rentals (North America), Inc. Defendants in the County Court at Law No. 1, Nueces County, Texas; January 14th, 2015

Airport Holdings I, L.L.C. and Airport Holdings II, L.L.C. Plaintiffs vs. Elford Building Corporation and John Elford Defendants; Cause No: 2013-49851 in the District Court of Harris County, Texas 281st Judicial District; March 12th, 2015

Carlos A. Gonzalez, Plaintiff vs. Brook Randal, Defendant; Cause No.: C-1-CV-13410603 in the County Court at Law No. 2, Travis County, Texas; March 13th, 2015

Sharon Edwards, Individually, and as Legal Representative of the Estate of Tim David Edwards, Jr., Deceased, and Alexandra Turtz, as parent and Next Friend of Avery Lynn Edwards, a Minor Child vs. Teal Chanelle Piper; Cause No.: 2014-CI-01272 in the 288th Judicial District, Bexar County, Texas; May 20th, 2015

MOODY EXPERT DESIG (Johnson, Cynthia) 0039

DEPOSITION TESTIMONY (Continued)

Roy Dehoyos, Plaintiff, vs. Ft. Worth Pipe Services, L.P., and Robert Holman, Defendants;  Cause No.: 50052 in the 118th Judicial District, Howard County, Texas; September 9th, 2015

James David Gordey Plaintiff, v. Matthew James McSpadden, and Sydney Capital, L.L.C., d/b/a Sydney Group, Defendants; Cause No.: 5:14-CV-00153-C in the United States District Court for the Western District of Texas Lubbock Division; September 15th, 2015

Kevin Theriot, et al v. Brandon Keith Moore and Flex Capital Transport, LLC d/b/a FlexFrac Oilfield; Cause No.: 14-10-0842-CVA in the District of Atascosa County, Texas; September 24th, 2015

Donald Hengst, Individually and as a Representative of the Estate of Ronald Hengst, Deceased vs. UV Logistics, LLC, Richard Johnston and Mark Robinson; Case Number/Court: 14-06-76521 – Victoria – 135th; October 8th, 2015

Cause No.: 14-1543-CV; Cross River Investments, LLC Plaintiff vs. Hilario Flores, Jr. D/B/A Lariat Mobile Home Service, Defendant in the District Court 15th Judicial District Guadalupe County, Texas; December 2nd, 2015

Cause No.: 2014-CI-03573; David Edward Vandorn, Jr., Plaintiff, vs. Benjamin F. Johnson, II, Individually and As Agent for Fed Ex Freight, Inc., and Fed Ex Freight, Inc., Defendants in the District Court 37th Judicial District Bexar County, Texas; February 17th, 2016

Cause No.: 096-274035-14; Jose Hernandez-Gonzalez, Plaintiff, vs. David Austin Donovan and Mix Pro, Inc., Defendants in the District Court 96th Judicial District Tarrant County, Texas; June 28th, 2016

Cause No.: DC-14-06332-A; Martha Elena Oliveras, Individually and as Personal Representative of the Estate of Celedonio Lara-Torres and as Next Friend of JL and EL, Minors and Luis Rodriguez, Plaintiffs, vs. Klarissa Longoria, on Behalf of the Surviving Child of Celedonio Lara-Torres, Intervenor, vs. Darrell Augustus Herndon, Rigoberto Gonzalez, and Associated Truss Company, Defendants, in the County Court No. 1 Dallas County, Texas; July 20th, 2016

Cause No.: 2015CI03935; Wesley Ledoux v. Bubie's Wrecker Services, Ltd., Erwin C. Stelzig dba Bubie's Wrecker Services, and Jeffrey Nelson Cowart; August 6th, 2016

Cause No.: 153-276004-14; Robert Dove, Plaintiff vs. Property Paving, Inc., Defendant in the District Court Tarrant County, Texas 153rd Judicial District; September 23rd, 2016

Cause No.: 2015-07158; Leland "Keith" Fitzgerald Individually and as Representative of the Estate of Kimberly Fitzgerald, Deceased, and James "Kevin" Fitzgerald, Leland "Kenneth" Fitzgerald, Kaylee Fitzgerald, Wanda O'Neal, and James O'Neal, Individually, Plaintiffs, vs. Turnaround Logistics Inc., and Sunburst Truck Lines Inc., Defendants in the District Court of Harris County, Texas 133rd Judicial District; December 7th, 2016

Cause No.: 2015CI18861; Michelle Carter and Leslie Williams v. Michael Swinton and ASC Equipment, LP; In the Bexar County, Texas 57th District Court; December 16th, 2016

Cause No.: 14-05-192-CV; Carolina Garza vs. Alex Rodriguez and UV Logistics, LLC in the District Court 79th Judicial District Jim Wells County, Texas; January 19th, 2017

Deposition Testimony (Continued):

Civil Action No. 5:15-CV-185; Ramon Domingo Diaz, JR, Joe Rodriguez and James Brandon Martinez V. Shire Abdulkadir and Bluecoast Express; January 24th, 2017

Cause No.: DC-15-02200; William Furlan, et al vs. Webber, LLC, et al; June 7th, 2017

Cause No. 14364; Mary Penick vs. The Travelers Lloyds Insurance Company, United Fire Lloyds, David Benavides, Jason Foster, and Christopher Brown; In the District Court; 216th Judicial District; Gillespie County, Texas; July 25th, 2017

Cause No. P-37,154-A; Araceli S. Villarreal, Individually, and as Personal Representative of The Estate of Juan Angel Villarreal, Sr., Florinda Araceli Saenz and Juan Villarreal, Jr., Plaintiff(s) vs. Logicorp Enterprises, LLC, Logicorp Transportation, LLC and Reynaldo Zuniga Garcia, Defendant(s) in the Probate of Hidalgo County, Texas; August 31st, 2017

Cause No.: 2016CI04656; Alena Mehtani, Plaintiff, vs. Logan Sepulveda Defendant in the District Court 73rd District Court Bexar County, Texas; August 29th, 2017

Cause No. D-1-GN-16-004904; Jan Moreland v. State Farm Lloyds and Dale Marek in the District Court 201st Judicial Court Travis County, Texas; September 8th, 2017

Cause No.: 2016-DCL-00210; Carolina Borrego, Plaintiff vs. Oscar Cortez and FedEx Ground Package System, Inc., Defendants; In the District Court 197th Judicial District Cameron County, Texas; September 22nd, 2017

Cause No.: 2016CI19506; South Bend Development, Inc. Plaintiff vs. Depositors Insurance Company and Adam Gerstner Defendants In the District Court 225th, Judicial District Bexar County, Texas; September 29th, 2017

Cause No.: 2015CI18120; Darrell D. Lutz vs. Shawn Paul Shaw and Masters Electrical Services, LTD.; October 31st, 2017

Cause No.: 2016CI14055; The Estate of Theodore Kenyon, Lorraine Kenyon, and Kurt Kenyon, Plaintiff vs. Kimberly Pizana, Katlyn Moritz, Elephant Insurance Company, LLC, Texas, Defendants in the District Court 224th Judicial District Bexar County, Texas; November 10th, 2017

Cause No.: 2016CI04656; Alena Mehtani, Plaintiff, vs. Logan Sepulveda Defendant in the District Court 73rd District Court Bexar County, Texas; December 15th, 2017

Cause No.: 32779; Rene Rodriguez, Plaintiff; v. XPO Logistics Freight, Inc., Con-Way Freight, Inc., Con-Way Transportation Services, Inc., and Ezequiel Espinoza, Defendants; In the Civil District Court 83rd Judicial District, Val Verde County, Texas; December 20th, 2017

Cause No.: D-1-GN-16-002077; Margaret S. Conlee, Individually and on Behalf of The Estate of Robert L. Conlee vs. Raquel G. Benadof and Henry F. Graddy; In the District Court Travis County, Texas 419th Judicial District; February 20th, 2018

Cause No.: 017-291484-17; Victoria Harris, Individually and as Representative of the Estate of Tashalla Thomas, Deceased, and Sean Thomas, Individually and as Next Friend of Kayden Thomas and Tristan Thomas, Minors, Plaintiffs v. HT&W, Inc., Defendant; June 7th, 2018

MOODY EXPERT DESIG (Johnson, Cynthia) 0041

Deposition Testimony (Continued):

Cause No.: 17-01-33870-MCV; Fernando Martinez, Jr. and Jose Javier Cisneros, Plaintiffs vs. Phoenix Services, LLC, Pruitt's Frac Tanks, LLC, and Jose Jaime Jacquez, Defendants; In the District Court 293rd Judicial District Maverick County, Texas; July 12th, 2018

Civil Action No. 4:17-cv-1694; Longwood Club Management, LLC. v. Depositors Insurance Company et al; In the United States District Court for the Southern District of Texas, Houston Division; July 30th, 2018

Cause No.:   16-0627; Michael James Lorenz, Plaintiff vs. Michael Keith Cash and San Marcos Air Conditioning, Inc., Defendants in the District Court 22nd Judicial District; Hays County, Texas; August 6th, 2018

Cause No.: 2046-17-F; Sidney Bunt, Plaintiff; v. Carlos Ariel Baltazar; Gulf Coast Brokerage, LLC; GE TF Trust and Aubrey Dismukes, Defendants; In the District Court 332rd Judicial District, Hidalgo County, Texas; August 9th, 2018

Cause No. 2016-CI-10862; Juan Ruiz, Plaintiff vs. Jeffrey Joseph Zancketti and Continental Battery Company, Defendants in the District Court 166th Judicial District Bexar County, Texas; October 10th, 2018

Cause No. 5:16-cv-23; Benjamin David Grummet, Plaintiff vs. Aleksandr A. Shkurat and P.A.M. Transport Inc., Defendants in United States District Court for the Western District of Texas San Antonio Division; December 10th, 2018

Cause No.: 2018CI00419; David Zigmond and Cheyenne Blankenship, Plaintiffs vs. Mission Wrecker Services S.A., Inc., and Thomas De La Garza, Defendants; In the District Court 131st Judicial District Bexar County, Texas; July 24th, 2019

Cause No.: 2018-CI-06695; Brandon Lopez, Plaintiff vs. Wasera Trucking and Alemayehu Tefera Woldu, Defendants; In the District Court 228th Judicial District Bexar County, Texas; January 20th, 2020

Cause No.: 69013-A Marvin Christopher Turner; and Frances Regina Turner, Both Individually and as Representatives of the Estate of Kevin Christopher Turner, Deceased vs. Drisco, LLC; Delek Refining, Ltd.; and Aarayan D. Johnson in the County Court at Law No. 2 Smith County, Texas; January 31st, 2020

Trial And Grand Jury Testimony:

Martindale vs. State of Texas, Travis County, Texas; February 1999

Bernadina Arevalo et al vs. Tony Lee Miller and Beall Transportation, Inc., 96th Judicial Court of Tarrant County, Texas Cause No. 96-166027-96; June 28, 1999

City of Colleyville vs. Murray Construction Company, Inc., et al; in the 236th Judicial District Court of Tarrant County, Texas, Cause No. 236-160297-95; January 7th, 2000

John Pearce and Wife, Jamie Pearce vs. The Estate of Brian P. LaBarbera, et al, No. 13,620-97-8 145th District Court, Nacogdoches County, Texas; March 28th, 2000

Ramona Thompson, Ind. & as Next Friend of Luke Fedell, a minor and Rodney Fedell, Ind. & as Next Friend of Luke Fedell, a minor v. James Leonard Sirovy, Jr., 26th District Court, Williamson County, Texas; June 6th, 2000

Jennifer Ann Gonzalez et al vs. Jody Daryl Sheldon, County Court at Law No. 2, Travis County, Texas Cause No. 247,372; June 25th, 2000

Patrick T. Maloney  vs. Apolino Cardoza, County Court at Law No. 2, Williamson County, Texas Cause No. 99-5694-CC2; December 19th, 2000

Osborne vs. State of Texas, Victoria County, Texas; January 2001; Offense No. 9905465-00

Carl Noon v. John Dennis and Guzman Trucking Inc., 400th Judicial District Court of Fort Bend County, Texas; June 18th, 2003

Ronald Beeman Dockrey et al v. Rex Trucking, Inc. and Johnny Paul Milstead, Cause No. 69761;  62nd Judicial District Court; Lamar County, Texas; March 8th, 2004

Ada Johnson, et al  v. Robert Marshall, et al; Cause No. 2003-CV-E0001342-D2; 111th Judicial District Court, Webb County, Texas; April 28th, 2005

Raquel Fuentes as Next Friend of Sandra Fuentes, Kassandra Fuentes, Alexis Fuentes and Mauro Fuentes, Jr.,  Minors and on Behalf of the Estate of Mauro Fuentes, Deceased v. Evenson Trucking Company, Malissa Kay Box and Deniss Aime Felix: Cause No.: 2006-03-1557-C; 197th Judicial District Court of Cameron County, Texas; February 7th, 2008

Daniel Binion vs. Brandon Brinkley, Nathanael Friend and American Medical Response of Texas, Inc.; Cause No.: 067-207551-04; 67 Judicial District Tarrant County, Texas; April 28th, 2008

Christopher Gulley v. David Gaines; Cause No.: D-1-GN-06-003948;  In the 345th Judicial District Court of Travis County, Texas; May 6th-7[th], 2008

Michelle Leigh Conkle vs. Benjamin R. Barnes, et al.; Cause No. D-1GN-06-003373; In the 250th Judicial District Court of Travis County, Texas; May 7th, 2008

Denise Nichols, et al. vs. T. J. Lambrecht Construction, Inc., et al; Cause No. 06-11-17666-CV; In the 82nd Judicial District Court of Robertson County, Texas; May 13th, 2008

MOODY EXPERT DESIG (Johnson, Cynthia) 0043

Trial And Grand Jury Testimony (Continued):

James Bynum and Amy Bynum vs. State Farm Lloyds, Inc.; Cause No.: 57,849-A; In the 47th District Court of Randall County, Texas; June 4th – 5th, 2009

Edcouch Elsa I.S.D. vs. Descon, et al; Cause No.: C-633-05-E; In the 275th Judicial District Court of Hidalgo County, Texas; June 9th, 2009

Roy Sullins, et al v IESI TX Corporation, et al.: Cause No. D-1-GN-08-002574; In the 353rd Judicial District Court of Travis County, Texas; December 9th, 2009

Armando Montalvo, as Representative of the Estate of Nelson Montalvo Jr., Decedent, and for the Benefit of Nelson Montalvo, Sr. and Milagros Montalvo vs. William Strickland, Mullen Trucking, L.P., and Cougar Canyon Trucking, Ltd., Civil Action No.: SA-09-CA-0247; United States District Court Western District of Texas San Antonio Division; March 22nd, 2010

State of Texas v. Deas, 30th Judicial District Court; Wichita County, Texas; January 28th, 2011

State of Texas v. Nuncio, 390th Judicial District Court, Travis County, Texas; October 27th , 2011

Greg F. Jones, Individually, & The Estate of Cassidy Daniel Jones v. Kars Tamminga, Individually and Fri-Tex Dairy, Inc., Cause No.: 79077; 40th Judicial District Court of Ellis County, Texas; April 30th, 2012

State of Texas v. Nestande, 399th Judicial District Court, Travis County, Texas; February 19-20th, 2013

Cynthia Wooten, Individually and as Representative of the Estate of Billy Wayne Wooten, Jr. and as Next Friend of A.M.W. and C.J.H., Minors; Billy Wayne Wooten, Sr.; and Frankie Wooten, vs. Relco Systems, Inc. and Edward J. Congdon; Cause No.: 3:12-CV-03905-P in the United States District Court for the Northern District of Texas, Dallas Division; September 2014

The State of Texas vs. Monika Saenz in the 300th District Court, Brazoria County, Texas; September 15th, 2014

State of Texas v. Stephen Gilbert, Travis County, Texas; Grand Jury Proceedings; May 26th, 2015

State of Texas v. Jamie Tankersley, Tom Green County, Texas; Grand Jury Proceedings; June 30th, 2015

Donald Hengst, Individually and as a Representative of the Estate of Ronald Hengst, Deceased vs. UV Logistics, LLC, Richard Johnston and Mark Robinson; Case Number/Court: 14-06-76521 – Victoria -- 135th; January 15th, 2016

Robert Dove, Plaintiff vs. Property Paving, Inc., Defendant; Cause No.: 153-276004-14; In the District Court Tarrant County, Texas 153rd Judicial District; February 6th, 2017

Darren Craddock, Plaintiff, v. CN Berry, LLC and Personalized Property Management, Inc., Defendants; Cause No.: 2015C101968; In the District Court of Bexar County, Texas 45 Judicial District; April 6-7th, 2017

Gurdarshan Brar, et al v. National Interstate Insurance Company, et al; Cause No.: 201324046;  in the 333rd Judicial District Court, in and for Harris County, Texas; April 12th, 2017

MOODY EXPERT DESIG (Johnson, Cynthia) 0044

Trial And Grand Jury Testimony (Continued):

Victoria Harris, Individually and as Representative of the Estate of Tashalla Thomas, Deceased, and Sean Thomas, Individually and as Next Friend of Kayden Thomas and Tristan Thomas, Minors, Plaintiffs v. HT&W, Inc., Defendant; Cause No.: 017-291484-17; in the 17th Judicial District Tarrant County, Texas; July 24th, 2018

State of Texas v. Samuel Marrs; Cause No.: 47708; in the 424th District Court Blanco County, Texas; April 15th-17th, 2019

Alena Mehtani, Plaintiff, vs. Logan Sepulveda Defendant; Cause No.: 2016CI04656; in the District Court 73rd District Court Bexar County, Texas; September 26th, 2019

**PROFESSIONAL FEE SCHEDULE FOR**
**MOODY ENGINEERING INC**
Last Updated; January 1st, 2020

**Headquarters Office:**    Moody Engineering, Inc          **Federal Tax I.D. No.:**    74-2740003

9225 Bee Cave Road
Bldg. A, Suite 200
Austin, Texas 78733

- Eric D. Moody; Ph.D., P.E., ACTAR # 810; $295/hour for all work, including travel, investigation, engineering analysis, report preparation, deposition preparation, deposition testimony, trial preparation, and trial testimony.

- Justin Wagner, P.E., ACTAR # 2823; $245/hour for all work, including travel, investigation, engineering analysis, report preparation, deposition preparation, deposition testimony, trial preparation, and trial testimony.

- Jason Prochaska; Project Manager/Engineering Technician; $225.00/hour for all work including field investigation, travel, analysis, ECM/EDR downloads, and accident reconstruction.

- Connor Giddings; Project Manager, B.S.M.E.; $225/hour for all work including field investigation, travel, analysis, ECM/EDR downloads, and accident reconstruction.

- Jack Martinez; Computer Graphics/Animation/Video Technician; $185.00/hour; for all work including accident investigation and analysis and HVE simulations.

- Survey Crew; $375.00/hour; Administrative Assistant; $75.00/hour.

- Vehicle mileage; $0.65 per mile.

- Digital photography; flat rate $150.00 per inspection.

- ACM Downloads (Bosch CDR); Hourly rate plus $400.00 per download.

- ACM Downloads (KIA and Hyundai EDR); Hourly rate plus $600.00.

- ECM and/or ABS Downloads; Hourly rate plus $600.00.

- Berla iVe Infotainment Center Download; Hourly rate plus $1,200.00

- Smart Truck Simulator ECM Download $1,200.00.

- Aerial Drone Surveys; $250.00/Scene.

- Photogrammetric Vehicle Model $250.00/Vehicle.

- FARO 3D Laser Scanning Equipment; $500.00/Day.

- Certified Weight Scale $600.00/Vehicle.

- Per diem: $60/day/person for overnight travel.

- All additional project expenses as well as air travel, rental cars, and hotel accommodations are billed directly to the project.

- Retainer Fee: We reserve the right to require a $5,000-$10,000 retainer for all assignments requiring in state travel. A non-refundable, $1,000 retainer may be required for cases that only require a limited document review. The balance of the retainer will be returned to client upon completion of the assignment. Trial preparation may require pre-payment. Retainers for out of state travel are determined on a case by case basis.

- Terms: Net 30 days. Rates subject to change with written notice.

MOODY EXPERT DESIG (Johnson, Cynthia) 0046

## SELECTED PUBLICATIONS

1. "Field Investigation of Selected Strategies to Reduce Reflective Cracking in Asphalt Concrete Overlays Constructed over Existing Jointed Concrete Pavements", TRR 1449, 1994, pp 209-217

2. "Engineering Analysis of Water Penetration in Residential Structures," Proceedings, American Society of Civil Engineers, Texas Section, Dallas, Texas, September 2003

3. "Examining the Impact of Plumbing Leaks on the Performance of Slab-On-Grade Foundations," Proceedings, p. 61-68, American Society of Civil Engineers, Texas Section, Austin, Texas, April 2000

4. "Guidelines for Pavement Management," Texas A&M Research Foundation, NCHRP 01-35A, with Roger Smith, June 2000

5. "An Engineer's Evaluation of Residential Foundations for Real-estate Transactions," 2nd International Forensic Engineering Congress, American Society of Civil Engineers, San Juan, Puerto Rico, May 2000

6. "Evaluation and Mitigating Measures for Premature Concrete Distress in Texas Department of Transportation Concrete Elements." With B.L. Lawrence, R.L. Carrasquillo, and R.N. Guillemette; Cement, Concrete, and Aggregates Journal, Vol. 21, No. 1, pp. 73-81, June 1999

7. "Delayed Ettringite Formation in Reinforced Concrete Structures in Texas," with B.L. Lawrence, Proceedings, p. 109-115, American Society of Civil Engineers, Texas Section, South Padre Island, Texas April 1998

8. "Plumbing Leaks and Their Influence on Foundation Movement and Associated Damage," with J. Jackson, Proceedings, p. 73-79, American Society of Civil Engineers, Texas Section, Longview, Texas April 1999

9. "Analysis of LTPP Profile Data for the Jointed Concrete Pavements," *Transportation Research Record 1570, p. 70-77,* Transportation Research Board, National Research Council, January 1997

10. "Transverse Cracking Distress in Long-Term Pavement Performance Jointed Concrete Pavement Sections," *Transportation Research Record 1629,* Transportation Research Board, National Research Council, January 1998

11. "Framework for the Development and Calibration of PCC Performance Models Utilizing the LTPP Database," Dissertation, Texas A&M University, December 1997

12. "Identifying Deleterious Reactions in Portland Cement Concrete: Preliminary Findings," with B.L. Lawrence, P. Harris, and G. Lankes, Proceedings, p. 57-65, American Society of Civil Engineers, Texas Section, Longview, Texas April 1999

13. "Laboratory Investigation of Factors Affecting Bond Strength in Joint Sealants," *Transportation Research Record 1627,* Transportation Research Board, National Research Council, January 1998

14. "Field Investigations of Selected Strategies to Reduce Reflective Cracking in Asphalt Concrete Overlays Constructed Over Existing Jointed Concrete Pavements," *Transportation Research Record 1449*, pp209-217 Transportation Research Board, Washington, D.C., 1994

15. "Long Term Performance of Uncontrolled Longitudinal Cracking and Failed Longitudinal Joints in Continuously Reinforced Concrete Pavements," with B. Frank McCullough, University of Texas at Austin, Fifth International Conference on Concrete Pavement Designa and Rehabilatation, April 1993

16. "Prediction of CRCP Terminal Movements," with B. Frank McCullough, University of Texas at Austin, Fifth International Conference on Concrete Pavement Designa and Rehabilatation, April 1993

17. "Fuel Consumption and System Costs Related to Longer Combination Vehicle Operation on the Interstate Network", Masters Thesis, Center for Transportation Research, University of Texas at Austin, December 1990

18. Development of Performance Related Specifications for Portland Cement Concrete Pavement Construction, U.S. Department of Transportation, Federal Highway Administration; Publication No. FHWA A-RD-89-211; Co-authors, P.E. Irick, S.B. Seeds, M.C. Meyers, May 1990

19. Feasibility of Road Reclamation Projects for Local Governments, Center for Transportation Research, Bureau of Engineering Research, University of Texas at Austin, January 1994

20. "Identifying Deleterious Reactions in Portland Cement Concrete: Preliminary Findings," with B.L. Lawrence, P. Harris, and G. Lankes, Proceedings, p. 57-65, American Society of Civil Engineers, Texas Section, Longview, Texas April 1999

21. "Test Method for Determining Pavement Smoothness", Arizona Department of Transportation, co-author; L. Caldwell, Austin Research Engineers Inc, May 1990

22. "Development of Flexible Pavement Smoothness Specification", Draft Final Report, Arizona Department of Transportation, Austin Research Engineers Inc, July 1990, co-authors: R. Hudson, and L. Caldwell

23. "Pavement Cost Model for Truck Policy Analysis (NAPCOM)", Final Report, Federal Highway Administration, co-author: S. Seeds, and M. Myers, ARE Inc, May 1990

24. "Characteristics of Load Equivalence Relationships Associated with Pavement Distress and Performance," Final Report, ARE Inc – Engineering Consultants, Submitted to the Trucking Research Institute, American Trucking Association, September 1989

MOODY EXPERT DESIG (Johnson, Cynthia) 0048